# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LOGAN MILLS,** | * | **CIVIL ACTION** |
| | * | **NO. 18-847** |
| **VERSUS** | * | |
| | * | **DIVISION "F"(2)** |
| **ROBERT TANNER, WARDEN** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

_____

### AMENDED PETITION FOR RELIEF UNDER 28 U.S.C. § 2254
### FROM A CONVICTION IN THE
### TWENTY-SECOND JUDICIAL DISTRICT
### WASHINGTON PARISH
### STATE OF LOUISIANA

_____

### PETITION FOR WRIT OF HABEAS CORPUS
### PURSUANT TO 28 U.S.C. § 2254

**Emily H. Posner**
**La. Bar No. 35284**
**7214 St. Charles Ave.**
**Box 913**
**New Orleans, LA 70118**
**(207) 930-5232**
**emilyposnerlaw@gmail.com**

*Counsel for Logan Mills*

# TABLE OF CONTENTS

**PETITION FOR WRIT OF HABEAS CORPUS** ....................................................... 1

**STATEMENT OF JURISDICTION** .......................................................................1

**STATEMENT OF INCORPORATION** ..................................................................1

**PROCEDURAL BACKGROUND** .......................................................................... 1

**STATEMENT OF FACTS** ……........................................................................ 3

**ARGUMENT** ……......................................................................................... 7

**STANDARD OF REVIEW**.................................................................................. 7

**CLAIMS FOR RELIEF**....................................................................................... 8

> **CLAIM I:    MILLS' TRIAL WAS STRUCTURALLY FLAWED DUE TO IMPERMISSIBLE BIAS ON THE PART OF THE PROSECUTION TEAM** ...................................................................... 8

> **CLAIM II:   MILLS WAS DENIED HIS CONSTITUTIONAL RIGHT OF CONFRONTATION WHEN THE STATE COURT REFUSED TO ALLOW HIM TO CROSS-EXAMINE HIS CO-DEFENDANT ABOUT THE GREAT LEVERAGE UNDER WHICH HE WAS TESTIFYING PURSUANT TO A PLEA BARGAIN HE HAD CONFECTED WITH THE STATE OF LOUISIANA**……………....14

> **CLAIM III:  MILLS WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO INVESTIGATE HIS CO-DEFENDANT'S MENTAL HEALTH HISTORY, AND FAILED TO PRESENT EVIDENCE THAT HIS CO-DEFENDANT WAS UNDER THE INFLUENCE OF PSYCHOTROPIC MEDICATION AT THE TIME OF THE CRIME.** ……………………………………………....23

> **CLAIM IV:   MILLS WAS DENIED HIS CONSTITUTIONAL RIGHT OF CONFRONTATION AND RIGHT TO A FAIR TRIAL WHEN THE STATE COURT ALLOWED THE PROSECUTOR TO IMPEACH MILLS WITH A FEDERAL COMPLAINT THAT WAS PREPARED BY A CALIFORNIA ATTORNEY THAT MILLS DID NOT KNOW AND HAD NEVER COMMUNICATED WITH**……..29

**CLAIM V:**  **MILLS WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS APPELLATE ATTORNEY FAILED TO COMPETENTLY BRIEF THE ISSUES RAISED ON APPEAL, AND FAILED TO COMPETENTLY RESPOND TO THE STATE'S ORIGINAL BRIEF. …………………………………………………......36**

**CLAIM VI:**  **MILLS WAS DENIED A FAIR AND IMPARTIAL DIRECT APPEAL WHEN THE LOUISIANA FIRST CIRCUIT COURT OF APPEAL REPEATEDLY IGNORED CRITICAL POINTS OF MILLS' ARGUMENTS AND CONSISTENTLY MISAPPLED CLEARLY ESTABLISHED LAW. …………………………………..47**

**CONCLUSION**..................................................................................................... **60**

**VERIFICATION and CERTIFICATE OF SERVICE**…………………………………**61**

## PETITION FOR WRIT OF HABEAS CORPUS

Comes now Petitioner, Logan Mills, through undersigned counsel, who respectfully submits this Petition for Relief pursuant to 28 U.S.C. §§ 2254 *et seq.*, requesting that this Court issue a Writ ordering that his unconstitutional state conviction be vacated.  This Petition for Relief follows his conviction and sentence in the Twenty-Second Judicial District for the Parish of Washington, State of Louisiana, in Criminal Case No. 11-CR5-113331 captioned *State of Louisiana v. Logan Nestor Mills*.

## STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction in this case.  The conviction and sentence of Mr. Mills occurred in Washington Parish, Louisiana.  *See* 28 U.S.C. 2241(d).

## STATEMENT OF INCORPORATION

All facts pled herein go to all claims, and all claims, facts, exhibits, legal arguments, and authority of law previously pled in this action, whether in this Court or in any other, are hereby incorporated by reference.

## PROCEDURAL BACKGROUND

### A.    TRIAL AND DIRECT APPEAL

The State of Louisiana indicted Logan Mills and co-defendant Walter Roy Aswell for one count of armed robbery (Count 1), one count of armed robbery with a gun (Count 2), three counts of attempted first degree murder (Counts 3, 4, and 5), and one count of aggravated obstruction of a highway (Count 6), in violation of La. R.S. 14:64, 14:64.3, 14:27:30, and 14:96.  Mills was arraigned and pled not guilty on June 1, 2011.

Mills proceeded to trial alone from August 13 through 20, 2012.  At the trial's conclusion, the jury convicted Mr. Mills of Counts 1, 2, 3, 4, and 6, and acquitted him of Count

1

5. The court sentenced Mills to 60 years for the count of armed robbery, five years for the count of armed robbery with a gun, 40 years for the two counts of attempted murder, and 15 years for the count of aggravated obstruction of a highway, with all sentences to be served concurrently. Following sentencing, Mills was adjudicated as a second felony offender, and the court enhanced his sentence to 70 years at hard labor for the armed robbery count, all other sentences to remain the same.

Mills appealed his conviction and sentence, which the Louisiana Court of Appeal for the First Circuit affirmed on August 27, 2014.[1] On September 9, 2014, Mills filed a *pro se* Application for Rehearing with the First Circuit, which was denied on September 26, 2014.[2] On September 26, 2014, Mills' appointed appellate counsel filed an Application for Certiorari with the Louisiana Supreme Court, which was denied on May 22, 2015.[3] Mills filed a *pro se* Application for Certiorari with the Louisiana Supreme Court on October 27, 2014, which the court denied on September 18, 2015.[4]

B.     STATE POST-CONVICTION

Mills timely filed an application for post-conviction relief (PCR) with the Twenty-Second Judicial District Court on August 19, 2016, which was followed with a memorandum of law on September 30, 2016.[5] On November 21, 2016, without ordering the State to respond to Mills' application, the trial court summarily denied Mills' PCR application.[6] Mills timely filed a notice of intent to seek supervisory writs, and following a Motion to Amend the Return Date, he filed his writ application with the First Circuit Court of Appeal on February 16, 2017. A three-

---

[1] *State v. Mills,* 13-0573 (La. App. 1 Cir. 8/27/14), 153 So.3d 481.
[2] *State v. Mills*, 2014 La. App. LEXIS 2303 (La.App. 1 Cir. 9/26/14).
[3] *State v. Mills*, 14-2027 (La. 5/22/15), 170 So.3d 982.
[4] *State ex rel. Mills v. State*, 14-2269 (La. 9/18/15), 178 So.3d 139.
[5] *See* Exhibits A-B, Mills' Original PCR and supporting exhibits.
[6] *See* Exhibit C.

judge panel denied Mr. Mills' writ application without written explanation.[7]  Mr. Mills then timely filed a writ application to the Louisiana Supreme Court, which was denied without reason on August 31, 2018.[8]

## C.   PETITION FOR A WRIT OF HABEAS CORPUS

Out of an abundance of caution due to the discrepancy of when Mr. Mills' conviction became final due to the separate appellate rulings by the Louisiana Supreme Court, Mr. Mills filed his Petition for a Writ of Habeas Corpus in order to preserve his collateral claims for relief and ensure timely filing of this application pursuant to 28 U.S.C. § 2244(d)(1)(A).  *See* Doc. 1. This Court ordered that Ms. Mills' habeas petition be stayed and held in abeyance until he could exhaust his collateral claims in the state courts.  *See* Doc. 5.

Following the Louisiana Supreme Court's denial of his writ application on August 31, 2018, Mr. Mills filed a motion to reopen his habeas petition on October 29, 2018.  *See* Doc. 6. Also on October 29, 2018, Mr. Mills also moved to amend "as a matter of course" his habeas petition pursuant to FED. R. CIV. P. 15(a)(1).  *See* Doc. 7.  The Amended Petition follows:

## STATEMENT OF FACTS

On April 20, 2011, Logan Mills and Walter Aswell entered the Capital One Bank on Columbia Street in Bogalusa and committed an armed robbery. Following the robbery, Mills and Aswell fled in a black Jeep and a 12-mile chase ensued involving units from the Bogalusa Police Department and Washington Parish Sheriff's Office. During the chase, gunshots were exchanged between the Jeep and the pursuing police officers. It is undisputed that the passenger of the Jeep was the sole shooter.

The chase ended in Mississippi when Mills and Aswell abandoned the Jeep and fled in

---

[7] *See* Exhibit D.
[8] *See* Exhibit E, *also State v. Mills*, 2018 La. LEXIS 2006 (Aug. 31, 2018).

opposite directions. In the course of arresting both suspects, the Bogalusa Police Department shot and severely beat both Mills and Aswell. The officers responsible for shooting and beating Mills and Aswell testified that Mills was the passenger of the Jeep. Aswell, who testified against Mills in exchange for a drastically reduced sentence, corroborated the officers' claim that Mills was the Jeep's passenger.

Mills testified that the bank robbery was Aswell's idea and that Aswell threatened to shoot Mills if he did not participate.[9] It is undisputed that at all times during the bank robbery, Aswell remained behind Mills, holding a gun. Aswell testified that Mills exited the bank first and dropped a single stack of money that Aswell bent down to pick up.[10] Mills testified that upon exiting the bank, he entered the driver's side of the Jeep and drove from Bogalusa to Mississippi. Mills testified that Aswell was at all times armed with a loaded gun and warned Mills not to stop the vehicle. Mills testified that Aswell was initially in the back seat but eventually moved into the front seat and began to shoot at the police. Mills denied shooting at the police officers and denied firing any weapon on the day of the robbery.

Multiple independent witnesses and physical evidence corroborate Mills' testimony that he was the driver. Gereldine Ledet testified that she and a friend were driving by the Capital One on Columbia Street on the morning of April 20, 2011, when her friend exclaimed, "The bank has just been robbed."[11] Ms. Ledet testified that the first person she saw ran around and got in the driver's seat.[12] Ms. Ledet testified that she saw another person: "I don't remember like exactly him running to the vehicle, whatever, I just seen somebody stop and go down like, you know, like to get something and come back up. But I only, the driver of the vehicle is the only

---

[9] State App. Rec. pp. 1995-96.
[10] *Id*. at p. 377.
[11] *Id*. at p. 1350.
[12] *Id*. at p. 1357.

person I actually seen, you know."[13]

Diana Thomas testified that she was with Ledet and saw one man run out of the bank wearing a hood.[14]  Ms. Thomas stated she only saw one individual exit the bank, and that this individual entered the driver's side of the Jeep.[15]  Ms. Thomas further testified that she would not be able to identify the individual, as he wore a hood and was bent over so she did not see his face.[16]

A third independent eyewitness was Wanda Terrell, who was driving by the Capital One with her daughter and her brother. Ms. Terrell saw two people exiting the bank wearing hoodies and one person bent down to pick something up.[17]  Ms. Terrell testified she saw the hooded individuals enter a black Jeep and drive away, but she could not identify either occupant of the Jeep.[18]

Kermit Martin testified that he was in Wanda Terrell's vehicle and saw "bundles of money laying [*sic*]. A guy coming out with a hood on. One guy was getting in the Jeep on the other side. The other guy was picking the money up."[19] Mr. Martin testified that the person he saw pick up the money got in the passenger seat of the Jeep.[20] When asked whether he was sure about his recollection, Mr. Martin replied, "I am positive."[21]

Amanda Carnegie was also in Wanda Terrell's vehicle and told the jury that she saw "two people coming out of the bank. They were dressed similar. I seen them drop, I seen one of

---

[13] State App. Rec. at p. 1357.
[14] *Id*. at p. 1362.
[15] *Id*. at p. 1364.
[16] *Id*.
[17] *Id*. at p. 1372.
[18] *Id*. at p. 1379.
[19] *Id*. at p. 1386.
[20] *Id*. at p. 1392.
[21] *Id*.

the people drop money."[22] However, Ms. Carnegie did not know which of the two individuals entered the driver's side of the Jeep.[23] Mills' role as the driver is further corroborated by the fact that the single stack of money, which Aswell admitted to picking up, was found on the floor between the passenger seat and the door.[24]

Aswell's role as the passenger is further corroborated by his own testimony that the night before the robbery, he loaded the 9mm pistols' magazines to capacity.[25] Although the robbery began with a fully-loaded 9mm, Darryl Perkins of the Mississippi Department of Public Safety testified that when he went to Forrest General Hospital, he recovered a magazine containing only two bullets from Walter Aswell's person.[26]

The police officers responsible for shooting and beating Mills and Aswell testified that it was necessary to shoot Mills because once the Jeep stopped, the passenger continued firing at the police officers.[27] Anna Savrock with the Mississippi Bureau of Investigations testified that she was called out to the address where the chase ended for the purpose of photographing the scene and collecting evidence.[28] Ms. Savrock testified that a team of agents utilized metal detectors and got on their "hands and knees" to ensure that no shell casings were missed.[29] Savrock further testified that numerous .40 caliber shell casings (attributable to the police officers' weapons) were found on the scene, but no 9mm shell casings were found outside of the getaway vehicle.[30]

Mills testified that when he was apprehended, he did not resist arrest. He was handcuffed,

---

[22] State App. Rec. at p. 1400.
[23] *Id.* at p. 1405.
[24] *Id.* at p. 378.
[25] *Id.* at p. 327.
[26] *Id.* at p. 1714.
[27] *Id.* at p. 488.
[28] *Id.* at pp. 1411, 1416.
[29] *Id.* at p. 1426.
[30] *Id.* at pp. 1587-88.

beat, and shot in the back. Walter Aswell testified that he was severely beaten as well and that police officers pointed a gun in his face and threatened to kill him.[31]  Aswell testified that the police officers claimed they already killed Mills.[32]  The arresting police officers denied these allegations at trial. The excessive force used by the police officers on Mills prompted the filing of a civil rights lawsuit, which has since been settled without trial. *Mills v. City of Bogalusa, et al,* 12-CV-0991 (E.D. La. 11/16/16).

## ARGUMENT

Logan Mills did not get a fair trial in the state court and his conviction and sentence should not be allowed to stand. The significant constitutional errors in the proceedings as discussed in detail below, individually and cumulatively, warrant relief in this case.

## STANDARD OF REVIEW

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.[33]

However, "AEDPA's deferential standard of review applies only to claims that were actually 'adjudicated on the merits in State court proceedings.'"[34]

---

[31] State App. R. at p. 330.
[32] *Id.* at p. 371.
[33] 28 U.S.C. § 2254(d)(1).
[34] *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012)(citing 28 U.S.C. § 2254(d)).

7

## CLAIMS FOR RELIEF

**CLAIM I:     MILLS' TRIAL WAS STRUCTURALLY FLAWED DUE TO IMPERMISSIBLE BIAS ON THE PART OF THE PROSECUTION TEAM**

In *In re Murchison*, the United States Supreme Court held that "[a] fair trial in a fair tribunal is a basic requirement of due process."[35] The Court further held that "[f]airness .... requires an absence of actual bias in the trial of cases."[36]

In an incident that made national news, all of the key officials involved in Mills' prosecution were caught, via cell phone video, conspiring to put false charges against Mills' uncle, Douglas Dendinger, minutes after Mills' trial ended. These officials include: both of the assistant district attorneys who conducted Mills' trial, Leigh Anne Wall and Julie Knight; Mills' trial judge's law clerk, Pamela Legendre; the three Bogalusa police officers who arrested Mills, Patrick Lyons, Scott Seals, Chad Cassard; the main Bogalusa Police Department detective involved in Mills' case, Kendall Bullen; and the chief of the Bogalusa Police Department, Joe Culpepper.[37]

A few minutes after Mills' jury returned with its verdict, all of the above-referenced officials (hereinafter Mills' prosecution team) exited the front of the courthouse. Mills' uncle, who was waiting outside on the courthouse steps, walked up to Cassard and handed him a summons for Mills' excessive force lawsuit. Cassard gave the summons to Detective Bullen, who then threw it back in Dendinger's face. Mills' prosecution team simultaneously surrounded Dendinger and started cursing him. Dendinger then left and went home.

Within approximately twenty minutes, deputies from the Washington Parish Sheriff's Office showed up at Dendinger's house with a warrant for his arrest. Dendinger was arrested and

---

[35] 349 U.S. 133, 136 (1955); *see also United States v. Ebron*, 683 F.3d 105, 130 (5th Cir. 2012).
[36] *Id.*
[37] *See* Exhibits K, L, M, N, 0, P, and Q of Petitioner's Original PCR, attached herein as Exhibit B.

charged with simple battery, obstruction of justice, and intimidation of a witness, because of false written statements that Mills' prosecution team submitted to Deputy Steven Galloway with the Washington Parish Sheriff's Office.[38] These statements alleged that Dendinger assaulted Officer Cassard.[39]

Officer Cassard told the police that Dendinger "slapped me in the chest."[40] ADA Knight told deputies, "We could hear the slap as he hit Cassard's chest with an envelope of papers ... This was done in a manner to intimidate everyone involved."[41] Mills' trial judge's law clerk, Legendre, told deputies that "it made such a noise" she thought the officer had been punched.[42]

Supported by two of his prosecutors who were at the scene, former District Attorney Walter Reed formally charged Dendinger with one count of obstruction of justice, one count of simple battery, and one count of intimidating, impeding, or injuring witnesses, violations of La. R.S. 14:130.1, 14:35, and 14:129.1A(2)(3).[43] Unbeknownst to Mills' prosecution team, Mills' aunt and younger brother had recorded the incident with their cell phones.

After nearly a year passed, Dendinger's attorneys succeeded in forcing Reed to recuse his office. The case was referred to the Louisiana Attorney General's Office and the charges were immediately dropped.  Had Mills' aunt and brother not recorded the incident, Mills' prosecution team almost certainly would have succeeded in sending an innocent man to prison.

The Louisiana Supreme Court has noted that in "our system of justice, we entrust vast discretion to a prosecutor. Because a prosecutor is given such great power and discretion, he is also charged with a high ethical standard."[44] The Court further noted that a "prosecutor stands as

---

[38] *See* Exhibit Y of Petitioner's Original PCR, attached herein as Exhibit B.
[39] See Exhibits R, S, T, U, V, W, and X of Petitioner's Original PCR, attached herein as Exhibit B.
[40] *See* Exhibit R of Petitioner's Original PCR, attached herein as Exhibit B.
[41] *See* Exhibit T of Petitioner's Original PCR, attached herein as Exhibit B.
[42] *See* Exhibit V of Petitioner's Original PCR, attached herein as Exhibit B.
[43] *See* Exhibit Z of Petitioner's Original PCR, attached herein as Exhibit B.
[44] *In re Jordan*, 04-2397 (La. 6/29/05), 913 So.2d 775, 781.

the representative of the people of the State of Louisiana," and is "entrusted with upholding the integrity of the criminal justice system by ensuring that justice is served for both the victims of crimes and the accused."[45] The United States Supreme Court has also "several times underscored the 'special role played by the American prosecutor in the search for truth in criminal trials.'"[46] In fact, it has specifically said that

> [i]t is a fundamental premise of our society that the state wield its formidable criminal enforcement powers in a rigorously disinterested fashion, for liberty itself may be at stake in such matters. We have always been sensitive to the possibility that important actors in the criminal justice system may be influenced by factors that threaten to compromise the performance of their duty.[47]

In *Satterwhite v. Texas*, the Court noted that some constitutional violations "by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, *they can never be considered harmless*."[48]  The Supreme Court held in *Vasquez v. Hillary*, "[w]hen constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm."[49]  In line with *Satterwhite* and *Vasquez*, the Supreme Court has determined that when a criminal case contains a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself . . . [and] [s]uch errors infect the entire trial process, [those errors] render a trial fundamentally unfair."[50] Put another way, "these errors deprive defendants of 'basic protections' without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair."[51]

---

[45] *Id*.
[46] *Banks v. Dretke*, 540 U.S. 668, 696 (2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281 (1999)).
[47] *Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 810 (1987).
[48] 486 U.S. 249, 256 (1988)(emphasis added).
[49] *Id*. at 263.
[50] *Neder v. United States*, 527 U.S. 1, 8 (1999)(citations omitted).
[51] *Id*. at 8-9.

Prosecutorial bias and judicial bias in a criminal proceeding are considered structural flaws that undermine the legitimacy and constitutionality of a defendant's trial and conviction.[52] Importantly, the assessment of such claims should begin from the premise that when an impartial officer like a prosecutor or judge are discovered to be biased, "his actual motivations are hidden from view, and we must presume the process was impaired."[53]

Mills could not have obtained a fair trial when the officials who conducted his trial harbored such animosity and/or bias towards him that they were willing to send an innocent man to prison for merely acting on Mills' behalf. This is the type of "fundamental flaw" that "undermines the structural integrity of the criminal tribunal itself, and *is not amenable to harmless error review*."[54]

The state district court decision concerning this claim was both "contrary to clearly established federal law,"[55] as well as based on an "unreasonable determination of the facts in light of the evidence presented."[56] That court simply stated that "Mills fails to show how the incident [involving his uncle] . . . prevented him from having a fair trial."[57]  In fact, its entire analysis of this claim rested on jurisprudence related to the Louisiana constitution and Louisiana's code of criminal procedure governing motions to recuse.[58]  The trial court judge failed to identify, apply or assess this claim within the context of clearly established federal jurisprudence concerning structural flaws within a criminal trial.  In addition, the state court's analysis of this claim rested on a belief that Mills needed to prove prejudice.[59]  However, the

---

[52] *See Young*, 481 U.S. at 812 (appointment of an interested prosecutor "is an error whose effects are pervasive"); *Tumey v. Ohio*, 273 U.S. 510 (1927)(a trial before an interested judge "constitutes a denial of due process of law.").
[53] *Vasquez v. Hillary*, 474 U.S. 254, 263 (1986).
[54] *Id*. at 263-64 (emphasis added).
[55] 28 U.S.C. § 2254(d)(1).
[56] *Id.* § 2254(d)(2).
[57] *Mills v. Vannoy*, State Post-Conviction Decision, p. 5 (Nov. 18, 2016), attached herein as Exhibit C.
[58] *Id*. at p. 4.
[59] *Id*.

Supreme Court dictates that "structural error" claims do not require a showing of prejudice.[60]  It is clearly established federal law that bias on the part of a prosecutorial team is a "structural flaw" that therefore does not require a showing of prejudice upon judicial review.[61]  These failures – coupled with the state district court judge's use of state law rather than federal law to evaluate Mills' claim – unambiguously demonstrate that the state court judge applied the wrong standard, which resulted in a decision contrary to clearly established federal law.

In addition, the state court's decision wrongly relies on the holding from *State v. King*, 2006-2283 (La. 4/27/07); 956 So.2d 562.  This matter concerned Louisiana state law concerning a *pre-trial* motion to recuse a biased prosecutor.  The remedy of recusal was not available to Mills because the prosecutorial and judicial bias toward him was "hidden" until the conclusion of his case.  In turn, the only remedy available to Mills was to raise this claim in his application for post-conviction relief.  By relying on *pre-trial* recusal standards articulated by Louisiana courts, rather than the proper structural bias standards established by the United States Supreme Court, the state court's decision is contrary to clearly established federal law.

The state court's decision concerning this claim relied on an incorrect legal standard, which resulted in a decision that contradicts clearly established federal law concerning structural flaws in criminal proceedings.[62]       Considering the state court adjudicated Mills' structural flaw claim by applying the wrong standard – it applied Louisiana jurisprudence concerning pre-

---

[60] *Vasquez v. Hillary*, 474 U.S. 254, 263 (1986).
[61] *See Young*, 481 U.S. at 812.
[62] *See Williams v. Taylor*, 529 U.S. 362, 405 (2000)(stating that "[a] state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases); *also Mosley v. Atchinson*, 689 F.3d 838, 849-50 (7th Cir. 2012)(finding that the state appellate court applied the wrong prejudice standard under *Strickland*, and remanding matter for evidentiary hearing in federal district court on petitioner's ineffective assistance of counsel claim).

trial recusal motions and state constitutional rights – this Court should review this claim *de novo* rather than providing deference to the state court decision.[63]

When properly reviewed under the correct standard, the facts Mills presented to the state court clearly "rebuts the presumption of [the state court's] correctness,"[64] and demonstrates that his prosecutorial team and several judicial officers presiding over his case had a bias "hidden from view" during the course of Mills' trial.  It was not until these individuals conspired against Mills' uncle that he discovered their true bias hidden throughout his trial.

Mills' uncle was not simply a bystander at his nephew's trial.  Rather he was also there to serve a federal civil rights complaint and summons on the individuals who used excessive force against Mills during his arrest, and who also happened to testify against him at trial.  Of note, Mills' version of events, specifically whether he was the driver or the passenger/shooter in the robbery's get-a-way car, also played a key role in the development of the facts underlying his civil rights lawsuit.  Had Mills been able to prove to a civil jury that in fact he was the driver rather than the passenger/shooter, the prosecutors and police officers involved in his criminal prosecution would have faced financial liability for their actions.[65]  In turn, the incident involving his uncle as Mills explained in state collateral proceeding clearly demonstrated the extreme retaliation employed by these individuals to silence Mills' story and maintain the reliability of his criminal conviction.  It also demonstrates the vested personal interest of the prosecutorial team involved in Mills' criminal case to avoid civil liability, and how their bias created a structural flaw in his trial.

The state court applied the wrong constitutional standard in reviewing Mills' collateral claim that his trial was structurally flawed and its outcome is therefore unreliable.  In fact, the

---

[63] *Id*. at 405-06; *also Martin v. Grosshans*, 424 F.3d 588 (7th Cir. 2005).
[64] *See Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003).
[65] The parties have since settled this matter, *see* Order, *Mills v. City of Bogalusa, et al*., 3:12-991, ECF Doc. 69.

state court's assessment of this claim is absent of any analysis concerning his federal rights to due process and a fair trial. Rather the state court's opinion focuses solely Mills' state constitutional rights and Louisiana law on recusal.

As well, the state court "unreasonably applied" the facts presented by Mills when it determined the evidence he presented did not prevent him from having a fair trial.[66] Because Mills' trial was structurally flawed in violation of his Fifth, Sixth, and Fourteenth Amendment Rights in the United States Constitution, his conviction and sentence must be set aside.

Mills, in turn, requests that this court issue a writ of habeas corpus so that he may be discharged from his unconstitutional confinement or constraint, or grant such other relief as may be appropriate, and to dispose of this matter as law and justice requires.

**CLAIM II:** **MILLS WAS DENIED HIS CONSTITUTIONAL RIGHT OF CONFRONTATION WHEN THE STATE COURT REFUSED TO ALLOW HIM TO CROSS-EXAMINE HIS CO-DEFENDANT ABOUT THE GREAT LEVERAGE UNDER WHICH HE WAS TESTIFYING PURSUANT TO A PLEA BARGAIN HE HAD CONFECTED WITH THE STATE OF LOUISIANA.**

On direct appeal, Louisiana's First Circuit determined that the trial court violated Mills' clearly established constitutional confrontation right with its decision to limit his ability to cross-examine Aswell.[67] In fact, the appellate court specifically stated that

> [t]he defendant should have been permitted to question Aswell regarding the maximum sentences that he could have received absent his plea agreement. With the benefit of that information, the jury, as the sole triers of fact and credibility, could appropriately draw inferences relating to the State's leverage over Aswell. Without the benefit of that information, the jury was limited in its ability to determine bias or impartiality on the part of Aswell. Under the particular facts presented, *the trial court's ruling infringed on the defendant's constitutional confrontation right by denying him the right to fully cross-examine Aswell.*[68]

---

[66] *Williams*, 529 U.S. at 406.
[67] *See Mills*, 153 So. 3d at 491.
[68] *Id.* (emphasis added).

Many federal courts, including the Fifth Circuit, have similarly found there to be a constitutional confrontation right violation when a trial court limits the cross-examination of a co-conspirator about the possible or maximum penalties he avoided by accepting a plea deal and agreeing to testify at trial.[69] In such a scenario, "[t]he law becomes more focused, and much more demanding, when the witness involved is a 'key' prosecution witness."[70] Therefore, trial courts are prevented from limiting cross-examination of these types of witnesses because such limits infringe on a criminal defendant's ability to present a full-defense by demonstrating witness bias.[71] Consequently, federal appellate courts have historically vacated criminal convictions when a trial court has limited the cross-examination of an important cooperating witness' testimony about the leniency expected in exchange for such cooperation.[72]

However, in Mills' matter, despite the trial court's serious constitutional error during his trial, the state appellate court wrongly affirmed his conviction by finding the trial court's violation to be harmless.[73]

As will be demonstrated in greater detail in Claim 6 of the instant habeas petition, the state court applied a harmless error analysis in a manner contrary to clearly established federal law when it ignored all of the facts in Mills' favor; and consistently viewed all of the facts and inferences it did consider in the light most favorable to the prosecution. The state court's assessment unreasonably minimized the significance of Aswell's testimony to the State's case in comparison to the evidence present in the record. In this case, the already-acknowledged

---

[69] *See United States v. Landerman*, 109 F.3d 1053, 1063 (5th Cir. 1997); *United States v. Larson*, 495 F.3d 1094, 1106-07 (9th Cir. 2007); *United States v. Chandler*, 326 F.3d 210 (3d Cir. 2003).

[70] *See Franklin v. King*, No. 1:10CV336, 2012 WL 993249, at *43 (S.D. Miss. Jan. 31, 2012).

[71] *See United States v. Abel*, 469 U.S. 45, 52 (1984) (stating "bias may be induced by a witness' like, dislike, or fear of a party, or by the *witness' self interest*. Proof of bias is almost always relevant because the jury, as finder of act and weigher of credibility has historically been entitled to asses all evidence which might bear on the accuracy and truth of a witness' testimony.") (emphasis added).

[72] *See supra*, n. 69.

[73] *See Mills*, 153 So. 3d at 494, *writ denied*, *State ex rel. Mills v. State,* 14-2269 (La. 9/18/15); 178 So.3d 139.

constitutional error concerning Mills' confrontation rights had a "substantial and injurious effect reached by the jury."[74]  As such, this Court should grant his habeas petition.

Several cases support Mills' assertion.  For instance, in *Greene v. Wainwright*, the Fifth Circuit reviewed a habeas petition and vacated the conviction of Greene, a police officer, for the sale of marijuana to another officer.[75]  As the prosecution's only eyewitness, the purchasing officer testified that Greene sold him the marijuana; Greene testified that though he did go to an apartment with the other officer, he only witnessed the officer exchange money for marijuana.[76]  As the court noted, "[u]ltimately, the case came down to a contest of credibility."[77]  To bolster Greene's defense, his counsel anticipated asking the other officer questions at trial about his problems with his mental health and stability which had been revealed in pretrial depositions.[78] However, the *Greene* trial court granted the state's motion to limit testimony to only the events of the sale and the chain of custody thereafter.[79]  On appeal, the Fifth Circuit reasoned that "[w]here *the witness [that] the accused seeks to cross-examine is the 'star' government witness, providing an essential link to the prosecution's case, the importance of full cross-examination to disclose possible bias is necessarily increased*."[80]  The court then found that the "petitioner was denied the opportunity to present evidence of any sort, including by cross-examination" and held that "[t]his absolute prohibition exceeds any possible trial court discretion."[81]  Finding a violation of the confrontation clause had occurred, the court ordered the writ of habeas corpus to be issued.[82]

---

[74] *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).
[75] 634 F.2d 272, 275 (1981).
[76] *Id.* at 273.
[77] *Id.* at 274.
[78] *Id.* at 273-74.
[79] *Id.* at 274.
[80] *Id.* at 275 (quoting *United States v. Summers*, 598 F.2d 450, 460 (1979)) (emphasis added).
[81] *Id.* at 276.
[82] *Id.* at 276-77.

Likewise, in *Kittleson v. Dretke*—a post-AEDPA case—the Fifth Circuit vacated a state court conviction because the trial court wrongfully limited the defendant's ability to cross-examine the State's star witness.[83]    There, the Fifth Circuit found that "[i]n a case that turned entirely on the credibility of the complaining witness, the state courts' restriction on Kittleson's ability to challenge the credibility violated his clearly-established confrontation and due process rights and *cannot be considered harmless*."[84]    The *Kittleson* Court relied on a similar case from the Seventh Circuit, which vacated a state court conviction for the trial court's "unreasonable application of the Supreme Court's confrontation doctrine."[85]

As in *Greene* and *Kittleson*, it simply was not a harmless error for the trial court to limit Mills' ability to cross-examine the State's star witness, Walter Aswell.  Aswell cut a deal with the State wherein he pled guilty as charged and agreed to testify for the State against Mills in exchange for an agreed upon sentencing range. In particular, he testified on direct examination that he pled guilty to three counts of attempted murder of police officers, one count of armed robbery, and one count of aggravated obstruction of a highway, for which he would receive an agreed upon sentence of between twenty-five and thirty years, "for testifying."[86]

In cross-examination concerning the deal, the following exchange developed in pertinent part:

DEFENSE:    Now let's talk about this plea deal that you got. You spoke with your lawyer about an offer that was extended to you and it was agreed that you'd come testify for the state against Logan Mills, right?

ASWELL:    Yes, sir.

DEFENSE:    And your expected sentence is somewhere between twenty-five and thirty years, correct?

---

[83] 426 F.3d 306, 323 (5th Cir. 2005).
[84] *Id*. at 322-23.
[85] *Id*. at 322 (citing *Redmond v. Kingston*, 240 F.3d 590, 591 (7th Cir. 2001)).
[86] State App. Rec. at pp. 322-323.

ASWELL:        Yes, sir.

                      ***

DEFENSE:       **Now you have considerably more exposure than that twenty five to thirty years that Ms. Wall asked you about, right?**

STATE:          Objection, Your Honor. May we approach?

COURT:          Approach.

                      (At the bench).

COURT:          What is your objection?

STATE:          I object because it is speculation unless he can show that, I mean, it is a multiple sentence and anything in that years is up to you, **so to suggest that because of his testimony for the state he got something less than the maximum, I think it's inappropriate.** I think it is speculative to what he could have gotten, because it's not the district attorney but Your Honor that sentences.

                      ***

STATE:          It's twenty-five to thirty. That's what it is. I think **the record reflects his testimony was to be consistent with his prerecorded pretrial statements and if he deviated from that it would be invalid. Your Honor is aware of what the plea agreement was.**

DEFENSE:       I was here. I'm saying if he doesn't testify in conformity with his written statement he's no longer bound.

COURT:          You can question him in that manner, but that's not exactly what you were saying. You were going into potential exposure if he didn't plead guilty.

DEFENSE:       Correct.

                      ***

DEFENSE:       And if he lies, if he does not testify in conformity with the statement, it's more if he lies. If it's not in conformity, Your Honor is not bound and can max him out. That's what I'm trying to get at.

COURT:          If you want you can go into that, **but you can't talk about what the maximum sentence is.**

18

DEFENSE: . . . . I understand the basis of her objection, but it goes directly to the heart of the motivation and reason for testifying and they have a potential ninety-nine year sentence hanging over his head.

COURT: I understand the line of questioning and **I think the approach was improper.**

DEFENSE: Is it your appreciation if he does not testify in conformity with the statement you are not bound?

COURT: **But that does not open it up to question on maximum sentence.** I may invite the question if you don't testify in conformity with the prior statements that opens up the potential for a much longer sentence **without going into specifics.**

DEFENSE: I did not get into that on what is the possible exposure, and let me ask, I assume you are ruling I am limited to asking if he's aware of way more exposure. **I can't ask him about possible maximum exposure?**

COURT: **That's inviting the jury to know what the potential exposure is for your client.**

    ***

**. . . . I will not allow you to talk about what the maximum sentences are.**

    ***

DEFENSE: I object to Your Honor's ruling and would like to note my objection. I think the Court's ruling is inconsistent and impermissible limiting my inquiry to the sentence as it is would limit my ability to cross examination on this sentence in that regard. That is central to cross, because the maximum exposure if he did not testify exactly the way the state wants . . . . That goes to bias. Additionally because of the limitation placed on me by the ruling, I move for a mistrial.

    ***

DEFENSE: Note my objection.[87]

       The judge, and the State, and Aswell, all knew that if Aswell didn't toe the line and testify in conformity with his pre-trial statements that he then faced a potential sentence of ninety nine years on the armed robbery, fifty years on each of the three counts of attempted murder, and fifteen years on the aggravated obstruction. Aswell certainly knew that the deal was: **play ball and get a sentence of between 25 and 30 or deviate from the script and face a potential**

---

[87] State App. Rec. at pp. 353-359 (emphasis added).

**sentence of 264 years.** It was under such a threat that Aswell pled guilty – and it was under such a threat that he testified before the jury that convicted Mills.

However, the jury, to whom knowledge of that exposure mattered the most, were denied that information, depriving Mills the tools with which to effectively cross-examine the most critical witness against him: the person Mills accused of coercing him into the criminal acts that resulted in his conviction and sentence of seventy years.

In Mills' case all the jury was allowed to learn was that pursuant to the plea agreement Aswell faced a sentence of between twenty-five and thirty years, dependent upon his truthful testimony before the court. As such, it would appear to a lay person that there was at most a five-year swing in play – that testimony pleasing to the State might result in a sentence of twenty-five years but that otherwise the maximum was thirty. The leverage would amount to a possible increase in sentence of only twenty percent.

Mills' jury was prohibited by the court from knowing the truth: if Aswell testified in agreement with Mills that Aswell was the leader of the criminal episode, if Aswell testified that he coerced Mills into participation, if Aswell testified that he, not Mills, was the passenger in the vehicle, if Aswell simply recanted his statements to the police, then, under those circumstances, **all deals were off and his sentencing exposure was as high as 264 years.** Rather than a five year club hanging over his head, with a potential increase of a mere twenty percent, Aswell had literally hundreds of years of punishment, a sentence ten times greater, looming over his head if he did not testify in the manner agreed. If the jury had been made aware of the enormous power of the inducement hanging over Aswell's head, they may have justifiably questioned his veracity on key aspects of the case against Mills. There can be no question that the jury was entitled to that important information in evaluating Aswell's credibility.

The denial of defendant's right to confrontation is subject to a harmless error analysis.[88] In determining harmless error, the question is "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in the trial was surely not attributable to the error."[89] The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of the cross-examination otherwise permitted, and, the overall strength of the prosecution's case.[90]

As noted above, Aswell was an absolutely critical witness for the State both for supporting the State's case in chief and for directly attacking the heart of the defense.  Aswell testified about the planning of the robbery, the acquisition of the firearms, ammunition, disguises, the vehicle, the selection of the target, the selection of the escape route, the shooting at the police. On all critical aspects of the criminal episode he testified in a way so as to divert attention from himself and to shift blame upon Mills. No other witness was so positioned to help the State make its case against the Mills. The importance of his testimony cannot be overstated.

Mills' defense was one of justification: he claimed that he was coerced into committing the armed robbery by Aswell. La. R.S. 14:18(6). Aswell's testimony – and credibility – was thus extremely important to the prosecution's case. Conversely, Mills' counsel's need to confront

---

[88] *Delaware v. Van Arsdall*, 475 U.S. 673 (1986).
[89] *Sullivan v. Louisiana*, 508 U.S. 275 (1993).
[90] *Delaware*, 475 U.S. at n. 52.

Aswell and challenge his credibility was essential to the exercise of Mills' constitutional right of confrontation.

Nevertheless, state appellate court in Mills' case applied a harmless error standard that was contrary to the Supreme Court's decision in *Delaware* that outlined the harmless error test. Given the singularity of Aswell's testimony it was surely not cumulative, and was in many important aspects completely uncorroborated by any witness. The question of who entered the driver's seat to drive away from the bank was contested throughout the trial. If Aswell were to be believed, it was he at the wheel and Mills who fired upon the police. If Mills were to be believed, it was him who was at the wheel and Aswell was the shooter, lending critical support to Mills' claim that he acted in response to Aswell's armed coercion.

The state court also ignored that the testifying Bogalusa police officers were repeatedly impeached on cross-examination on several important issues. For instance, Officers Lyons, Seals and Cassard all denied beating Aswell who suffered a fractured skull during his arrest.[91] Officer Cassard changed his story several times in written reports, and while testifying about when the shooting between the Jeep's passenger and the police began.[92] Officer Seals testified that he shot Mills while Mills was facing him, a complete fabrication considering that Mills was shot in the back.[93] As well, Officer Lyons testified that Mills was "kickbox" fighting with other officers in resisting his arrest, another extreme improbability considering that Mills had a collapsed lung from the multiple gun shot wounds he endured.[94] Yet, despite the proven

---

[91] *See* State App. Rec. 453, 464, 531, 1890-1.
[92] *Id*. at 426, 432, 438.
[93] *Id*. at 532.
[94] *Id*. at 553, 1916.

unreliable nature of these officers' testimony, the state court wrongfully based its determination on a finding that these officers' were truthful and corroborative of Aswell's testimony.[95]

The state court also believed it significant that the 9mm Beretta pistol was found in the area where Mills was apprehended.[96] The state court ignored the fact that the pistol was admittedly moved by the Bogalusa police officers in Mills' trial.[97]

In no way can one conclude that the trial court's error in violating Mills' constitutional confrontation right in this case was harmless beyond a reasonable doubt.  In fact it appears that the state appellate court reviewed Mill's confrontation error claim under a sufficiency of the evidence analysis, rather than appropriately applying the harmless error analysis as discussed in *Delaware*.   As further evidenced in its opinion, the state appellate court ignored all of the facts in Mills' favor and consistently viewed all of the facts and inferences it did consider in a light most favorable to the prosecution.   Moreover, the state court unreasonably minimized the significance of Aswell's testimony to the State's case.  By wrongly applying the harmless error standard, the state appellate court's decision was contrary to and an unreasonable application of clearly established federal law concerning a Mills' right to confrontation.

Mills, in turn, requests that this court issue a writ of habeas corpus so that he may be discharged from his unconstitutional confinement or constraint, or grant such other relief as may be appropriate, and to dispose of this matter as law and justice requires.

**CLAIM III:   MILLS WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO INVESTIGATE HIS CO-DEFENDANT'S MENTAL HEALTH HISTORY, AND FAILED TO PRESENT EVIDENCE THAT HIS CO-DEFENDANT WAS UNDER THE INFLUENCE OF PSYCHOTROPIC MEDICATION AT THE TIME OF THE CRIME.**

---

[95] *See Mills*, 153 So. 3d at 493.
[96] 153 So. 3d at 493.
[97] State App. Rec. p. 516.

The standard of review for a claim of ineffective assistance of counsel set forth in *Strickland v. Washington*, requires a reviewing court to reverse a conviction if the defendant establishes: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different.[98] This "reasonable probability" standard does not require a defendant to show that counsel's deficient conduct more likely than not altered the outcome in the case.[99]

On a habeas review of an ineffective assistance claim, "federal courts are to afford both the state court and the defense attorney the benefit of the doubt."[100] Such deference to trial counsel's strategy, however, must be viewed within the reasonableness "of the adequacy of the investigations supporting it."[101] Consequently, this Circuit is

> mindful that 'the range of reasonable professional judgments is wide,' [and that] courts recognize that '[i]neffectiveness is generally clear in the context of a *complete failure to investigate because counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such a decision could be made.*'[102]

In this case, prior to trial, Mills informed his trial counsel that his codefendant, Walter Aswell, had been taking prescription psychotropic medication.[103] Mills informed his counsel of this because Mills believed it might be relevant to his defense that Aswell had coerced him to participate in the robbery. The topic did not come up again until the middle of trial, when Mills asked his attorney if he had investigated Aswell's mental health history. Trial counsel responded that he "didn't have time."[104]

---

[98] 466 U.S. 668, 694 (1984).
[99] *Id*. at 693.
[100] *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (internal quotation marks omitted).
[101] *Wiggins*, 539 U.S. at 521.
[102] *Anderson v. Johnson*, 338 F.3d 382, 391 (5th Cir. 2003)(emphasis added).
[103] Exhibit J of Petitioner's Original PCR, attached herein as Exhibit B.
[104] *Id*.

In Mills' case, there is no question that counsel was deficient in failing to investigate Aswell's mental health history.  In fact, with respect to Mills' claim that his trial counsel's performance was constitutionally deficient due to his failure to investigate the prosecution's star witness' mental health status, the trial court determined that *Strickland's* first prong was met when it stated that

> [t]he Court notes the purpose of the information regarding Aswell's mental health history and alleged use of psychotropic medication during the commission of the offense would have been to impeach Aswell's credibility, especially as to the issues of Mills' claimed coercion into committing the robbery and also as to whether Mills or Aswell was the driver of or the passenger in the getaway car.[105]

The trial court, however, found that Mills had failed to show he was prejudiced by his attorney's failings.[106]  It's finding was not based on its own assessment, but rather on the state appellate court's flawed summary of Mills' case.[107]  As discussed previously, this appellate court summary failed to account for officer admission of moving evidence and repeated impeachment of law enforcement testimony that undermined the overall reliability of their truthfulness.  Therefore, the jury should have had evidence of Aswell's mental health issues while considering the veracity of his testimony. In a factually similar case, the Tenth Circuit recently vacated a habeas petitioner's conviction due to a *Brady* violation where the State withheld mental health documentation concerning its star coconspirator cooperating witness.[108]

Mills' defense was one of justification: he testified that he was coerced by Aswell to commit the robbery with him.[109] The State's theory was that Mills was a willing participant in the

---

[105] *See* Exhibit C, at 6.
[106] *Id.*
[107] *Id.*
[108] *See Browning v. Trammell*, 717 F.3d 1092 (10th Cir. 2013); while related to a Fourteenth Amendment violation rather than a Sixth Amendment violation, Mills notes that the following federal courts have vacated a state court conviction due to a *Brady* violation when the State withheld exculpatory/impeachment related material related to a star witnesses' mental health: *see Wilson v. Beard*, 589 F.3d 651 (3d Cir. 2009); *Fuentes v. Griffin*, 829 F.3d 233 (2nd Cir. 2016).
[109] La. R.S. 14:18(6)

armed robbery. The only direct evidence the State presented that contradicted Mills' justification defense was Aswell's testimony denying that he coerced Mills. Aswell's testimony – and credibility – was thus paramount to the State's case.

If the jury had been aware of Aswell's mental health issues, its perception of Aswell's character and credibility likely would have been significantly diminished.  Indeed, evidence that the person Mills claimed coerced him into committing the robbery was also under the influence of psychotropic medication would have been extremely relevant for the jury in its deliberation. A reasonably effective attorney would have immediately seen the impeachment value of such evidence, particularly in light of Mills' theory of defense.

In *Strickland*, the Court specifically addressed so-called "failure to investigate" claims, explaining that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[110] The Court further explained that only those "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation."[111] In short, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[112]

Trial counsel's decision to not investigate Aswell's mental health issues because he "didn't have time" cannot be considered strategic.

Moreover, it cannot be said that Mills was not prejudiced by counsel's failure to investigate this significant impeachment evidence.  As evidenced by the record, the trial was essentially a swearing match between Mills and Aswell.  Had the jury believed Mills was the victim of the threat-by-deadly-force coercion of Aswell, it would have found Mills to be not

---

[110] *Strickland*, 466 U.S. at 690.
[111] *Id*. at 691.
[112] *Id*.

guilty.  Further, Aswell and Mills both testified that they were the driver of the getaway vehicle. In light of the fact that the passenger of the getaway vehicle was shooting at the police during the chase, Mills' coercion defense was only possible if he was the driver.

Perhaps most important of all, Aswell was the only witness who materially contradicted Mills' testimony and who was not also substantially impeached. For example, although Diana Thomas' testimony places Mills in the passenger seat, her testimony was contradicted by both Kermit Martin and Gereldine Ledet, whose testimonies place Mills in the driver's seat.[113] Likewise, as discussed in the prior claim, the three Bogalusa police officers that identified Mills as the passenger were completely and thoroughly impeached.

Aswell was thus an absolutely critical witness for the State, both for supporting its case-in-chief and for directly attacking the heart of the defense. The jury should have been privy to Aswell's serious mental health issues and that he was under the influence of psychotropic medication before and during the offense. Only with the benefit of that information could the jury properly evaluate Aswell's credibility – and capabilities.

Even without this evidence, it is apparent that the jury grappled with its decision, as it deliberated for over three hours. Considering the undeniable importance of Aswell's testimony to the State's case, trial counsel's failure to investigate Aswell's mental health history without doubt prejudiced Mills and impacted the outcome of his case.  Had the jury been privy to impeachment evidence concerning the veracity of Aswell's testimony, the outcome of the proceedings would have been different.

The trial court misapplied the prejudice analysis set forth by the Supreme Court in *Strickland* when it held that the testimony of the police officers was sufficient to establish Mills as the passenger.  In *Strickland*, the Court instructed that, when conducting the prejudice analysis,

[113] State App. Rec. at pp. 1357, 1364, 1392.

27

"a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."[114] The Court further instructed that "[t]he assessment of prejudice should proceed on the assumption that the decision maker is reasonably, conscientiously, and impartially applying the standards that govern the decision."[115] The record clearly shows that the Bogalusa police officers that identified Mills as the passenger were completely and thoroughly impeached. These officers were not caught in minor inconsistencies about marginal or irrelevant matters. Rather, their testimonies irreconcilably conflicted with each other, as well as the physical evidence.  As the Supreme Court recently instructed in *Wearry v. Cain*, a reviewing court cannot simply ignore evidence in a criminal defendant's favor in order to achieve its desired result.[116] Likewise, the trial court should not have simply ignored the substantial impeachment of the three Bogalusa police officers and just assume the jury believed their testimony that Mills was the passenger.

The state court's assessment of Mills' ineffective assistance of counsel claim was therefore contrary to the clearly established law under *Strickland*'s jurisprudence.   Consideration of the totality of such evidence is what the trial court should have done when it considered Mills' ineffective assistance of counsel claim when determining prejudice.  The trial court's failure to do so resulted in a misapplication of clearly established federal law.

In addition, the state court's ruling was an "an unreasonable application" of clearly established federal law because "the state court correctly identifie[d] the governing legal principle . . . but unreasonably applie[d] it to the facts" of Mills' ineffective assistance of counsel claim.[117]

---

[114] 466 U.S. at 695.
[115] *Id.*
[116] 577 U.S. ___ (2016).
[117] *See Bell v. Cone*, 535 U.S. 685, 694 (2002)(citing *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000)).

28

In turn, Mills requests that this court issue a writ of habeas corpus to have him brought before it so that he may be discharged from his unconstitutional confinement or constraint, or grant such other relief as may be appropriate, and to dispose of this matter as law and justice requires.

**CLAIM IV:  MILLS WAS DENIED HIS CONSTITUTIONAL RIGHT OF CONFRONTATION AND RIGHT TO A FAIR TRIAL WHEN THE STATE COURT ALLOWED THE PROSECUTOR TO IMPEACH MILLS WITH A FEDERAL COMPLAINT THAT WAS PREPARED BY A CALIFORNIA ATTORNEY THAT MILLS DID NOT KNOW AND HAD NEVER COMMUNICATED WITH.**

As was made clear at trial, Mills suffered serious physical injuries as a result of excessive force used against him by his arresting officers. Accordingly, Philip Kaplan, a California attorney, filed a 42 U.S.C § 1983 complaint in the Eastern District of Louisiana.[118] In the unverified complaint, attorney Kaplan wrote, *inter alia*, that Mills "was involved with an armed robbery."[119] In paragraph five, attorney Kaplan wrote: "After the above-alleged acts, the above defendants [Lyons, Seal and Cassard] . . . were involved in the pursuit of a vehicle, in which Plaintiff was a passenger."[120]

Mindful of the "passenger" language contained in the complaint, and aware of the State's desire to interrogate Mills as to the contents of the pleading so as to impeach the defense theory, trial counsel made a motion in limine prior to Mills testifying, addressed in pertinent part as follows:

DEFENSE:   It is the defense's contention that complaint is unverified and that those statements are hearsay and inadmissible. They're not under the case law cited in my motion in limine, a judicial admission of any kind, and thus, not proper fodder for cross-examination with regard to the statements contained therein.

---

[118] Complaint, *Logan N. Mills v. City of Bogalusa, et al*, 3:12-991, ECF Doc. 1.
[119] Exhibit A, p. 4 of Petitioner's Original PCR, attached herein as Exhibit D.
[120] *Id*. at p. 5.

Additionally, Judge, those are the statements of [Mills'] civil lawyer, who hasn't been called to testify ... The fact that you filed suit and are seeking damages against these officers, that's certainly grounds and proper grounds for cross-examination. But I think the statements contained within the petition are the hearsay statements of his civil counsel, who is not here to testify and is not here to testify about the basis for those statements.[121]

The trial court denied the motion in limine and cited the following reasons:

COURT:      Relative to this motion in limine, the Court is going to deny the motion in limine. Although it's not a judicial confession, it is still a statement against interest that it's in a legal proceeding. And if he takes the stand, he opens the door to be cross-examined based upon those pleadings, and he can explain the purpose of those representations if he wants to take the position that he was the driver.

It's not a judicial confession that somehow precludes him from raising other legal findings. But in filing it, he has opened the door, if he takes the stand, to being examined on what is stated in there. If he wants to say well, I told my lawyer something differently, that's up to him when he gets on the stand, but it's fair game.[122]

Thus, with the sanction of the trial court, the State was unleashed to question Mills about a document not of his making. On cross, the State did indeed question Mills at length about the "passenger" language contained within the federal complaint, reading the pertinent passage to the jury aloud, and even questioning Mills concerning conversations he had engaged in with his trial counsel regarding his case.[123]

Under Louisiana law, hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.[124] Hearsay evidence is not admissible except as otherwise provided by Louisiana's Code of Evidence or other legislation.[125] Hearsay is excluded because the value of the statement

---

[121] State App. Rec. at p. 1972.
[122] State App. Rec. at pp. 1978-79.
[123] Id. at pp. 2048-49.
[124] La. C.E. art. 801(C).
[125] See La. C.E. art. 802.

rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability.[126]

Although the trial court admitted the petition as a statement against interest, on appeal the state court held that the petition was not hearsay because "[t]he allegations in the civil petition were made by the attorney hired by the defendant to file the suit on his behalf."[127] The court further noted that, pursuant to Louisiana Code of Evidence Article 801(D)(2)(c), "[a] statement is not hearsay if it is offered against a party and is by a person authorized by him to make a statement concerning the subject."[128]

The state appellate court's determination is without legal merit under state law, as it relies on no precedent indicating that Louisiana Code of Evidence Article 801(D)(2)(c) should apply to unverified civil complaints.[129]   In addition, this state court determination fails to make any adjudication on the merits of Mills' allegation that the State's use of this unverified civil rights complaint violated his constitutional confrontation rights and right to a fair trial.

Mills' then only opportunity to address this critical constitutional error reviewed on appeal was to offer new evidence in his collateral criminal proceeding.  Therefore, on his initial application for post-conviction relief in state court, he attached a declaration made under penalty of perjury, pursuant to 28 U.S.C. § 1746 from his civil rights attorney Philip J. Kaplan.[130]   This declaration provides details from Kaplan that he was *not* authorized to make any such statement, and that he "did not meet or confer with Mr. Mills" before filing the civil rights complaint used

---

[126] *See State v. Martin*, 458 So.2d 454, 460 (La. 1984).
[127] *State v. Mills*, 153 So.3d at 495 (FN8).
[128] *Id*.
[129] *Id*.
[130] *See* Exhibit I of Petitioner's Original PCR, attached herein as Exhibit B.

to impeach Mills at his criminal trial.[131] Attorney Kaplan further declared that, "[b]y use of the word 'passenger,' I was using it to mean an 'occupant.'"[132]

The collateral state court ruling applied a procedural bar pursuant to La. C. Cr. P. 930.4(A) and refused to consider the merits of Mills' claim.  The state court determined that as for Kaplan's declaration, all of Kaplan's assertions "corroborate Mills' trial testimony, which was considered and rejected by the jury. . . Consequently this claim is procedurally barred by La. C. Cr. P. art. 930.4(A)."[133]

The state court's mere mention of the procedural default does not suffice to bar federal review on the merits.[134]   In addition, the state court's reliance on 930.4, does not bar federal habeas corpus relief from this Court, because the use of the procedural bar in this case is not "adequate" in supporting its judgment, and is not "independent" of federal law.[135] In this matter, reliance on 930.4 was inappropriate in light of the new evidence in the form of Attorney Kaplan's declaration that supported Mills' claim and defeated the repetitiveness of his claim had the declaration been left out.  Lastly, federal habeas review is warranted in this matter, because Mills' can show "cause" for the default and "prejudice attributed thereto,"[136] and that a failure by this Court to review Mills' supposed defaulted claim would result in a "fundamental miscarriage of justice."[137]

In turn, AEDPA's deferential standard of review does not apply concerning this claim because no state court properly considered the merits of how the trial court infringed on Mills'

---

[131] Exhibit I of Petitioner's Original PCR, attached herein as Exhibit B.
[132] *Id.*
[133] *See* Exhibit C at 6.
[134] *Harris v. Reed*, 489 U.S. 255, 258 (1989).
[135] R. Hertz & J. Liebman, Federal Habeas Corpus Practice & Procedure, 1403 - 1539 (4th ed.).
[136] *Harris*, 489 U.S. at 262 (1989) (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986).
[137] *Id.*

due process right, right to a fair trial, and constitutional confrontational rights by permitting the use of this unverified complaint.[138]

During his trial, the State was allowed to impeach Mills and create the distinct false impression that Mills told his trial counsel that he was the passenger, who then relayed this information to attorney Kaplan.[139]

Because Mills did not authorize attorney Kaplan to make any statements, the complaint and the statements contained within it were inadmissible hearsay, the admission of which violated Mills' substantial rights. Critically, the complaint was used for the substantive purpose of proving the truth of the matter asserted by its out-of-court author – namely, that Mills was the passenger in the getaway vehicle. This was the central fact in question at Mills' trial, and it was dispositive of his guilt. The jury being actively misled on this dispositive issue is an error so serious it infringes upon Mills' constitutional right to a fair trial guaranteed by the Fourteenth Amendment to the United States Constitution.[140] As the Supreme Court noted in *Chambers v. Mississippi*, "the hearsay rule may not be applied mechanistically to defeat the ends of justice."[141]

Additionally, Mills was denied his constitutional right to confront the complaint's out-of-court author, Philip Kaplan. The Confrontation Clause of the Sixth Amendment prohibits the admission of out-of-court statements that are testimonial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness.[142] In *Crawford v.*

---

[138] *Harris*, 698 F.3d at 623 (citing 28 U.S.C. § 2254(d)).
[139] State App. Rec. p. 2049, Ins. 14-16.
[140] *See Fitzgerald v. Estelle*, 505 F.2d 1334, 1336 (5th Cir. 1974) ("The conviction of a defendant after a trial that is fundamentally unfair, whatever the cause of such unfairness, violates Fourteenth Amendment due process."); *see also Jones v. Cain*, 600 F.3d 527,536 (5th Cir. 2010) ("Regardless of how a state court applies state evidence rules, a federal habeas court has an independent duty to determine whether that application violates the Constitution.") (citing *Estelle v. McGuire*, 502 U.S. 62, 68 (1991)).
[141] 410 U.S. 284, 302 (1973).
[142] *Crawford v. Washington*, 541 U.S. 36, 53-4 (2004).

*Washington*, the Supreme Court defined "testimony" as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact."[143] The Court explained that "testimonial" statements include, among other things, "statements that declarants would reasonably expect to be used prosecutorially," as well as "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[144] Kaplan's complaint falls squarely within this "core class" of testimonial statements – indeed, the complaint itself was the initiation of a prosecution. Moreover, the complaint did "precisely what a witness does on cross examination," in that it "bore witness" against Mills by appearing to directly contradict him on the most contested issue throughout the trial. [145]

The Louisiana Supreme Court "adopted the federal test for harmless error announced in *Chapman v. California*, 386 U.S. 18 (1967), as a practical guide for determining whether the substantial rights of the accused have been violated."[146] Under *Chapman*, the State must demonstrate "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."[147] In *Yates v. Evatt*, the Supreme Court explained that an "error [does] not contribute to the verdict" when it is "unimportant in relation to everything else the jury considered on the issue."[148]

The issue of who drove the getaway vehicle was sharply contested throughout the trial, and Mills' credibility was at the heart of his defense. If the jury believed Mills was the victim of Aswell's armed coercion, Mills was not guilty. If the jury believed Aswell, then Mills was guilty

---

[143] *Id.*
[144] *Id.* at 51-52.
[145] *Davis v. Washington*, 547 U.S. 813, 830 (2006).
[146] *See State v. Johnson*, 94-1379 (La. 11/27/95), 664 So.2d 94, 100.
[147] 86 U.S. at 24; *see also State v. Lewis*, 12-1021 (La. 3/19/13), 112 So.3d 796, 805 (noting that the State bears the burden of proving that an error was harmless).
[148] 500 U.S. 391, 403 (1991).

of the crimes charged. The respective roles of Mills and Aswell in the getaway vehicle was of particular importance in assigning blame – and proving the defense.  If Mills was the driver of the getaway car, then his claim that he drove away at gunpoint while the armed passenger Aswell fired at the pursuing police made sense. If Mills was the passenger, however, his coercion defense was impossible to believe. Thus, Kaplan's unverified complaint served to impeach Mills on the most critical point of defense. That impeachment, coming under the auspices of a legal pleading prepared by an attorney purportedly working in Mills' interest, was no doubt cloaked in unusual significance in the eyes of the laymen on the jury. The jury could have easily believed this federal complaint to reflect the "truth" as told by Mills to his trial counsel, who then relayed the information to attorney Kaplan. This is especially likely, given the conclusion of the State's cross-examination of Mills on this issue.

However, as indicated by Kaplan's declaration, it is now beyond dispute that the admission of the complaint corrupted the "paramount judicial goal of truth seeking."[149] Attorney Kaplan's declaration affirmatively establishes that Mills did <u>not</u> authorize Kaplan to make any statements, and further, that the extremely prejudicial inference the State drew from Kaplan's statement was flatly incorrect. It is indisputable that this is "the sort of error that compromises the fairness, integrity, and truth-seeking functions of a jury trial."[150] This evidence, coupled with the other issues raised herein, demonstrates that Mills' jury was actively mislead on the most contested issue in his trial.   The State's use of Kaplan's unverified complaint violated Mills'

---

[149] *Swindler v. Berlin*, 524 U.S. 399, 410 (1998).
[150] *Etherton v. Rivard*, 800 F.3d 737, 754 (6th Cir. 2015); *see also Morse v. Fusto*, 804 F.3d 538, 548 (2nd Cir. 2015) ("As we have observed, 'false information likely to influence a jury's decision ... violates the accused's constitutional right to a fair trial.*'")* (quoting *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2nd Cir. 1998)); *Maxwell v. Roe*, 628 F.3d 486, 507 (9th Cir. 2010) ("[T]o permit a conviction based on uncorrected false material evidence to stand is a violation of a defendant's due process rights under the Fourteenth Amendment."); *Killian v. Poole*, 282 F.3d 1204, 1209 (9th Cir. 2002) ("A conviction based in part on false evidence, even false evidence presented in good faith, hardly comports with fundamental fairness.") (quoting *United States v. Young*, 17 F.3d 1201, 1203-04 (9th Cir. 1994)).

constitutional rights to a fair trial and to confront his accuser, thus requiring this Court to vacate his current conviction.

Considering no state court considered the constitutional implications of this claim, AEDPA's deferential standard of review does not apply, thus authorizing this court to review it *de novo*.[151]

In turn, Mills requests that this court issue a writ of habeas corpus to have him brought before it so that he may be discharged from his unconstitutional confinement or constraint, or grant such other relief as may be appropriate, and to dispose of this matter as law and justice requires.

**CLAIM V:   MILLS WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS APPELLATE ATTORNEY FAILED TO COMPETENTLY BRIEF THE ISSUES RAISED ON APPEAL, AND FAILED TO COMPETENTLY RESPOND TO THE STATE'S ORIGINAL BRIEF.**

A criminal defendant has a constitutional right to the effective assistance of counsel on direct appeal.[152] Counsel's performance on appeal is analyzed under the familiar two-part Strickland test.[153] This standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful."[154] To establish prejudice, a defendant "must show that with effective counsel, there was a reasonable probability that he would have won on appeal."[155]

When alleging ineffective assistance of appellate counsel, the defendant "must show that the neglected claim would have had a reasonable probability of success on appeal."[156] The applicable test is whether the omitted issue was "clearly stronger" than the issue[s] actually

---

[151] *See Valdez v. Cockrell*, 274 F.3d 941, 946-47 (5th Cir. 2001).

[152] *Evitts v. Lucey*, 469 U.S. 387, 393-96 (1985).

[153] *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (citing *Strickland v. Washington*, 466 U.S. at 687-91, 694).

[154] *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 690-91).

[155] *Moreno v. Dretke*, 450 F.3d 158, 168 (5th Cir. 2006) (citing *Smith v. Robbins*, 528 U.S. at 285).

[156] *Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992).

presented on appeal.[157]   Consequently, when appellate counsel omits (without legitimate strategic purpose) "a significant and obvious issue," the habeas court should deem his performance deficient and when that omitted issue "may have resulted in a reversal of the conviction, or an order for a new trial," the habeas court should find the lack of effective assistance prejudicial.[158]

In light of this jurisprudence, Mills' appellate counsel's representation fell below the *Strickland* standard, and greatly prejudiced him.   On his Original Brief on appeal, Mills' appellate counsel argued that Mills' right of confrontation was violated when the trial court refused to allow Mills to cross-examine his codefendant, Walter Aswell, regarding the substantial leverage the State had upon him.[159]

The Louisiana appellate court conceded that "the trial court's ruling infringed on the defendant's right of constitutional confrontation by denying him the right to fully cross-examine Aswell."[160]

Nevertheless, the appellate court held the error harmless, citing the testimony of Scott Seals, Chad Cassard, and Patrick Lyons, the three Bogalusa police officers involved in the chase and arrest of Aswell and Mills. The court held that the "officers' testimony directly contradicted the defendant's testimony that he was the driver in the Jeep, that he did not fire at the officers, and that he did not struggle with the police."[161] The court further held that the "officers' testimony regarding the defendant's actions upon exiting the Jeep also contradicted the defendant's justification theory that he was acting under the compulsion of Aswell's threats."[162]

---

[157] *See, e.g., Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000).
[158] *See Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996).
[159] Exhibit C at 26-36 of Petitioner's Original PCR, attached herein as Exhibit B.
[160] *Mills*, 153 So 3d at 491.
[161] *Id*. at 493.
[162] *Id*.

If Mills' appellate counsel had properly briefed this claim, and pointed out the substantial impeachment of the three Bogalusa police officers, no reasonable appellate jurist would have relied upon the testimony of the officers to hold Mills' confrontation violation harmless.

For instance, Officer Seals, Officer Cassard, and Officer Lyons all denied striking Walter Aswell.[163] It is undisputed that Aswell was severely beaten after he was apprehended.[164] In fact, Aswell was beaten so severely that he suffered a fractured skull that warranted the insertion of a metal place in his head and now he has a scar that runs from ear to ear.[165]

Neither Lyons nor Seals had any explanation as to how Aswell's severe injuries could have occurred.[166] When Cassard was asked how Aswell could have sustained such significant injuries, Cassard responded, "He fell face first. I don't know."[167] When asked how someone could sustain a skull fracture from falling face first, Cassard responded, "I don't know."[168] Cassard's statement that Aswell fell and injured himself is even more suspect considering that the police apprehended Walter Aswell in a grassy field.[169]

Considering that these three officers were the first on the scene, and the only ones with a motive to beat Aswell, it is doubtful whether a reasonable jury could have believed their self-serving denials of committing a criminal assault upon Aswell.

Then there was the issue of Officer Cassard changing his story to fit Lyons and Seals' account of where the shooting started. Officer Cassard testified on direct that he first heard shots fired somewhere between Carroll's Wrecker Service and the bridge.[170] Cassard noted that Carroll's Wrecker Service is "about like half a mile to three-quarters of a mile" from the

---

[163] State App. Rec. at pp. 1890, 453, 531.
[164] Id. at p. 349.
[165] Id. at pp. 365-66.
[166] Id. at pp. 1891, 531.
[167] Id. at p. 464.
[168] Id.
[169] See Defense Trial Ex. 24; State App. Rec. at p. 452.
[170] State App. Rec. at p. 405. This bridge crosses the Mississippi state line. State App. Rec. at p. 443.

38

bridge.[171] On cross, Cassard acknowledged that he gave a statement to the Mississippi Bureau of Investigations the day after the incident, stating, "When I caught up to them, I was the fifth car in line, and as we were topping the bridge, and I could see Officer Seals trying to get around them, and as he got around them, within seconds he advised all of us that shots were fired."[172]

When asked about this discrepancy as to where the shooting started, Cassard explained, "Well, at the time I was giving the statement, it was only one day after the accident, and everything seemed kinda jumbled together, and as time has went on my memory has gotten a lot better."[173] Time did not seem to improve Cassard's memory when he authored his written report, two weeks after the incident, as this report also states the first shots were fired as Cassard topped the bridge.[174] When questioned about the difference in his direct testimony and his own written report, Cassard stated, "I'm not doubting that my report may be different than what I say right now."[175] Cassard finally threw his hands in the air and admitted he "was on top of the bridge" when the shooting started.[176]

Cassard also changed his story regarding whether the passenger was firing once he got out of the Jeep. On direct, Cassard stated that he was "unsure" if the passenger was still firing.[177] On cross, Cassard acknowledged that he told the Mississippi Bureau of Investigations that "when the passenger came out of the vehicle, he come out of the vehicle pistol in hand shooting."[178] Cassard then told defense counsel he was "quite sure" the passenger was still shooting when he got out of the vehicle.[179]

---

[171] Id. at p. 426.
[172] Id. at p. 432.
[173] Id.
[174] Id. at p. 438.
[175] Id. at p. 441.
[176] Id. at pp. 218, 443, 444.
[177] Id. at p. 411.
[178] State App. Rec. at p. 488.
[179] Id. at p. 487.

Lt. Patrick Lyons testified he told Chief Culpepper that the suspects continued shooting as they ran into the field.[180] Of course, no 9mm shell casings were found outside the getaway vehicle, notwithstanding Anna Savrock's testimony that the Mississippi Bureau of Investigations went over the scene quite thoroughly with metal detectors.[181]

Then there was Seals' factually impossible account of shooting Mills. Seals testified that he shot Mills as he was facing Seals.[182]  This is physically impossible, because Mills was shot in the back.[183]

Even though Mills had already been shot twice and had a collapsed lung, Seals claimed he could not get Mills under control.[184] Even with Officer Cassard's assistance, Seals alleged that neither of them could get Mills handcuffed.[185] Cassard testified he is six feet two inches tall and weighs approximately 200 pounds.[186] Cassard estimated Seals is about the same size.[187] Mills is five foot, nine inches tall and weighs approximately 140 pounds.[188]

Then there was Lt. Lyons' fanciful account of Mills kickboxing with Seals and Cassard. According to Lyons, when he came around the corner of the woodline, he saw Mills standing up, engaged in a fist fight with Seals and Cassard.[189] Not only is Lyons' story incredibly unlikely in light of the fact that Mills had already been shot with a .40 caliber in his ankle and back, and had a collapsed lung, it was squarely refuted by both Seals and Cassard.[190]

---

[180] *Id*. at p. 1900.
[181] *Id*. pp. 1426, 1587, 1775.
[182] *Id*. at p. 532.
[183] *Id*.
[184] *Id*. at p. 514.
[185] *Id*.
[186] *Id*. at p. 461.
[187] *Id*. at p. 462.
[188] *Id*. at p. 237.
[189] *Id*. at pp. 1916-18.
[190] State App. Rec. at p. 533.

Numerous other examples can be found throughout the record. The point is that Lyons, Cassard, and Seals were materially impeached-several times over. As the Louisiana First Circuit Court of Appeal noted in *State v. Petitto*, 12-1670 (La. App. 1 Cir. 4/26/13), 116 So.3d 761, "If the jury determines that a witness willfully or deliberately testified falsely to any material fact for the purpose of deceiving it, then the jury may conclude that the witness' testimony is unworthy of belief and disregard the entirety of the testimony as proving nothing."[191] Mills' jury received an identical instruction.[192] The officers' blatant lies about not beating Aswell, or having any knowledge as to how he sustained his injuries, alone would have justified the jury's rejection of the entirety of their testimony. Accordingly, the officers' testimony could *not* be relied upon to hold Mills' confrontation violation harmless "beyond a reasonable doubt."

Despite the proven unreliability of these officers' testimony, Mills' appellate counsel utterly failed to brief these essential facts to the appellate court.  Mills' appellate counsel should have briefed these strong, significant and obvious facts on his appeal, and their inexcusable omission rendered his appellate counsel ineffective. Harmless error jurisprudence clearly dictates that if a witness's testimony is merely cumulative, any potential confrontation violation will most assuredly be deemed harmless.[193] In fact, Mills expressed this very concern to appellate counsel in a letter, stating in pertinent part:

> I think it is important to show the substantial impeachment of the Bogalusa Police Officers for one reason: all three of them identify me as the passenger. Therefore, if the First Circuit gets far enough to conduct a harmless-error analysis, they are going to look at the rest of the evidence in the record-what supports/contradicts me being the passenger/driver.[194]

---

[191] *Id.* at p. 770.
[192] *Id.* at p. 270.
[193] *See State v. Wille*, 559 So.2d 1321, 1332 (La. 1990) (holding the erroneous admission of hearsay harmless because the hearsay testimony was "essentially cumulative" of other evidence adduced at trial); *State v.Broadway*, 96-2659 (La. 10/19/99), 753 So.2d 801, 818 (same).
[194] Exhibit B of Petitioner's Original PCR, attached herein as Exhibit B.

Even Mills, a 23-year old high school dropout with no legal training, was able to foresee that Louisiana's appellate court would look to the officers' testimony that Mills was the passenger in an effort to declare his confrontation violation harmless.  Indeed this conclusion is compelled by even a very basic understanding of harmless error analysis.

Moreover, the numerous inconsistencies in the officers' testimony were obvious on the record, and were the thrust of defense counsel's closing argument. Defense counsel told the jury that the State "wants you to ignore the terrible inconsistencies that were **born out and proven** through cross-examination."[195] Counsel told the jury that "what is undeniable, that which has been shown and proven without a doubt, is that they lack credibility, they lack credibility."[196] These strong accusations should have grabbed appellate counsel's attention; it is not often the defense is able to lodge these kinds of accusations against <u>police</u> witnesses.

Thus, appellate counsel was constitutionally ineffective for leaving such a gaping hole in his argument. By doing so, counsel effectively gave the appellate court an open invitation to find Mills' confrontation violation harmless.

If appellate counsel had outlined the substantial impeachment of the three Bogalusa police officers, as requested by Mills, the appellate court would have been forced to confront their numerous inconsistencies, and consequently, would not have been able to rely on their testimony to hold Mills' confrontation violation harmless. Therefore, there is a reasonable probability that, but for appellate counsel's deficient performance, Mills would have obtained relief on direct appeal.

Based on the clearly established criminal defendant's right to effective representation on direct appeal, no reasonable jurist would have determined Mills' appellate counsel's performance

---

[195] State. App. Rec. pp. 216-17 (emphasis added).
[196] *Id*. at p. 217.

complied with *Strickland*.  The trial court's wrong decision to deny Mills' on this claim relies only on one fact that is incorrect. In its opinion, the trial court states that Mills' appellate counsel "did reference the State's argument on this issue in the Reply Brief, although in passing."[197] However, when reviewing the Reply Brief referenced by the trial judge, it is clear that Mills' appellate attorney *in fact did not address* the State's argument.[198]  Reliance on this incorrect fact is therefore an unreasonable determination of the facts concerning this claim.

There can be no strategy in omitting a response to the State's new argument and essentially failing to contest the State's legal points.  Consequently, the state court misapplied clearly established federal law when it determined that Mills' appellate attorney was not ineffective.[199]

Appellate counsel was also ineffective in failing to competently respond to the State's Original Brief.

In his Original Brief, appellate counsel argued that the trial court erred in allowing the State to impeach Mills with a civil petition that was prepared and filed by California attorney Philip Kaplan.[200] Appellate counsel persuasively demonstrated the trial court's error in admitting the petition as a "statement against interest."

When the State filed its Original Brief, however, it did not defend the trial court's rationale for admitting the petition. Instead, the State argued that, pursuant to La. C.E. art. 801(D)(2)(c), the petition was not hearsay because it was a statement "made by a person authorized by [Mills] to make a statement concerning the subject."[201] Appellate counsel failed to grasp the State's new argument, and continued to argue in his Reply Brief that the petition was

---

[197] *See* Exhibit C, at 9.
[198] *See* Exhibit E of Petitioner's Original PCR, attached herein as Exhibit B.
[199] *Id*. at 8.
[200] Exhibit C, at 36-43 of Petitioner's Original PCR, attached herein as Exhibit B.
[201] Exhibit D, at 7 of Petitioner's Original PCR, attached herein as Exhibit B.

not a statement against interest -- a position not even advanced by the State.[202] Unsurprisingly, the state appellate court adopted the State's unchallenged argument.[203]

If appellate counsel had been playing close enough attention to actually respond to the State's argument, he could have formulated a solid, meritorious argument that the State's position was fatally flawed.

La. C.E. art. 801(D)(2)(c) provides that "a statement is not hearsay if it is offered against a party and is by a person authorized by him to make a statement concerning the subject." As the clear language of the article suggests, this subsection applies only to statements that have been "specifically authorized" by the principal.[204] Article 801(D)(2)( c) is in accord with the pre-codal law on vicarious admissions.[205] In *Thomas v. RPM Corp.*, the Louisiana appellate court noted that, "[a] material statement made by an agent for a principal is admissible at trial when offered by a party opponent, but the agent's authority to make such a statement must be established."[206]

The only evidence in the appellate record concerning attorney Kaplan's possible "authorization" to make the statement at issue comes from Mills' testimony. Mills testified that he was aware a lawsuit had been filed on his behalf, but that he had not read it.[207] Mills further testified that he had never spoken with Kaplan.[208] In response to the State's question, Mills

---

[202] Exhibit E, at 12 of Petitioner's Original PCR, attached herein as Exhibit B.

[203] *Mills*, 153 So.3d at 495 (FN8).

[204] See *Turner v. Ostrowe*, 01-1935 (La. App. 1 Cir. 9/27/02), 828 So.2d 1212, 1221 ("official comment (d) to Article 801(D)(2)(c) indicates that this subsection is based on traditional agency principles and covers statements that are specifically 'authorized' by the principal and thus are classified as 'representative' or 'vicarious' admissions"); *see also State v. Schexnayder*, 96-98 (11/26/96), 685 So.2d 357, 366 (statement that was not specifically authorized was not admissible).

[205] *See* Official Comment to Article 801(D)(2)(c) (noting that this subsection is "intended to clarify but not change prior Louisiana law substantially").

[206] 449 So.2d 18, 22 (La. App. 1 Cir. 1984)(internal citations omitted) (citing *Pacholik v. Gray*, 187 So.2d 480 (La. App. 3 Cir. 1966)).

[207] State App. Rec at pp. 2023, 2048.

[208] *Id*. at pp. 2046-49.

44

testified that he told his trial counsel he was the driver, and that he never told his trial counsel he was the passenger.[209]

Considering that Mills never talked to attorney Kaplan, and never told defense counsel he was the passenger, then, quite obviously, Mills did not authorize attorney Kaplan to make such a statement. Thus, the only evidence in the record on the issue of "authorization" destroys the State's argument, which was essentially that the statement fell within the ambit of La. C. Evid. art. 80l(D)(2)(c) simply because attorney Kaplan filed the civil suit on Mills' behalf.[210] The State's conclusory argument blatantly ignored the portions of Mills' testimony that affirmatively refute the authorization required for La. C.E. art. 80l(D)(2)(c) to apply. If Mills never talked to Kaplan, **and maintained he was the driver to his trial counsel**, then Mills *could not* have authorized Kaplan to make a statement labeling him a passenger.

Besides the fact that Mills' testimony cripples the State's feeble argument on the issue of authorization, the State did not even establish that the inference it twisted from the complaint was a fair one.

In *United States v. McKean*, 738 F.2d 26 (2nd Cir. 1984), the Second Circuit discussed the various practical and constitutional concerns implicated by the use of attorney statements against a client accused of a crime. Although the issue in *McKean* was the evidentiary use of a prior jury argument, the *McKean* court's analysis proves instructive on the court's error in Mills' case. The Second Circuit held that, before admitting an alleged inconsistent statement by counsel, the district court should "determine by a preponderance of the evidence that the inference the

---

[209] *Id*. at p. 2049.
[210] *See* Exhibit D at 7 of Petitioner's Original PCR, attached herein as Exhibit B.

prosecution seeks to draw from the inconsistency is a fair one and that no innocent explanation for the inconsistency exists."[211]

During trial counsel's argument on the motion in limine, counsel told the court that, "legally, anybody in the car, regardless of position, is a passenger in that vehicle."[212] What should have been glaring to appellate counsel is the fact that neither the State nor the trial court disputed counsel's assertion. Not that trial counsel's position could have been disputed; Merriam Webster's Collegiate Dictionary defines "passenger" as "a traveler in a public or private conveyance."[213]

Moreover, attorney Kaplan's complaint refers to Mills as "a passenger," not "the" passenger. "A" is an indefinite article. Indefinite articles "refer to any one of a general group."[214] "The" on the other hand, is a definite article. Definite articles specify "a particular person, place, thing, or idea."[215] In light of the fact that there were only two occupants in the getaway vehicle, attorney Kaplan's use of the indefinite article "a" signals a clear intention to avoid specificity. After all, a formal pleading prepared by an attorney is "likely to be worded with precision."[216]

Thus, appellate counsel was constitutionally ineffective in failing to expose and brief the significant flaws in the State's argument. If appellate counsel had responded to the State's Brief in a legally competent manner, the state appellate court would have been forced to confront the portions of Mills' testimony that clearly refute any speculation that he authorized Mr. Kaplan to make the statement at issue. The state appellate court would also have been forced to confront

---

[211] *Id.* at 33; *see also United States v. Jung*, 473 F.3d 837, 841 (7th Cir. 2007) (noting that the "unique nature" of the attorney-client relationship "'demands that a trial court exercise caution in admitting statements that are the product of this relationship.'" (quoting *United States v. Harris*, 914 F.2d 927, 931 (7th Cir. 1990)). The court further noted that it has "'caution[ed] the government that it should only offer this sort of evidence in rare cases and when absolutely necessary.'" (quoting *United States v. Sanders*, 979 F.2d 87, 92 (7th Cir. 1992))).

[212] State App. Rec. pp. 1975-76.

[213] Merriam Webster's Collegiate Dictionary, 11th Ed., p. 905.

[214] James L. Kinney & John E. Warringer, Elements of Writing, p. 607 (1993).

[215] *Id.*

[216] *United States v. Valencia*, 826 F.2d 169, 173 (2nd Cir. 1987).

the State's total failure to establish that the prejudicial inference it wrenched from the statement had any basis in fact.

Based on the clearly established criminal defendant's right to effective representation on direct appeal, no reasonable jurist would have determined Mills' appellate counsel's performance in failing to competently brief his appellate assigned of errors complied with *Strickland*. Consequently, the state court decision concerning this issue misapplied clearly established federal law.[217]

In turn, Mills requests that this court issue a writ of habeas corpus to have him brought before it so that he may be discharged from his unconstitutional confinement or constraint, or grant such other relief as may be appropriate, and to dispose of this matter as law and justice requires.

**CLAIM VI:  MILLS WAS DENIED A FAIR AND IMPARTIAL DIRECT APPEAL WHEN THE LOUISIANA FIRST CIRCUIT COURT OF APPEAL REPEATEDLY IGNORED CRITICAL POINTS OF MILLS' ARGUMENTS AND CONSISTENTLY MISAPPLED CLEARLY ESTABLISHED LAW.**

To put this claim in the proper perspective from the outset, it must be noted that the First Circuit's opinion finding no reversible error in Mills' trial was authored by a colleague of Mills' trial judge.

At the time of Mills' arrest and trial, William J. Crain was a district judge in Washington Parish. In fact, Crain was one of only two judges being assigned felony cases during this time period. The other judge, of course, was Mills' trial judge, August J. Hand. Shortly after Mills' trial concluded, Crain became a First Circuit judge. When the case reached the First Circuit Court of Appeal. Judge Crain was on Mills' three-judge panel. Judge Crain also wrote the opinion for the court finding no reversible error in Mills' trial.

---

[217] *See* Exhibit C, at 8-9.

Normally such a relationship would not be grounds for recusal. However, it is nonetheless troubling when one considers the manner in which the First Circuit ignored relevant facts and law when "adjudicating" Mills' appeal. The court's opinion, when taken as a whole, evinces a distinct partiality in favor of the prosecution. Indeed, when one compares the points raised in Mills' appellate briefs to the court's actual written opinion, it becomes clear the court ignored those points it could not acknowledge without being compelled to reverse Mills' convictions and sentences.

Mills' direct appeal was not "meaningful" in any sense of the word.

## A.    Cause challenges for prospective jurors Mary Gunnell and Kelly Crain

The Louisiana First Circuit Court of Appeal held that the denial of the cause challenges for these prospective jurors were not preserved for review because, according to the court, Mills did not object to the trial court's ruling on these challenges.[218]

In so holding, the First Circuit relied upon "the clear language of Article 800 and the procedure recited in *State v. Cousan*, 94-2503 (La. 11/25/96), 684 So.2d 382, 288-89, both of which require that a defendant lodge a contemporaneous objection to the trial court's ruling in order to assign as error the trial court's refusal to sustain his challenge for cause."[219]

What makes this holding objectively unreasonable is the fact that the Louisiana Supreme Court has reversed/corrected the First Circuit *twice* on this very issue.

In *State v. Vanderpool*, 476 So.2d 546 (La. App. 1 Cir. 1986), the defendant failed to object to the trial court's refusal to sustain his challenge for cause. The First Circuit held that "[b]ecause defendant neither objected to the trial court's ruling denying his challenge of Wilson

---

[218] *Mills*, 153 So.3d at 486 (FN2).
[219] *Id.*

Pitre for cause nor stated the nature of the objection and grounds therefor, he is thereby prohibited from assigning the ruling as error, by the express terms of La. C.Cr.P. art. 800A."[220]

The Louisiana Supreme Court reversed on this point, holding that the challenge for cause was preserved for appeal.[221] The Supreme Court noted that, "Our law is settled that an objection need not be raised by incantation" and that "the requirement that objection be raised contemporaneously is not meant to be inflexible, but is designed 'to promote judicial efficiency and to ensure fair play.'" Specifically, the Court noted that, "Article 800 **should not be read to differ in this respect** from Article 841."[222] The Court further held that the defendant "made it known he wanted the deputy sheriff excused and voiced the reasons why," and that "this is sufficient to preserve the issue for appeal."[223]

Mills' case is in fact much stronger than *Vanderpool* itself. In *Vanderpool*, trial counsel spent **one** sentence arguing why the prospective juror was unfit to serve.[224]

Mills' counsel, on the other hand, argued extensively why Ms. Gunnell and Ms. Crain should be excused for cause.[225] When the trial court declined to sustain these challenges, Mills' counsel peremptorily struck both of these prospective jurors.[226] As *Vanderpool* makes clear, this

---

[220] *Id*. at 547.
[221] *State v. Vanderpool*, 493 So.2d 574 (La. 1986).
[222] *Id*.
[223] *Id*.
[224] Vanderpool's trial counsel merely stated: "Your Honor, I would like to re-urge our challenge for cause on Mr. Pitre. I think due to his substantial involvement in law enforcement." 493 So.2d at 547.
[225] "I would move to strike Kelly Cain. She or more less [sic] is suffering from PTSD. She appeared emotional when she described her victimization in the bank robbery. *** She said she's still suffering on a day to day basis and that she's fearful when her husband goes away to work because when he works nights every third day then it causes her issues and she has to stay up and wait for him to come home. This the I kind of thing that, it's going to influence her decision." *** "I was going to make my cause challenge for Ms. Gunnell on the same basis. Judge, this is a woman that offered that she was a victim of three bank robberies. She became visibly upset and emotional when describing that victimization. *** She couldn't even tell Your Honor that without becoming emotional and I questioned her about it. She started to tear up. I think it's the character of nature [sic] that's going to cause her to be biased." (State App. Rec. at pp. 1238-41).
[226] State App. Rec. at pp. 1246-47.

satisfies Louisiana's contemporaneous objection requirements and was sufficient to preserve Mills' cause challenges for appeal.

It cannot be said the First Circuit may have simply forgotten *Vanderpool*; Mills' appellate counsel cited *Vanderpool* in his Reply brief.[227] Yet the First Circuit chose to ignore appellate counsel's response on this issue.

In *State v. Pinion*, 06-2346 (La. 10/26/07), 968 So.2d 131 (rev. on other grounds), the Louisiana Supreme Court reiterated that "[i]n jury selection, counsel satisfies the requirements of Louisiana's contemporaneous objection rule by stating his grounds for a cause challenge and then by removing the juror with one of his remaining peremptory challenges when the court declines to excuse the juror for cause. La. C.Cr.P. art. 841."[228]

Mills cited *Pinion* in his *pro se* Reply Brief, but the First Circuit held that Mills' "reliance" upon *Pinion* is "misplaced" because "*Pinion* involved the requirement of accepting an obnoxious juror to prove prejudice on appeal and made no mention of Louisiana Code of Criminal Procedure article 800."[229] The problem with this assertion is that the Louisiana Supreme Court's decision in *State v. Ross*, 623 So.2d 643 (La. 1993), wherein the Louisiana Supreme Court reversed the First Circuit for holding that a defendant must show he was forced to accept an obnoxious juror in order to prove prejudice on appeal – the very same misinterpretation the First Circuit claims it made (again) in *Pinion*.

Regardless of what *Pinion* actually dealt with, the Court reaffirmed the 30-year-old rule that, "[i]n jury selection, counsel satisfies the requirements of Louisiana's contemporaneous

---

[227] Exhibit E, p. 4 of Petitioner's Original PCR, attached herein as Exhibit B (The State asserted on appeal that Mills' challenges for Ms. Gunnell and Ms. Crain were not preserved for review because he did not "lodge an objection." The only authority the State cited in support of this assertion was La. C.Cr.P. art. 800-which, as Vanderpool made clear, is satisfied when a defendant challenges a prospective juror for cause, "voice[s] the reasons why," and removes the juror with one of his remaining peremptory strikes).

[228] *Pinion*, 968 So.2d at 136.

[229] *Mills*, 153 So.3d at 486 (FN2).

objection rule by stating his grounds for a cause challenge and then by removing the juror with one of his remaining peremptory challenges when the court declines to excuse the juror for cause. La. C.Cr.P. art. 841."[230]

In holding that Mills' challenges for cause were not preserved for review, the First Circuit also relied on "the procedure recited in *State v. Cousan*, 94-2503 (La. 11/25/96), 684 So.2d 382, 388-89."[231] But Louisiana First Circuit Court of Appeal's reliance upon *Cousan*, is just as unreasonable as its "misinterpretation" of La. C.Cr.P. art. 800 (for the third time).

The "procedure" the First Circuit is referring to comes from the following statement made by the *Cousan* Court: "In response to the trial court's denial of the cause challenges, defendant objected, thereby preserving the issue for appeal, and exercised peremptory challenges to exclude Jurek and Johnson from the jury."[232]

Apparently, Louisiana's First Circuit Court of Appeal is suggesting that the *Cousan* Court, in an incredibly implicit manner, added a formal incantation requirement ("note my objection") to La. C.Cr.P. art. 800 -- the same formal incantation requirement the *Vanderpool* Court explicitly held was not required to preserve a challenge for cause for appellate review. *Cousan* itself belies any such interpretation. Just one paragraph later, the *Cousan* Court states: "[t]o preserve the issue for appeal, the defendant must also lodge a contemporaneous objection to the trial court's ruling."[233] As *Vanderpool* made clear, what constitutes a contemporaneous objection is defined by La. C.Cr.P. art. 841, not La. C.Cr.P. art. 800, and "Article 800 should not be read to differ in this respect from Article 841."[234]

---

[230] *Pinion*, 968 So.2d at 136.
[231] *Mills*, 153 So. 3d at 486 (FN2).
[232] *Cousan*, 684 So.2d at 388.
[233] *Id*. at 389.
[234] *Vanderpool*, 493 So.2d at 575.

Moreover, if the First Circuit really believed that *Cousan* overruled *Vanderpool*, then the First Circuit should have fulfilled its duty to "clarify the law."[235] Perhaps the court did not clarify the law because it knew that Louisiana law clearly refutes such a proposition, and to explicitly hold such would invite closer scrutiny to an objectively unreasonable holding.

But what really puts the First Circuit's "misinterpretation" of *Cousan* beyond any rational explanation is that same previously quoted statement by the *Pinion* Court the First Circuit chose to ignore:

> In jury selection, counsel satisfies the requirements of Louisiana's contemporaneous objection rule by stating his grounds for a cause challenge and then by removing the juror with one of his remaining peremptory challenges when the court declines to excuse the juror for cause. La. C.Cr.P. art. 841.[236]

It does not get any clearer than that. The First Circuit's holding that Mills' cause challenges were not preserved for review is utterly lacking in justification.

## B.   Trial court's improper restriction of Mills' cross-examination of Aswell

In his Original Brief, Mills' appellate counsel argued that Mills was denied his constitutional right of confrontation when the trial court refused to allow Mills to impeach Aswell with the substantial leverage the State had upon him.

The First Circuit conceded that "the trial court's ruling infringed on the defendant's right of constitutional confrontation by denying him the right to fully cross-examine Aswell."[237] However, the First Circuit held the error harmless because, according to the court, "the entire weight of the testimony and physical evidence contradicted the defendant's testimony and

---

[235] *See* Louisiana Court of Appeal Performance Standards, Performance Standards 1.2 ("Louisiana courts of a appeal should develop, clarify, and unify the law"), and 2.2 ("Louisiana court of appeal decisions should be clear and full opinions should address the dispositive issues, state the holding, and articulate the reasons for the decision in each case").
[236] 968 So. 2d at 136.
[237] 153 So.3d at 491.

established that the defendant was the passenger in the Jeep and was in possession of the Beretta that was fired multiple times at the pursuing police officers."[238]

As previously outlined in Claim No. 5, the three Bogalusa police officers who identified Mills as the passenger were **severely** impeached. Mills specifically pointed this out in his *pro se* supplemental brief, preceded by the following bold and numbered subheading:

**2.  Aswell's testimony was not merely cumulative because the witnesses who "corroborated" his version of events (namely, that he was the driver) were substantially impeached.[239]**

However, the First Circuit's opinion ignored Mills' argument on this point.

The First Circuit also ignored all of the evidence tending to suggest Mills was the driver of the getaway vehicle. First, two of the lay witnesses outside of the bank testified that the first person out of the bank got in the driver's seat, and that the person who picked up the stack of money on the sidewalk got in the passenger's seat.[240] It is undisputed that Mills was the first person out of the bank and that it was Aswell who bent down and picked up the stack of money. Second, a single stack of money was found between the passenger seat and door.[241] This circumstantial evidence suggests Aswell was the passenger, considering that it was Aswell who picked up a single stack of money outside the bank, and that all the rest of the money was found in the backpack.[242] Third, a magazine containing two 9mm bullets was found on Aswell's person.[243] This is significant because Aswell testified that all of the magazines were loaded up the night before the robbery.[244] This begs the question: if the magazines were loaded the night

---

[238] State App. Rec. at 493.
[239] Exhibit G, p. 14, of Petitioner's Original PCR, attached herein as Exhibit B.
[240] *Id*. at pp. 1357, 1392.
[241] *Id*. at p. 378; *see also* State's trial Ex. 14-B.
[242] *Id*. at p. 377.
[243] *Id*. at p. 1714.
[244] *Id*. at p. 327.

before the robbery, why would Aswell have a magazine with only two bullets remaining in his pocket? This circumstantial evidence strongly suggests that Aswell was the shooter, not Mills.

Not only did the First Circuit ignore all the facts in Mills' favor, the court consistently viewed all the facts and inferences it did consider in the light most favorable to the prosecution.

For example, the court stated that, "[t]he officers' testimony regarding the defendant's actions upon exiting the Jeep also contradicted the defendant's justification theory that he was acting under the compulsion of Aswell's threats."[245]

The officers' own testimony established that there was a barrage of gunfire directed at the Jeep, coming from two different locations. Mills testified that he ran because "bullets were flying" and he was afraid.[246] The fact that Mills ran **when he was being shot at** is not particularly strong evidence of a guilty conscience, and it is pure speculation for the First Circuit to assume the jury interpreted it as such. The inference the jury could have drawn from this could have easily gone either way, and it was not appropriate for the First Circuit to consider only the inference favorable to the State.[247]

The First Circuit also believed it significant that the 9mm Beretta pistol was found in the area where Mills was apprehended.[248] The court ignored the fact that the pistol was admittedly moved by the Bogalusa police officers.[249] Yet again, the First Circuit ignored all possible inferences that were not favorable to the State.

---

[245] 153 So.3d at 493.

[246] The First Circuit even acknowledged in its Statement of Facts that Mills testified he ran from the Jeep "because the officers were shooting and he was afraid."

[247] *See Harris v. Thompson*, 698 F.3d 609, 630 (7th Cir. 2012) ("The appellate court minimized the significance of this exclusion by pointing to Diante's ambiguous 'admission' and **seizing on the most favorable interpretation to the prosecution. That is not how harmless error review works**, and it is not how our materiality analysis proceeds under the Compulsory Process Clause") (emphasis added).

[248] 153 So. 3d at 493.

[249] State App. Rec. p. 516.

Prominent Louisiana attorney James E. Boren authored a Louisiana Law Review article that cogently details the institutional bias that permeates Louisiana appellate courts, and the courts' resulting inability (or refusal) to properly apply the harmless error analysis when assessing the prejudicial impact of constitutional errors that occurred during a criminal defendant's trial. Boren succinctly summarized the problem as follows: "Harmless error precipitates great disrespect for the appellate courts because the **cavalier and one-sided dismissal of facts**, the tortured analysis of what the defense really was, the inconsistency, the constant rule changes, and the **clear and present attitude to protect the conviction**, not the law or the process."[250]

Likewise, institutional bias is the only tenable explanation for the manner in which the First Circuit "applied" the harmless error analysis to Mills' confrontation violation. The First Circuit ignored all evidence in Mills' favor, all the evidence that impeached the State's theory, and viewed all the evidence and inferences which it did consider in the light most favorable to the prosecution. Harmless error jurisprudence requires a reviewing court to "conduct a thorough examination of the record" in order to determine whether an error was harmless.[251] It is axiomatic that a reviewing court cannot simply ignore evidence in the accused's favor when conducting its "thorough examination" of the record.

Moreover, harmless error jurisprudence clearly instructs a reviewing court to focus on the impact of the error, not the weight of the evidence notwithstanding the error.[252] In Mills' case,

---

[250] James E. Boren & Michael A. Fiser, *Fear of a Paper Tiger: Enforcing Louisiana's Procedural and Statutory Rules in the Wake of Harmless Error Analysis*, 64 La. L. Rev. 5, 10 (2003) (emphasis added).
[251] *Neder v. United States*, 527 U.S. 1, 19 (1999).
[252] *See State v. Gibson*, 391 So.2d 421, 427 (La. 1980) ("The Chapman court pointed out that a state court may err by giving 'emphasis and perhaps overemphasis, upon the court's view of "overwhelming evidence."'" (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967))); *Burbank v. Cain*, 535 F.3d 350, 358 (5th Cir. 2008) ("In analyzing a violation of the Confrontation Clause we took primarily at the specific testimony omitted, not the weight of the evidence notwithstanding the omitted testimony") (*citing United States v. Jimenez*, 464 F.3d 555, 559 (5th Cir. 2006)); *see also State v. Bell*, 99-3278 (La. 12/8/00), 776 So.2d 418,432.

however, the First Circuit focused *solely* on the remaining evidence, and refused to acknowledge the importance of Aswell's testimony to the State's case. Significantly, Aswell was the only witness who materially contradicted Mills that was not substantially impeached. In cases such as the instant one, where the witness in question, Aswell, "is critical to the prosecution's case," courts have recognized that the "right to cross-examination is particularly important."[253]

On a final note, it is necessary to draw attention to the First Circuit's effort to minimize the significance of Mills' confrontation violation by distorting the terms of Aswell's plea agreement. According to the First Circuit, "[t]he record establishes that Aswell agreed to testify and plead guilty in return for a twenty-five years sentence if he testified truthfully in accordance with his pretrial statement. Otherwise, he was to be sentenced to serve thirty years."[254]

The following pertinent portions of a sidebar conference unequivocally establishes that the First Circuit mischaracterized Aswell' s plea agreement:

STATE: It's twenty-five to thirty. That's what it is. I think the record reflects his testimony was to be consistent with the prerecorded pretrial statements **and if he deviated from that it would be invalid.**

DEFENSE: I was here. I'm saying if **he doesn't testify in conformity with his written statement he's no longer bound.**

COURT: You can question him in that manner, but that's not exactly what you were saying.[255]

        ***

DEFENSE: It is my understanding that if he testifies in conformity with his pretrial statement, Your Honor was going to sentence him to between twenty-five and thirty years. **If he testifies contradictorily and differently than what he said, Your Honor is no longer bound by the agreement and can sentence him to ninety-nine years on three and up to fifty on each attempted murder.** That goes directly to the heart of the matter and goes to his credibility and shows he has considerably more exposure.

---

[253] *Jiminez* 464 F.3d at 559.
[254] 153 So.3d at 490.
[255] State App. Rec. p. 354 (emphasis added).

COURT:       **If he's in line.**

DEFENSE:     And if he lies, if he does not testify in conformity with the statement, it's more if he lies. **If it's not in conformity, Your Honor is not bound and can max him out.** That's what I'm trying to get at.

COURT:       If you want to go into that, but you can't talk about what the maximum sentence is.[256]

             ***

DEFENSE:     . . . . I understand the basis of her objection, but it goes directly to the heart of the motivation and reason for testifying and they have a potential ninety year sentence hanging over his head.

COURT:       I understand the line of questioning and **I think the approach was improper.**

DEFENSE:     Is it your appreciation if he does not testify m conformity with the statement you are not bound?

COURT:       **But that does not open it up to question on maximum sentence.** I may invite the question if you don't testify in conformity with the prior statements, **that opens up the potential for a much longer sentence without going into specifics.**[257]

             ***

COURT:       That's inviting the jury to know what the potential exposure is for your client.

DEFENSE:     For him?

COURT:       **It's for both of them.[258]**

     The record is clear: if Aswell did not testify in conformity with his pretrial statement, the trial court was not bound by the plea agreement. Although towards the conclusion of the sidebar conference the State ignored its initial concession and attempted to argue that Aswell's sentencing exposure was capped at thirty years, no matter what, both defense counsel's and the trial court's statements explicitly refute the State's belated assertion. However, consistent with the

---

[256] *Id*. at 355 (emphasis added).
[257] *Id*. at 356-57 (emphasis added).
[258] *Id*. at 357 (emphasis added).

First Circuit's demonstrated pattern of ignoring all evidence that favored Mills, the court chose to rely on belated assertions by the State that are clearly refuted by the record.

Although the United States Constitution does not require States to grant appeals as of right to criminal defendants, "if a State has created appellate courts as an 'integral part of the ... system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution."[259]

Appellate review that consistently ignores the most critical points of the arguments presented, consistently ignores all the facts in the appellant's favor, and consistently refuses to apply clearly established law does not meet this standard.

As the Louisiana Supreme Court has noted, "[t]he role of the judiciary is to provide a forum for the resolution of disputes that is fair, just, impartial, and based on the law and evidence. Such a role cannot be realized if judges refuse to abide by the law."[260] The Court further noted that "[o]bedience to judicial decrees is critical to the proper functioning of our legal system," and "[w]hen a judge demonstrates a lack of respect for the rule of law ... our entire system of justice is placed at risk."[261]

Mills' direct appeal was *pro forma* only; the First Circuit Court of Appeal consistently ignored relevant facts and law to affirm Mills' conviction. Moreover, the First Circuit consistently applied legal principles in a manner that is "contrary to clear and determined law about which there is no confusion or question as to its interpretation."[262]

---

[259] *Evitts v. Lucey*, 469 U.S. at 393 (quoting *Griffin v. Illinois*, 351 U.S. 12, 18 (1956)).
[260] *In re Hughes*, 03-3408 (La. 4/22/04), 874 So.2 746, 789-90.
[261] *Id*. at 790.
[262] *In re Fuselier*, 02-1661 (La. 1/28/03), 837 So.2d 1257, 1265 (quoting *In re Quirk*, 97-1143 (La. 12/12/97), 705 So.2d 172, 181).

Accordingly, Mills was denied his constitutional right to a fair and impartial direct appeal, in contravention of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.   In turn, he now moves this Court to grant his habeas application and vacate his current criminal conviction.

In Mills' post-conviction proceeding, the state court did not adjudicate this claim on its merits.   It simply dismissed this claim as "not recognized as one of the exclusive grounds for post-conviction relief" under Louisiana's Code for Criminal Procedural article 930.3.[263]   That particular code article provides certain limits on Louisiana's post-conviction courts, including limits on constitutional claims concerning a defendant's *conviction*.[264]

A conviction, however, is not considered final until it has been reviewed on direct appeal.[265] Thus a conviction that violates the constitution is not limited to proceedings only at the trial court level, but necessarily also includes constitutional errors occurring during the direct appeal process.

Under the trial court's logic, Mills' ineffective assistance of *appellate* counsel claim would also not be cognizable on collateral review in Louisiana's courts.   However, it is clearly established federal law that a petitioner can only address a violation of his Sixth Amendment right to effective assistance of appellate counsel in a collateral proceeding.   Within this context, it is therefore logical that a petitioner should also be able to raise a due process violation during his appellate proceeding in a subsequent application for post-conviction relief.   As such, the state court wrongfully applied article 930.3 to procedurally bar this claim.

---

[263] *See* Exhibit C, at 9.
[264] *See e.g. State v. Myers*, 888 So. 2d 1002 (La.App. 4 Cir. 11/03/04), *writ denied State v. Myers*, 893 So. 2d 85 (La. Feb. 4, 2005)(denying petitioner's post-conviction constitutional claim that his sentence was cruel and unusual because it is not one of the seven grounds for post-conviction relief in 930.3).
[265] *See* La. C. Cr. P. art. 922; *also* 28 U.S.C. § 2241(d)(1)(A)(noting that a state prisoner's conviction becomes final at "the conclusion of direct review or the expiration of time for seeking such review).

Mills' due process protections entitle him access to a fair and impartial appellate court. The state court should not have procedurally barred this claim.  In turn, AEDPA's deferential standard of review does not apply, permitting this Court to now independently review whether Mills received fair and impartial appellate review of his conviction in compliance with due process and fair trial requirements of the United States' Constitution.[266]

## CONCLUSION

Mills has thoroughly demonstrated that his trial was fundamentally unfair and that his convictions are constitutionally infirm and must be set aside.

The officials who conducted Mills' trial were so corrupt and biased against him that they attempted to send an innocent man to prison for merely acting on Mills' behalf.  There can be no question that this is the sort of fundamental error that infects the validity of the underlying judgment and the process by which it was obtained.  In addition, as discussed, Mills' experienced several additional violations of his constitutional rights that undermines the veracity of his criminal conviction and requires intervention from this Honorable Court.

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled.

Respectfully Submitted,


/s/ *Emily H. Posner*
Emily H. Posner
La. Bar No. 35284
7214 St. Charles Ave.
Box 913
New Orleans, LA 70118
(207) 930-5232
emilyposnerlaw@gmail.com

*Counsel for Logan Mills*

---

[266] *See Valdez v. Cockrell*, 274 F.3d 941, 946-47 (5th Cir. 2001).

**VERIFICATION**

I hereby verify that the facts set forth in this petition are true and accurate to the best of my information and belief.

/s/ *Emily H. Posner*

Emily H. Posner

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served District Attorney, Washington Parish, 905 Pearl Street, Franklinton, Louisiana, 70438, and the Warden of Rayburn Correctional Center by U.S. mail and/or email, on the same day of filing.

/s/ *Emily H. Posner*

Emily H. Posner