# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LOGAN MILLS,** | * | **CIVIL ACTION** |
| | * | **NO. 18-847** |
| **VERSUS** | * | |
| | * | **DIVISION "F"(2)** |
| **ROBERT TANNER, WARDEN** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

---

## EXHIBIT A

## MILLS' ORIGINAL APPLICATION FOR POST CONVICTION RELIEF

---

## UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

LOGAN NESTOR MILLS

**NAME OF PETITIONER**

 532042
**PRISON NUMBER**

LOUISIANA STATE PENITENTIARY
**PLACE OF CONFINEMENT**
vs.
 DARREL VANNOY, Warden
CUSTODIAN (Warden, Superintendent, Jailor,  or
authorized person having custody of  petitioner)
    Please Serve CUSTODIAN and WARREN MONTGOMERY, DISTRICT ATTORNEY, 22nd JUDICIAL
DISTRICT, STATE OF LOUISIANA.

No. _____

(to be filled in by the clerk)

22ND   JUDICIAL DISTRICT

PARISH OF WASHINGTON
STATE OF LOUISIANA

### INSTRUCTIONS--READ CAREFULLY

(1)  This petition must be legibly written or typed, signed by the petitioner and sworn to before a notary public or institutional officer authorized to administer an oath.  Any false statement of a material fact may serve as the basis for a criminal prosecution.  All questions must be answered concisely in the proper space on the form. Additional pages are not permitted except with respect to the facts which you rely upon to support your claims for relief.  No citation of authorities or legal arguments are necessary.

(2)  Only one judgment may be challenged in a single petition except that convictions on multiple counts of a single indictment or information may be challenged in one petition.

(3)  YOU MUST INCLUDE ALL CLAIMS FOR RELIEF AND ALL FACTS SUPPORTING SUCHCLAIMS IN THE PETITION.

(4)  When the petition is completed, the original must be mailed to the clerk of the district court in the parish where you were convicted and sentenced.

(5)  You must attach official documentation showing your sentence and the crime for which you have been convicted.  You may obtain that documentation from the clerk of court of the district court of the parish where you were sentenced or from the institution where you are confined.  If that documentation is not attached, you must allege what steps were taken to obtain it.

(6)  Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

### PETITION

1. Name and location of court which entered the judgment of conviction challenged

Washington Parish Courthouse, Washington & Main St., Franklinton, LA 70438

2. Date of judgment of conviction August 20, 2012

3. Length of sentence 70 years

4. Nature of offense involved (all counts) La. R.S. 14:64, one count; La. R.S. 14:64.3, one count; La. R.S. 14:27.30, two counts; and La. R.S. 14:96, one count.

5. What was your plea?  (check one)

    (a) Not guilty ( X )

    (b) Guilty ( )

    (c) Not guilty and not guilty by reason of insanity ( )

If you entered a guilty plea to one or more counts and not guilty to other counts, give details

_____

    (d) Name and address of the lawyer representing you at your plea (if you had no lawyer, please indicate)

        Cameron Mary, 4021 DeSoto Street, Mandeville, LA 70471

    (e) Was the lawyer appointed ( ) or hired ( X )? (check one)

6. Kind of trial:  (check one)

    (a) Jury ( X )

    (b) Judge only ( )

7. (a) Name and address of the lawyer representing you at your trial:

        Cameron Mary, 4021 DeSoto Street, Mandeville, LA 70471

    (b) Was the lawyer appointed ( ) or hired ( X )? (check one)

  8. Did you testify at the trial?   Yes ( X ) No ( )

9.    a. Give the name and address of the lawyer who represented you at sentencing for the conviction being attacked herein.
        Cameron Mary, 4021 DeSoto Street, Mandeville, LA 70471
    (b) Was the lawyer appointed ( ) or hired ( X )?  (check one)

10.    Did you appeal from the judgment of conviction?   Yes ( X ) No ( )

11.    If you did appeal, give the following information:

    (a) Citation, docket number, and date of written opinion by the Supreme Court (if known)

        State v. Mills, 13-0573 (La. App. 1 Cir. 8/27/14), 153 So. 3d 481

    (b) Name and address of lawyer representing you on appeal:

        Bruce G. Whittaker, 1215 Prytania St., Ste. 332, New Orleans, LA 7013

    (c) Was the lawyer appointed ( X ) or hired ( )?  (check one)

12.    Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any application for post-conviction relief with respect to this judgment in any state or federal court?   Yes ( ) No (x )

## CLAIMS FOR RELIEF

State concisely facts supporting your claim that you are being held unlawfully.  If necessary, you may attach extra pages stating additional claims and supporting facts.  Do not argue points of law.

The following is a list of those claims, and only those claims, that may provide you with grounds for relief:

(1)     Your conviction was obtained in violation of the constitution of the United States or the State of Louisiana;

(2)     The court exceeded its jurisdiction;

(3)     Your conviction or sentence subjected you to double jeopardy;

(4)     The limitations on prosecution had expired;

(5)     The statute creating the offense for which you were convicted and sentenced is unconstitutional;

(6)     The conviction or sentence constitute the ex post facto application of law in violation of the Constitution of the United States or the State of Louisiana.

A REMINDER:  THE ABOVE LIST CONTAINS ONLY THOSE CLAIMS THAT YOU MAY RAISE FOR RELIEF.  YOU MUST SET FORTH ALL OF YOUR COMPLAINTS ABOUT YOUR CONVICTION IN
THIS APPLICATION.  YOU MAY BE BARRED FROM PRESENTING ADDITIONAL CLAIMS AT A LATER DATE.  Remember that you must state the FACTS upon which your complaints about your conviction are based.  MERE CONCLUSORY ALLEGATIONS WILL NOT SUFFICE.

## REPETITIVE APPLICATIONS

The above claims may not provide grounds for relief if any of the following applies to you:

(1)  Unless required in the interest of justice, any claim for relief which you fully litigated in an appeal shall not be considered.

(2)  Any claim of which you had knowledge and inexcusably failed to raise in the proceeding leading to conviction may be denied by the court.

(3)  Any claim which you raised in the trial court and inexcusably failed to pursue on appeal may be denied by the court.

(4)  A successive application may be dismissed if it fails to raise a new or different claim.

(5)  A successive application may be dismissed if it raises a new or different claim that was inexcusably

omitted from a prior application.

This application will provide space for you to explain the reasons why you failed to raise your claims in the proceedings leading to conviction, or failed to urge the claim on appeal, or failed to include the claim in a prior application.

## CLAIM I

Claim:     Felonious prosecutorial and judicial misconduct made it impossible for Mills to obtain a fair trial.

(a)  Supporting FACTS (tell your story briefly without citing cases or law):

Everyone who played a vital role in the prosecution team at Mills' trial was caught, via two cell phone videos, engaging in a conspiracy to maliciously prosecute Mills'

3

uncle in retaliation against Mills for filing an excessive force suit against the Bogalusa Police Officers/Department.

Minutes after the jury returned a verdict, Mills' uncle, Doug Dendinger, served Bogalusa Police Officer Chad Cassard with a summons for the excessive force suit. Officer Cassard took the envelope and handed it to Leigh Anne Wall, the assistant district attorney who conducted Mills' trial. Julie Knight was also present as well as Pamela Jean Legendre, Mills' trial judge's law clerk. Several other Bogalusa Police Officers, including Officer Scott Seals, who testified at Mills' trial, were also present. This group of State officials circled Mr. Dendinger and began cursing at him.

Mr. Dendinger then left the courthouse and went to his home. Within twenty minutes, the police showed up at Mr. Dendinger's house with an arrest warrant, charging him with obstruction of justice, intimidation of a witness, and battery on a police officer. The arrest warrant was signed by Mills' trial judge, August J. Hand, and was obtained because all of the above-named State officials went inside the courthouse and executed false statements, attesting that Mr. Dendinger struck Officer Cassard with the civil summons when serving him.

The charges remained pending against Mr. Dendinger for approximately one year, at which time Mr. Dendinger's attorney successfully recused the 22nd Judicial District Attorneys' Office from the case. The Louisiana Attorney General's Office then promptly dropped the charges.

Given the egregious nature of the above-described misconduct (no less than six State officials conspiring to send an innocent man to prison), the incident received extensive media coverage.

For further details and argument, *see* Memorandum of Law (to be filed on or before September 15, 2016).

(b)  List names and addresses of witnesses who could testify in support of your claim.  If you cannot do so, explain why:

    i.    Doug Dendinger, 16600 Pelican Drive, Franklinton, LA 70438
    ii.    Teresa Wiley Dendinger, 16600 Pelican Drive, Franklinton, LA 70438
    iii.    Jake Mills, 425 Ridgewood Drive, Mandeville, LA 70471
    iv.    Melanie Mills, 425 Ridgewood Drive, Mandeville, LA 70471
    v.    Terrence Mills, 12025 Hansen Road, Bogalusa, LA 70427
    vi.    Leigh Anne Wall, 1645 Nicholson Drive, Baton Rouge, LA 70802-8143
    vii.    Julie Knight, address unknown
    viii.    Pamela Jean Legendre, address unknown
    ix.    Chad Cassard, address unknown
    x.    Scott Seals, address unknown
    xi.    Patrick Lyons, Bogalusa Police Department, 111 Memphis St, Bogalusa, LA 70427

(c)  If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:   N/A

4

## CLAIM II

Claim:   Mills was denied the effective assistance of counsel when his trial counsel failed to investigate his codefendant's mental health history and failed to present evidence that his codefendant was taking psychotropic medication at the time of the crime.

(a)  Supporting FACTS (tell your story briefly without citing cases or law):

Mills informed his trial counsel that his codefendant, Walter Aswell, took psychotropic medication at the time of the crime. This evidence is significant and could have been used at trial to add credibility to Mills' coercion defense. Yet, trial counsel made no effort to investigate the matter and did not even question Aswell about the psychotropic medication he was taking.

For further details and argument, *see* Memorandum of Law (to be filed on or before September 15, 2016).

(b)  List names and addresses of witnesses who could testify in support of your claim.  If you cannot do so, explain why:
      i.    Cameron Mary, 4021 DeSoto Street, Mandeville, LA 70471

(c)  If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:   N/A

## CLAIM III

Claim:   Mills was denied his right to a fair trial and right of confrontation when the trial court allowed the State to impeach Mills with a federal complaint that was prepared and filed by a California attorney Mills did not know and with whom Mills had never communicated.

(a)  Supporting FACTS (tell your story briefly without citing cases or law):

As a result of serious injuries Mills sustained during his arrest, California attorney Philip J. Kaplan filed a 1983 complaint on Mills' behalf. Paragraph five of the Complaint refers to Mills as a "passenger" in the getaway vehicle. Prior to Mills' testimony, defense counsel moved to prohibit the State from being able to impeach Mills with the Complaint, if and when Mills testified that he was the driver of the getaway vehicle. Defense counsel argued that Mills' civil counsel was not present and could not be cross-examined on the statements contained in the civil petition. Nevertheless, the trail court ruled that the State would be allowed to impeach Mills with the Complaint in the event Mills testified he was the driver of the getaway vehicle. The trial court reasoned that the passenger language was admissible as a "statement against interest."

On direct appeal, the State did not defend the trial court's reasoning, but instead argued that the allegations contained in the Complaint were not hearsay because they "were made by a person authorized by [Mills] to make a statement concerning the subject." However, attorney Kaplan has since executed a Declaration, attesting that he "did not meet or confer with Mr. Mills" before filing the suit. Attorney Kaplan further attested he used the word passenger to mean "an 'occupant.'"

For further details and argument, *see* Memorandum of Law (to be filed on or before September 15, 2016).

(b)  List names and addresses of witnesses who could testify in support of your claim.  If you cannot do so, explain why:

      i.      Phillip J. Kaplan, 3278 Wilshire Blvd., Ste. 106, Los Angeles, CA 90010
     ii.     Cameron Mary, 4021 DeSoto Street, Mandeville, LA 70471

(c)  If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:  _N/A_____

## CLAIM IV

Claim:    Mills was denied the effective assistance of counsel when his appellate counsel failed to adequately brief the issues he raised on appeal and failed to respond to the State's Original Brief.

(a)  Supporting FACTS (tell your story briefly without citing cases or law):

In his Original Brief, Mills' appellate counsel argued that Mills' right of confrontation was violated when the trial court refused to allow Mills to cross-examine his codefendant, Walter Aswell, regarding the substantial leverage the State had against him. However, appellate counsel failed to argue why Aswell's testimony that Mills was the passenger in the getaway vehicle was not merely cumulative, i.e., the three police officers who "corroborated" Aswell's testimony were each substantially impeached, and therefore, their testimony could not be relied upon to hold the confrontation violation harmless beyond a reasonable doubt. Counsel's error in this regard was both fatal and inexcusable, given that harmless error jurisprudence clearly dictates that if a witness' testimony is merely cumulative, any potential confrontation violation will be deemed harmless.

Worse still, Mills expressed this very concern to appellate counsel in a letter after Mills received appellate counsel's Original Brief. Sure enough, the Court of Appeal relied primarily on the testimony of the three police officers to hold the confrontation violation harmless.

Appellate counsel also argued that the trial court erred in allowing the State to impeach Mills with a civil petition that was prepared and filed by an out-of-state attorney. Counsel thoroughly demonstrated the trial court's error in admitting the civil petition as a "statement against interest." In its Original Brief, however, the State did not defend the trail court's rationale for admitting the civil petition, and instead argued the petition was not hearsay at all because it was a statement "made by a person authorized by [Mills] to make a statement concerning the subject." Appellate counsel failed to notice the State's new argument, and continued to argue in his Reply Brief that the petition could not be considered a statement against interest; a position not even advanced by the State. Unsurprisingly, the Court of Appeal adopted the State's unchallenged position in holding there was no error in the admission of the civil petition.

For further details and argument, *see* Memorandum of Law (to be filed on or before September 15, 2016).

(b)  List names and addresses of witnesses who could testify in support of your claim.  If you cannot do so, explain why:

      i.     Bruce G. Whittaker, 1215 Prytania St., Ste. 332, New Orleans, LA 70130

(c)  If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:  _N/A_____

## CLAIM V

Claim:   <u>Mills was denied a fair and impartial direct appeal when the Court of Appeal repeatedly ignored the strongest points of Mills' arguments, and repeatedly misapplied unambiguous law.</u>

(a)  Supporting FACTS (tell your story briefly without citing cases or law):

The Court of Appeal's opinion affirming Mills' convictions, when taken as a whole, evidences clear judicial bias and a consistent misapplication of the law. For example, the court held that two of Mills' challenges for cause were not preserved for appeal because Mills' attorney did not say, "note my objection," when the trial court declined to sustain these cause challenges. The Louisiana Supreme Court has previously reversed/corrected the First Circuit <u>twice</u> on this very issue (for holding a formal incantation is required to preserve a cause challenge for review). Both Mills and his appellate counsel cited the above-reference Supreme Court decisions in their respective Reply Briefs, as the State Asserted in its Original Brief that these two challenges for cause were not preserved for appeal (the State did not cited any cases to support is assertion – because there are none). Yet, the First Circuit blatantly ignored Mills and his appellate counsel's response on this issue.

The Court of Appeal also ignored Mills' argument that his codefendant's testimony was not merely cumulative because the three police officers who corroborated Aswell's testimony of being the driver were substantially impeached. When Mills received his appellate counsel's Original Brief, the notice that appellate counsel failed to make mention of the substantial impeachment of the three Bogalusa Police Officers involved in the chase and arrest of Mills and his codefendant.

Believing counsel's error in this regard would be fatal to his confrontation violation, Mills filed a *pro se* Supplemental Brief, in which he detailed the substantial impeachment of the Bogalusa Police Officers. Mills further argued that, because the three officers' testimonies were materially impeached, their testimonies could not be relied upon to declare the confrontation violation harmless beyond a reasonable doubt.

The First Circuit completely ignored Mills' argument, and relied upon the three officers' testimonies to declare the confrontation violation harmless.

It is noteworthy that William J. Crain, who wrote the opinion affirming Mills' convictions and sentences, was one of only two judges being assigned felony cases in Washington Parish at the time of Mills' crime and trial.

For further details and argument, *see* Memorandum of Law (to be filed on or before September 15, 2016).

*See also Fear of a Paper Tiger: Enforcing Louisiana's Procedural and Statutory Rules in the Wake of Harmless Error Analysis,* James E. Boren and Michael Fiser, 64 Louisiana Law Review, 2003; detailing Louisiana appellate courts' inability to conduct a harmless error analysis due mainly to judicial bias.

(b)  List names and addresses of witnesses who could testify in support of your claim.  If you cannot do so, explain why:

     i.    William J. Crain, First Circuit Court of Appeal, 1600 N. 3rd St., Baton Rouge, LA 70821
    ii.    Jewel E. Welch, First Circuit Court of Appeal, 1600 N. 3rd St., Baton Rouge, LA 70821
   iii.    Vanessa Guidry-Whipple, First Circuit Court of Appeal, 1600 N. 3rd St., Baton Rouge, LA 70821
   iv.    Bruce G. Whittaker, 1215 Prytania St., Ste. 332, New Orleans, LA 70130

(c)  If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:  N/A

A.  Do you have in a state or federal court any petition or appeal now pending as to the judgment challenged?
Yes [ ] No [ x ]

B.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment challenged?  Yes [ ] No [ x ]

(1)  If so, give name and location of court which imposed sentence to be served in the future:

(2)  Give date and length of sentence to be served in the future:

(3)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?  Yes [ ] No [ ]

If a copy of the court order sentencing you to custody is not attached, explain why.

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled.

**JANE HOGAN,** Bar Roll No. 35172
309 East Church Street
Hammond, LA 70401
(985) 542-7730
(985) 542-7756 fax
*Counsel for Logan Mills*

8/18/16
Day/Month/Year

8

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF Tangipahoa

Jane C. Hogan, on behalf of Logan Mills, being first duly sworn says that she has read the foregoing application for post-conviction relief, discussed same with Mr. Mills, and swears or affirms that all of the information therein is true and correct to the best of her knowledge.

_____

Jane C. Hogan

SWORN TO AND SUBSCRIBED before me this 18th day of August, 2016

_____

Notary Public or other person authorized to administer an oath.

THOMAS J HOGAN JR
NOTARY PUBLIC
BAR ROLL NO. 06908
NOTARY ID NO. 10265
MY COMMISSION IS FOR LIFE

9

**State of Louisiana Uniform Commitment Order**

Judicial District ___22___  Court Section ___B___

Parish of Commitment _Washington_  Docket Number _B 11333_

| Defendant/Case Identifiers: | | |
|---|---|---|
| Name of Convicted | Logan Mills | |
| Race | W | Date of Birth (MM/DD/YYYY) |
| Sex | M | State ID Number |

**Total Sentence (*total length of incarceration imposed*):**
To be imprisoned at hard labor in the custody of the Department of Public Safety and Corrections for:

| 60 | Years | | Months | | Days |
|---|---|---|---|---|---|

**Sentence Details:**

| Convicted of: (*Revised Statute Number*) | Number of Counts | Verdict/Plea: | Sentence Length (*Example: 2 year, 6 months, 30 days*) |
|---|---|---|---|
| 14:64 | 1 | Verdict | 60 yrs w/o Benefit |
| 14:64.3 | 1 | | 5 yrs w/o Benefit |
| 14:27,30 | 2 | ↓ | 40 yrs w/o Benefit |
| 14:96 | | | 15 yrs w/o Benefit |

**Sentence/Offense Dates (MM/DD/YYYY):**

| Offense Date(s) | 4-20-11 | | | |
|---|---|---|---|---|
| Adjudication Date | 8-20-12 | | | |
| Sentence Date | 9-10-12 | | | |
| Revocation Date(s) | | | | |

| Sentence Conditions: | Docket Number | Parish, Judicial District of Docket Number |
|---|---|---|
| Concurrent with: (list docket numbers, parish, and Judicial District) | | |
| Consecutive to: (list docket numbers, parish, and Judicial District) | | |

**Special Comments or Instructions (*such as suspended sentence or good time*):**

Cts 1,3,4 & 6 run cc w/each other + any any sentence now serving
ct 2 runs cs to ct. 1
CTS

| Involved Parties (*Printed Names*): | | | |
|---|---|---|---|
| Minute Clerk: | L. Price | Prosecutor: | L. Wall |
| Court Reporter: | J. Willie | Defense Attorney: | C. Mary |

The above sentence, handed down in Open Court, is the order of this Court and this shall be sufficient warrant for its execution.

Thus Done and Signed this 10 day of ___Sept___, 20 12

_(Judge's Signature)_
Judge's Signature

| Judge's Printed Name and Mailing Address: |
|---|
| August Hand |

Version 1.3
March, 2011

IN THE TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF WASHINGTON
IN THE STATE OF LOUISIANA

---

No. 11-CR5-113331

---

LOGAN NESTOR MILLS
*Petitioner*

v.

DARREL VANNOY, WARDEN
*Respondent*

---

ORIGINAL MEMORANDUM IN SUPPORT OF
APPLICATION FOR POST-CONVICTION RELIEF

---

ON BEHALF OF LOGAN NESTOR MILLS

---

TITLE XXXI-A OF THE
LOUISIANA CODE OF CRIMINAL PROCEDURE

---

Respectfully submitted by:

JANE HOGAN, Bar Roll No. 35172
Hogan Attorneys
309 East Church Street
Hammond, Louisiana 70401
(985) 542-7730
(985) 542-7756 fax
jane@hoganandhogan.com

*Counsel for Logan Mills, Petitioner*

## **TABLE OF CONTENTS**

List of Separately Bound Exhibits...................................................................3

Statement of Jurisdiction ..............................................................................4

Statement of the Case ......................................................................................4

Issues Presented for Review...........................................................................5

Claims for Relief.............................................................................................6

Statement of Facts...........................................................................................7

Argument.......................................................................................................10

    1.  Felonious prosecutorial and judicial misconduct made it impossible for Mills to
       obtain a fair trial......................................................................................10

    2.  Mills was denied the effective assistance of counsel when his attorney failed to
       investigate Mills' codefendant's mental health history and failed to present
       evidence that Mills' codefendant was taking psychotropic medication at the time
       of the crime..............................................................................................13

    3.  Mills was denied his right to a fair trial and right of confrontation when the
       trial court allowed the State to impeach Mills with a federal complaint that
       was prepared and filed by a California attorney that Mills did not know
       and had never communicated with..............................................................15

    4.  Mills was denied the effective assistance of counsel when his appellate
       counsel failed to adequately brief the issues raised on appeal and failed
       to adequately respond to the State's Original Brief.......................................20

    **5.**  Mills was denied a fair and impartial direct appeal when the First Circuit
       Court of Appeal ignored the strongest parts of Mills' arguments, and
       consistently misapplied clear and established law........................................27

Conclusion......................................................................................................37

Certificate of Service......................................................................................38

## SEPARATELY BOUND EXHIBITS

**EXHIBITS:**

| | |
|---|---|
| **A** | Federal Complaint for Damages and Injunctive Relief |
| **B** | Letter to Appellate Counsel |
| **C** | Appellate Counsel's Original Brief |
| **D** | State's Original Brief |
| **E** | Appellate Counsel's Reply Brief |
| **F** | *Pro se* Reply Brief |
| **G** | *Pro se* Supplemental Brief |
| **H** | *Pro se* Application for Rehearing |
| **I** | Declaration of Philip J. Kaplan |
| **J** | Declaration of Logan N. Mills |
| **K** | "Charges crumble after cell phone video uncovered" |
| **L** | "Louisiana police and prosecutors conspire to send an innocent man to prison for serving a summons on a fellow police officer." |
| **M** | "Seven cops and lawyers apparently 'lied' to put this man in jail. He was only saved by the video you're about to see." |
| **N** | "Police contrived conspiracy against Douglas Dendinger" |
| **O** | "But for the video…." |
| **P** | "Video exonerates man set up by Louisiana cops and prosecutors" |
| **Q** | "Police misconduct: the worst case in March" |
| **R** | Voluntary statement of Chad Cassard |
| **S** | Voluntary statement of Scott Seals |
| **T** | Voluntary statement of Julie Knight |
| **U** | Voluntary statement of Leigh Anne Wall |
| **V** | Voluntary statement of Pamela Jean Legendre |
| **W** | Voluntary statement of Joe Culpepper |
| **X** | Voluntary statement of Kendal Bullen |
| **Y** | Arrest report of Deputy Steven Galloway |
| **Z** | Felony Bill of Information |

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, through undersigned counsel, comes Logan Nestor Mills, the petitioner in the instant matter, who respectfully submits the following memorandum in support of his Application for Post-Conviction Relief.

**STATEMENT OF JURISDICTION**

Jurisdiction vests in this Honorable Court by virtue of Article V, § 16 of the Louisiana Constitution of 1974, which provides that the district courts "shall have original jurisdiction of all civil and criminal matters." Venue is proper pursuant to La. C.Cr.P. art. 925, which provides that an "Application for post-conviction relief shall be filed in the parish in which the petitioner was convicted."

**STATEMENT OF THE CASE**

Logan Nestor Mills and co-defendant Walter Roy Aswell were charged by bill of information with one count of armed robbery (Count 1), one count of armed robbery with a gun (Count 2), three counts of attempted first degree murder (Counts 3, 4, and 5), and one count of aggravated obstruction of a highway (Count 6), in violation of La. R.S. 12:64, 14:63.3, 14:27:30, and 14:96.[1] Mills was arraigned and pled not guilty on June 1, 2011.[2]

Mills proceeded to trial alone on August 13-20, 2012, concluding with verdicts of guilty as charged on Counts 1, 2, 3, 4, and 6, and not guilty on Count 5, which involved the alleged attempted murder of Chad Cassard. The court sentenced Mills to 60 years for the count of armed robbery, five years for the count of armed robbery with a gun, 40 years for the two counts of attempted murder, and 15 years for the count of aggravated obstruction of a highway. The court ordered all the sentences to run concurrent, with the exception of Count 2, armed robbery with a gun, which was to be served consecutively to Count 1, armed robbery. Mills was adjudicated a second felony offender and sentenced to 70 years at hard labor for the armed robbery count, all other sentences to remain the same.

Mills appealed his conviction and sentence. On August 27, 2014, the First Circuit Court of Appeal affirmed Mills' convictions, habitual offender adjudication, and sentences.[3] On

---

[1]    R. pp. 35-36
[2]    R. p. 1.
[3]    *State v. Mills*, 13-0573 (La. App. 1 Cir. 8/27/14), 153 So.3d 481.

4

September 9, 2014, Mills filed a *pro se* Application for Rehearing, which was denied on September 26, 2014. Mills' appellate counsel filed an Application for Certiorari with the Louisiana Supreme Court on September 26, 2014, which was denied on May 22, 2015.[4] Mills filed a *pro se* Application for Certiorari with the Louisiana Supreme Court on October 27, 2014, which the Court denied on September 18, 2015.[5]

Through undersigned counsel, Mills filed an Application for Post-Conviction Relief with this Court on August 19, 2016. Mills now files this Memorandum of Law in support.

## ISSUES PRESENTED FOR REIVEW

1. **All of the State officials who arrested and prosecuted Mills were biased against him to such an extent that they conspired to send Douglas Dendinger, an innocent man, to prison merely because he served a civil summons on Mills' behalf. These officials include both of the assistant district attorneys who conducted Mills' trial, Mills' trial judge's law clerk, the three Bogalusa police officers who arrested Mills, the primary Bogalusa Police Department detective involved in Mills' case, and the chief of the Bogalusa Police Department. Under these circumstances, was it possible for Mills to obtain a fair trial?**

2. **Was Mills denied the effective assistance of counsel when his attorney failed to investigate and present evidence that Mills' codefendant was under the influence of psychotropic medication at the time of the crime?**

3. **Was Mills' constitutional right to a fair trial violated when the trial court allowed the State to impeach Mills with a document prepared and filed by a California attorney that Mills did not know and had never communicated with?**

4. **Was Mills denied the effective assistance of counsel when his appellate counsel left gaping holes in his arguments and failed to adequately respond to the State's Original Brief?**

5. **Was Mills denied a fair and impartial direct appeal when the First Circuit Court of Appeal ignored the strongest parts of Mills' arguments, ignored all the facts in Mills' favor, and consistently misapplied clearly established law?**

---

[4]   *State v. Mills*, 14-2027 (La. 5/22/15), 170 So.3d 982.
[5]   *State ex rel. Mills v. State*, 14-2269 (La. 9/18/15), 178 So.3d 139.

## CLAIMS FOR RELIEF

1. Felonious prosecutorial and judicial misconduct made it impossible for Mills to obtain a fair trial.

2. Mills was denied the effective assistance of counsel when his attorney failed to investigate Mills' codefendant's mental health history and failed to present evidence that Mills' codefendant was taking psychotropic medication at the time of the crime.

3. Mills was denied his right to a fair trial and right of confrontation when the trial court allowed the State to impeach Mills with a federal complaint that was prepared and filed by a California attorney that Mills did not know and had never communicated with.

4. Mills was denied the effective assistance of counsel when his appellate counsel failed to adequately brief the issues raised on appeal and failed to adequately respond to the State's Original Brief.

5. Mills was denied a fair and impartial direct appeal when the First Circuit Court of Appeal ignored the strongest parts of Mills' arguments, and consistently misapplied clear and established law.

**STATEMENT OF FACTS**

As set forth by the First Circuit Court of Appeal:

On April 20, 2011, the defendant and Walter Aswell entered the Capital One Bank on Columbia Street in Bogalusa, wearing masks and carrying guns. While Aswell stood guard at the back, the defendant held up his gun, told the tellers to keep their hands up and demanded money. One of the tellers handed money to the defendant and triggered the silent alarm. The defendant and Aswell fled the bank in a black Jeep.

A chase ensued involving units from the Bogalusa Police Department and the Washington Parish Sheriff's Office, with shots being fired from the Jeep at the pursuing officers. The chase continued into Mississippi, with shots exchanged between the pursuing officers and the fleeing Jeep. The chase ended in Mississippi when the defendant and Aswell abandoned the Jeep and fled in opposite directions. Both the defendant and Aswell were apprehended and taken into custody after being shot by the police. Officers identified the defendant as the passenger in the Jeep who fired multiple shots at police.

The defendant testified at trial that the bank robbery was Aswell's idea and that he unwillingly participated because Aswell threatened to shoot him if he did not. According to the defendant he was following Aswell's instructions when he walked into the bank, raised his gun, pointed it at the teller, and walked up to her. Aswell remained behind him holding a gun. The defendant took the money that the teller placed on the counter, put it in the front pouch of the hoodie he was wearing, then turned and walked out. The defendant claimed he was the driver of the Jeep in which he and Aswell fled and that Aswell was riding in the backseat, gripping a gun and instructing him not to stop the vehicle. As the police pursued them, Aswell moved into the front passenger seat and began shooting at the police. The defendant denied shooting at police officers or firing any weapons on the day of the robbery. He testified that he ran from the stalled Jeep because the officers were shooting and he was afraid. The defendant fell to the ground and was handcuffed after being shot in the ankle and back. He denied resisting arrest, claiming that the officers beat him after he was handcuffed, which caused serious injuries. Subsequently, the defendant filed suit against the officers in federal court.

7

The First Circuit omitted the following facts relevant to the claims presented herein:

Mills exited the bank first and dropped a stack of money on the sidewalk, which Aswell bent down and picked up.[6] A single stack of money was found on the floor between the passenger seat and door.[7] Aswell admitted he went in the bank second, came out of the bank second, and was behind Mills "at all times during the robbery."[8]

Gereldine Ledet testified that she and a friend were driving by the Capital One on Columbia Street on the morning of April 20, 2011, when her friend exclaimed, "The bank has just been robbed."[9] Ms. Ledet testified that the first person she saw ran around and got in the driver's seat.[10] Ledet testified that she saw another person: "I don't remember like exactly him running to the vehicle, whatever, I just seen somebody stop and go down like, you know, like to get something and come back up. But I only, the driver of the vehicle is the only person I actually seen, you know."[11] Moments later, upon seeing a police officer, Ledet stopped and let her friend out of the car who "flagged the policeman down and said the bank had just been robbed."[12]

Diana Thomas testified that she was with Ledet and "just happened to look at the bank, and I actually saw a man run out. He had a hood on, and he was reaching down picking money up and putting it in a bag, and ran and got in a black Jeep, black vehicle."[13] When they saw a police vehicle in the area, Thomas jumped out and told the officer what she had witnessed.[14] On cross-examination, Thomas noted that the person she saw enter the Jeep got into the driver's seat but she would not be able to identify him.[15]

Wanda Terrell was also driving by the Capital One on the morning of April 20, 2011.[16] Terrell was with her daughter and her brother.[17] Terrell told the jury that she was "two people coming out of the bank.... they had on like a hoodie...I saw one of them bend down. He was apparently picking something up."[18] Terrell could not identify either occupant of the Jeep.[19]

---

[6]     R. p. 377.
[7]     R. p. 378; State's Ex. 14-B
[8]     R. p. 366.
[9]     R. p. 1350.
[10]     R. p. 1357.
[11]     R. p. 1357.
[12]     R. p. 1349.
[13]     R. pp. 1361-62.
[14]     R. p. 1362.
[15]     R. p. 1364.
[16]     R. p. 1372.
[17]     R. p. 1371.
[18]     R. p. 1372.
[19]     R. p. 1376.

Kermit Martin testified that he was in Wanda Terrell's vehicle and saw "bundles of money laying [sic]. A guy coming out with a hood on. One guy was getting in the Jeep on the other side. The other guy was picking the money up."[20] Martin testified that the person he saw pick up the money got in the passenger seat of the Jeep.[21] When asked whether he was sure about his recollection, Mr. Martin replied, "I am positive."[22]

Amanda Carnegie was also in Wanda Terrell's vehicle and told the jury that she saw "two people coming out of the bank. They were dressed similar. I seen them drop, I seen one of the people drop money."[23] On cross-examination, Carnegie acknowledged that she could not be certain if the first person to exit the bank entered the driver's seat.[24]

Walter Aswell testified that the magazines for the pistols were loaded the night before the robbery.[25]

Darryl Perkins of the Mississippi Department of Public Safety testified that when he went to Forrest General Hospital, he recovered a magazine containing two bullets from Walter Aswell's person.[26]

Dr. Carl Fullilove of the Mississippi crime lab testified as an expert in firearms and tool mark identification and told the jury that he examined three Glock .40 caliber pistols, a Heckler & Koch 9mm pistol, and a Beretta 9mm pistol.[27] The three Glock pistols came from the three Bogalusa Police Officers involved in the chase and arrest of Aswell and Mills.[28] The two 9mm pistols came from the suspects.

Anna Savrock with the Mississippi Bureau of Investigations testified that she was called out to the address where the chase ended for the purpose of photographing the scene and collecting evidence.[29] Savrock testified that she and other Agents utilized metal detectors and got on their "hands and knees" to ensure that no shell casings were missed.[30] Savrock further testified that numerous .40 caliber shell casings were found on the scene and that no 9mm shell casings were

---

[20] R. p. 1386.
[21] R. p. 1392.
[22] R. p. 1392.
[23] R. p. 1400.
[24] R. p. 1405.
[25] R. p. 327.
[26] R. p. 1714.
[27] R. pp. 1652-57.
[28] R. pp. 1587, 1657.
[29] R. pp. 1411, 1416.
[30] R. p. 1426.

9

found outside of the getaway vehicle.[31]

Dr. Richard Friend testified that Mills suffered a gunshot wound to the left scapula, a subsequent fracture of that scapula, a collapsed lung, a rib fracture, a moderate to severe concussion, severe facial trauma including lacerations to the left commissure of the mouth which required surgery to repair and swelling to such an extent that Mills' treating physicians could not open his eye to examine the pupil.[32] Dr. Friend also testified that Mills suffered a gunshot wound to his right ankle and that the bullet did not remain in Mills' person.[33]

## CLAIM NO. 1

**Felonious prosecutorial and judicial misconduct made it impossible for Mills to obtain a fair trial.**

In an incident that made national news, all of the key officials involved in Mills' prosecution were caught, via cell phone video, conspiring to put false charges against Mills' uncle, Douglas Dendinger, minutes after Mills' trial ended. These officials include: both of the assistant district attorneys who conducted Mills' trial, Leigh Anne Wall and Julie Knight; Mills' trial judge's law clerk, Pamela Legendre; the three Bogalusa police officers who arrested Mills, Patrick Lyons, Scott Seals, Chad Cassard; the main Bogalusa Police Department detective involved in Mills' case, Kendall Bullen; and the chief of the Bogalusa Police Department, Joe Culpepper.[34]

A few minutes after Mills' jury returned with its verdict, all of the above-referenced officials (hereinafter Mills' prosecution team) exited the front of the courthouse. Mills' uncle, who was waiting outside on the courthouse steps, walked up to Cassard and handed him a summons for Mills' excessive force lawsuit. Cassard gave the summons to Detective Bullen, who then threw it back in Dendinger's face. Mills' prosecution team simultaneously surrounded Dendinger and started cursing him. Dendinger then left and went home.

Within approximately twenty minutes, Washington Parish Sheriff's deputies showed up at Dendinger's house with a warrant for his arrest. Dendinger was arrested and charged with simple battery, obstruction of justice, and intimidation of a witness, because of false written statements that Mills' prosecution team submitted to Deputy Steven Galloway with the

---

[31]     R. pp. 1587-88.
[32]     R. pp. 173-180.
[33]     R. p. 173.
[34]     *See* Exhibits K, L, M, N, O, P, and Q.

10

Washington Parish Sheriff's Office.[35] These statements alleged that Dendinger assaulted Officer Cassard.[36]

Officer Cassard told the police that Dendinger "slapped me in the chest."[37] ADA Knight told deputies, "We could hear the slap as he hit Cassard's chest with an envelope of papers...This was done in a manner to intimidate everyone involved."[38] Mills' trial judge's law clerk, Legendre, told deputies that "it made such a noise" she thought the officer had been punched.[39]

Supported by two of his prosecutors who were at the scene, former District Attorney Walter Reed formally charged Dendinger with one count of obstruction of justice, one count of simple battery, and one count of intimidating, impeding, or inuring witnesses, violations of La. R.S. 14:130.1, 14:35, and 14:129.1A(2)(3).[40] Unbeknownst to Mills' prosecution team, Mills' aunt and younger brother had recorded the incident with their cell phones.

After nearly a year passed, Dendinger's attorneys succeeded in forcing Reed to recuse his office. The case was referred to the Louisiana Attorney General's Office and the charges were immediately dropped.

The absolutely terrifying reality is that, had Mills' aunt and brother not recorded the incident, Mills' prosecution team almost certainly would have succeeded in sending an innocent man to prison. Indeed, the proposition that two district attorneys, a trial judge's law clerk, and five law enforcement officers would conspire to send an innocent man to prison is almost beyond belief.

The Louisiana Supreme Court has noted that, "In our system of justice, we entrust vast discretion to a prosecutor. Because a prosecutor is given such great power and discretion, he is also charged with a high ethical standard."[41] The Court further noted that, "A prosecutor stands as the representative of the people of the State of Louisiana," and is "entrusted with upholding the integrity of the criminal justice system by ensuring that justice is served for both the victims of crimes and the accused."[42] The United States Supreme Court has also "several times

---

[35]   Exhibit Y.
[36]   *See* Exhibits R, S, T, U, V, W, and X.
[37]   Exhibit R.
[38]   Exhibit T.
[39]   Exhibit V.
[40]   Exhibit Z.
[41]   *In re Jordan*, 04-2397 (La. 6/29/05), 913 So.2d 775, 781.
[42]   *Id.*

underscored the 'special role played by the American prosecutor in the search for truth in criminal trials.'"[43]

In *Satterwhile v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), the Court noted that some constitutional violations "by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless."[44] In *In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed.2d 942 (1955), the Court held that "[a] fair trial in a fair tribunal is a basic requirement of due process."[45] The Court further held that "[f]airness....requires an absence of actual bias in the trial of cases."[46]

It strains credulity to believe Mills could have obtained a fair trial when the officials charged with bringing him to justice harbored such animosity and/or bias towards him that they were willing to send an innocent man to prison for merely acting on Mills' behalf. This is the type of "fundamental flaw" that "undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless error review."[47] As the Supreme Court noted in *Vasquez v. Hillary, supra,* "When constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm."[48]

Accordingly, Mills has been deprived of his right to due process and a right to a fair trial, in violation of Article I, §§ 2 and 16 of the Louisiana Constitution and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. As such, Logan Mills' conviction and sentence should be vacated.

---

[43]    *Banks v. Dretke,* 540 U.S. 668, 696, 124 S.Ct. 1256, 157 L.Ed.2d. 1166 (2004) (quoting *Strickler v. Greene,* 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed. 2d 286 (1999)).
[44]    *Satterwhile v. Texas,* at 256.
[45]    *In re Murchison,* at 136. *See also United States v. Ebron,* 683 F.3d 105, 130 (5th Cir. 2012).
[46]    *Id.*
[47]    *Vasquez v. Hillary,* 474 U.S. 254, 263-64, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986).
[48]    *Id.* at 263.

## CLAIM NO. 2

**Mills was denied the effective assistance of counsel when his attorney failed to investigate Mills' codefendant's mental health history and failed to present evidence that Mills' codefendant was taking psychotropic medication at the time of the crime.**

Prior to trial, Mills informed his trial counsel that his codefendant, Walter Aswell, had been taking prescription psychotropic medication.[49] Mills informed his counsel of this because Mills believed it might be relevant to his defense that he was coerced by Aswell into complying with the robbery. The topic did not come up again until the middle of trial, when Mills asked his attorney if he had investigated Aswell's mental health history. Trial counsel responded that he "didn't have time."[50]

The standard of review for a claim of ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) requires a reviewing court to reverse a conviction if the defendant establishes: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different.[51] This "reasonable probability" standard does not require a defendant to show that counsel's deficient conduct more likely than not altered the outcome in the case.[52]

In *State v. Peart*, 621 So.2d 780 (La. 1993), the Louisiana Supreme Court noted that "because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must necessarily be individualized and fact-driven."[53]

In Mills' case, there is no question that counsel was deficient in failing to investigate Aswell's mental health history.

Mills' defense was one of justification: he testified that he was coerced into committing the robbery by Aswell.[54] The State's theory was that Mills was a willing participant in the armed robbery. The only direct evidence the State presented that contradicted Mills' justification defense was Aswell's testimony denying that he coerced Mills. Aswell's testimony – and credibility –

---

[49]    Exhibit J.
[50]    Exhibit J.
[51]    *Id.* at 688, 694.
[52]    *Id.* at 693.
[53]    *Id.* at 788.
[54]    La. R.S. 14:18(6)

13

was thus extremely important to the State's case.

If the jury had been aware of Aswell's mental health issues, its perception of Aswell's character and credibility likely would have been significantly diminished. Indeed, evidence that the person Mills claimed coerced him into committing the robbery was also under the influence of psychotropic medication would have been extremely relevant. A reasonably effective attorney would have immediately seen the impeachment value of such evidence, particularly in light of Mills' theory of defense.

In *Strickland,* the Court specifically addressed so-called "failure to investigate" claims, explaining that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[55] The Court further explained, however, that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation."[56] In short, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[57]

Trial counsel's reason for not investigating Aswell's mental health issues – he "didn't have time – was not reasonable. "Reasonably effective" assistance of counsel means that "the lawyer not only possesses adequate skills and knowledge, but also that he has the time and resources to apply his skill and knowledge to the task of defending each of his individual clients."[58]

Moreover, it cannot be said that Mills was not prejudiced by counsel's failure to investigate this significant impeachment evidence.

The trial was essentially a swearing match between Mills and Aswell. If the jury believed Mills was the victim of the threat-by-deadly-force coercion of Aswell, Mills was not guilty. If the jury believed Aswell, Mills was guilty of the crimes charged. Further, Aswell and Mills both testified that they were the driver of the getaway vehicle. In light of the fact that the passenger of the getaway vehicle was shooting at the police during the chase, Mills' coercion defense was only possible if he was the driver.

---

[55] *Strickland,* 466 U.S. at 690.
[56] *Id.* at 691.
[57] *Id.*
[58] *Peart,* 621 So.2d at 788.

14

Perhaps most important of all, Aswell was the only witness who materially contradicted Mills that was not substantially impeached. For example, although Diana Thomas' testimony places Mills in the passenger seat, her testimony was contradicted by both Kermit Martin and Gereldine Ledet, whose testimonies place Mills in the driver's seat.[59] Likewise, the three Bogalusa police officers who identified Mills as the passenger were completely and thoroughly impeached, as will be detailed in Claim No. 4 of the instant Memorandum.

Aswell was thus an absolutely critical witness for the State, both for supporting its case-in-chief <u>and</u> for directly attacking the heart of the defense. The jury was entitled to know that Aswell had serious mental health issues and was under the influence of psychotropic medication before and during the offense. Only with the benefit of that information could the jury properly evaluate Aswell's credibility – and capabilities.

Even without this evidence, it is apparent that the jury grappled with its decision, deliberating for over three hours. Considering the undeniable importance of Aswell's testimony to the State's case, there is a reasonable probability that, had counsel presented this significant impeachment evidence, the outcome of the proceedings would have been different.

## CLAIM NO. 3

**Mills was denied his right to a fair trial and right of confrontation when the trial court allowed the State to impeach Mills with a federal complaint that was prepared and filed by a California attorney that Mills did not know and had never communicated with.**

It must be noted at the outset that this claim was previously litigated on appeal. Because of this error's acute distortion of the fact-finding process at Mills' trial, the interest of justice requires this claim to be re-evaluated in the instant post-conviction proceeding.

As was made clear at trial, Mills suffered serious injuries as a result of excessive force. Accordingly, Philip Kaplan, a California attorney, filed a 42 U.S.C § 1983 complaint in the Eastern District of Louisiana.[60] In the unverified complaint, attorney Kaplan wrote, *inter alia*, that Mills "was involved with an armed robbery."[61] In paragraph five, attorney Kaplan wrote: "After the above-alleged acts, the above defendants [Lyons, Seal and Cassard]...were involved in the

---

[59]   R. pp. 1357, 1364, 1392.
[60]   *Logan N. Mills v. City of Bogalusa, et al,* 12-CV-00991.
[61]   Exhibit A, p. 4.

15

pursuit of a vehicle, in which Plaintiff was a passenger."[62]

Mindful of the "passenger" language contained in the complaint, and aware of the State's desire to interrogate Mills as to the contents of the pleading so as to impeach the defense theory, trial counsel made a motion in limine prior to Mills testify, addressed in pertinent part as follows:

DEFENSE:   It is the defense's contention that complaint is unverified and that those statements are hearsay and inadmissible. They're not under the case law cited in my motion in limine, a judicial admission of any kind, and thus, not proper fodder for cross-examination with regard to the statements contained therein.

Additionally, Judge, those are the statements of [Mills'] civil lawyer, who hasn't been called to testify…The fact that you filed suit and are seeking damages against these officers, that's certainly grounds and proper grounds for cross-examination. But I think the statements contained within the petition are the hearsay statements of his civil counsel, who is not here to testify and is not here to testify about the basis for those statements.[63]

The trial court denied the motion in limine and cited the following reasons:

COURT:   Relative to this motion in limine, the Court is going to deny the motion in limine. Although it's not a judicial confession, it is still a statement against interest that it's in a legal proceeding. And if he takes the stand, he opens the door to be cross-examined based upon those pleadings, and he can explain the purpose of those representations if he wants to take the position that he was the driver.

It's not a judicial confession that somehow precludes him from raising other legal findings. But in filing it, he has opened the door, if he takes the stand, to being examined on what is stated in there. If he wants to say well, I told my lawyer something differently, that's up to him when he gets on the stand, but it's fair game.[64]

Thus, with the sanction of the trial court, the State was unleashed to question Mills about a document not of his making. On cross, the State did indeed question Mills at length about the "passenger" language contained within the federal complaint, reading the pertinent passage to the jury aloud, and even questioning Mills concerning conversations he had engaged in with his trial counsel regarding his case.[65]

Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.[66] Hearsay evidence

---

[62]   *Id.* at p. 5.
[63]   R. p. 1972.
[64]   R. p. 1978-79.
[65]   R. pp. 2048-49.
[66]   La. C.E. art. 801(C).

16

is not admissible except as otherwise provided by the Code of Evidence or other legislation.[67]

Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court

asserter, who is not subject to cross-examination and other safeguards of reliability.[68]

Although the trial court admitted the petition as a statement against interest, the Court of

Appeal held that the petition was not hearsay because "[t]he allegations in the civil petition were

made by the attorney hired by the defendant to file the suit on his behalf."[69] The court further

noted that, pursuant to Louisiana Code of Evidence Article 801(D)(2)(c), "[a] statement is not

hearsay if it is offered against a party and is by a person authorized by him to make a statement

concerning the subject."[70]

However, attorney Kaplan was *not* authorized to make any such statement, and has since

executed a declaration attesting to the fact that he "did not meet or confer with Mr. Mills" before

filing the complaint at issue.[71] Attorney Kaplan further attested that, "[b]y use of the word

'passenger,' I was using it to mean an 'occupant.'"[72] Yet the State was allowed to impeach Mills

and create the distinct false impression that Mills told his trial counsel that he was the passenger,

who then relayed this information to attorney Kaplan.[73]

Because Mills did not authorize attorney Kaplan to make any statements, the complaint

and the statements contained within it were inadmissible hearsay, the admission of which violated

Mills' substantial rights. Critically, the complaint was used for the substantive purpose of proving

the truth of the matter asserted by its out-of-court author – namely, that Mills was the passenger

in the getaway vehicle. This was the central fact in question at Mills' trial, and it was dispositive

of his guilt. The jury being actively misled on this dispositive issue is an error so serious it

infringes upon Mills' constitutional right to a fair trial guaranteed by the Fourteenth Amendment

to the United States Constitution.[74] As the Supreme Court noted in *Chambers v. Mississippi*, 410

---

[67]   La. C.E. art. 802.
[68]   *State v. Martin*, 458 So.2d 454, 460 (La. 1984).
[69]   *State v. Mills*, 153 So.3d at 495 (FN8).
[70]   *Id.*
[71]   Exhibit I.
[72]   Exhibit I.
[73]   R. p. 2049, lns. 14-16.
[74]   *See Fitzgerald v. Estelle*, 505 F.2d 1334, 1336 (5th Cir. 1974) ("The conviction of a defendant after a trial
       that is fundamentally unfair, whatever the cause of such unfairness, violates Fourteenth Amendment
       due process.") *See also Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010) ("Regardless of how a state court
       applies state evidence rules, a federal habeas court has an independent duty to determine whether that
       application violates the Constitution.") (citing *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.
       2d 385(1991)).

U.S. 284, 93 S.Ct. 1038, 35 L.Ed. 2d 297 (1973), "the hearsay rule may not be applied mechanistically to defeat the ends of justice."[75]

Additionally, Mills was denied his constitutional right to confront the complaint's out-of-court author, Philip Kaplan. The Confrontation Clause of the Sixth Amendment prohibits the admission of out-of-court statements that are testimonial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness.[76] In *Crawford v. Washington,* 541 U.S. 36, 53-4, 124 S.Ct. 1354 (2004), the Supreme Court defined "testimony" as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact."[77] The Court explained that "testimonial" statements include, among other things, "statements that declarants would reasonably expect to be used prosecutorially," as well as "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[78] Kaplan's complaint falls squarely within this "core class" of testimonial statements – indeed, the complaint itself was the initiation of a prosecution. Moreover, the complaint did "precisely what a witness does on cross examination:"[79] it "bore witness" against Mills by appearing to directly contradict him on the most contested issue throughout the trial.

In *State v. Gibson,* 391 So.2d 421 (La. 1980), the Louisiana Supreme Court "adopted the federal test for harmless error announced in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), as a practical guide for determining whether the substantial rights of the accused have been violated."[80] Under *Chapman,* the State must demonstrate "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."[81] In *Yates v. Evatt,* 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), the Supreme Court explained that an "error [does] not contribute to the verdict" when it is "unimportant in relation to everything else the jury considered on the issue."[82]

The issue of who drove the getaway vehicle was sharply contested throughout the trial,

---

[75]   410 U.S. at 302.
[76]   *Crawford v. Washington,* 541 U.S. 36, 53-4, 124 S.Ct. 1354 (2004).
[77]   541 U.S. at 51.
[78]   *Id.* at 51-52.
[79]   *Davis v. Washington,* 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).
[80]   *State v. Johnson,* 94-1379 (La. 11/27/95), 664 So.2d 94, 100.
[81]   386 U.S. at 24. *See also State v. Lewis,* 12-1021 (La. 3/19/13), 112 So.3d 796, 805 (noting that the State bears the burden of proving that an error was harmless).
[82]   *Id.* at 403.

18

and Mills' credibility was at the heart of his defense. If the jury believed Mills was the victim of Aswell's armed coercion, Mills was not guilty. If the jury believed Aswell, then Mills was guilty of the crimes charged. The respective roles of Mills and Aswell in the getaway vehicle was of particular importance in assigning blame and proving the defense. If Mills was the driver of the getaway car, then his claim that he drove away at gunpoint while the armed passenger Aswell fired at the pursuing police made sense. If Mills was the passenger, however, his coercion defense was impossible to believe. Thus, the hearsay served to impeach Mills on the most critical point of defense. That impeachment, coming under the auspices of a legal pleading prepared by an attorney purportedly working in Mills' interest, was no doubt cloaked in unusual significance in the eyes of the laymen on the jury. The jury could have easily believed this federal complaint to reflect the "truth" as told by Mills to his trial counsel, who then relayed the information to attorney Kaplan. This is especially likely, given the conclusion of the State's cross-examination of Mills on this issue.

Several factors require this claim to be relitigated in the instant application for post-conviction relief. Namely, the State's argument as to this claim on direct appeal went virtually unchallenged, as will be discussed in greater detail in Claim No. 4.

Much more significant, it is now beyond dispute that the admission of the complaint corrupted the "paramount judicial goal of truth seeking."[83] Attorney Kaplan's declaration affirmatively establishes that Mills did *not* authorize Kaplan to make any statements, and further, that the extremely prejudicial inference the State drew from Kaplan's statement was flatly incorrect. It is indisputable that this is "the sort of error that compromises the fairness, integrity, and truth-seeking functions of a jury trial."[84] This evidence, coupled with the other issues raised herein, demonstrates that Mills' jury was actively mislead on the most contested issue in his trial.

---

[83]    *Swindler v. Berlin,* 524 U.S. 399, 410, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998).

[84]    *Etherton v. Rivard,* 800 F.3d 737, 754 (6th Cir. 2015). *See also, Morse v. Fusto,* 804 F.3d 538, 548 (2nd Cir. 2015) ("As we have observed, 'false information likely to influence a jury's decision…violates the accused's constitutional right to a fair trial.'") (quoting *Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 130 (2nd Cir. 1998)); *Maxwell v. Roe,* 628 F.3d 486, 507 (9th Cir. 2010) ("[T]o permit a conviction based on uncorrected false material evidence to stand is a violation of a defendant's due process rights under the Fourteenth Amendment."); *Killian v. Poole,* 282 F.3d 1204, 1209 (9th Cir. 2002) ("A conviction based in part on false evidence, even false evidence presented in good faith, hardly comports with fundamental fairness.") (quoting *United States v. Young,* 17 F.3d 1201, 1203-04 (9th Cir. 1994)).

## CLAIM NO. 4

**Mills was denied the effective assistance of counsel when his appellate counsel failed to adequately brief the issues raised on appeal and failed to adequately respond to the State's Original Brief.**

In his Original Brief on appeal, Mills' appellate counsel argued that Mills' right of confrontation was violated when the trial court refused to allow Mills to cross-examine his codefendant, Walter Aswell, regarding the substantial leverage the State had upon him.[85]

The Court of Appeal conceded that "the trial court's ruling infringed on the defendant's right of constitutional confrontation by denying him the right to fully cross-examine Aswell."[86] Nevertheless, the court held the error harmless, citing the testimony of Scott Seals, Chad Cassard, and Patrick Lyons, the three Bogalusa police officers involved in the chase and arrest of Aswell and Mills. The court held that the "officers' testimony directly contradicted the defendant's testimony that he was the driver in the Jeep, that he did not fire at the officers, and that he did not struggle with the police."[87] The court further held that the "officers' testimony regarding the defendant's actions upon exiting the Jeep also contradicted the defendant's justification theory that he was acting under the compulsion of Aswell's threats."[88]

If Mills' appellate counsel had properly briefed this claim, and pointed out the substantial impeachment of the three Bogalusa police officers, the Court of Appeal would not have been able to so heavily rely upon the testimony of the officers to hold Mills' confrontation violation harmless.

For instance, Officer Seals, Officer Cassard, and Officer Lyons all denied striking Walter Aswell.[89] It is undisputed that Aswell was severely beaten after he was apprehended.[90] In fact, Aswell was beaten so severely that he suffered a fractured skull that warranted the insertion of a metal place in his head and now he has a scar that runs from ear to ear.[91]

Neither Lyons nor Seals had any explanation as to how Aswell's severe injuries could have occurred.[92] When Cassard was asked how Aswell could have sustained such significant

---

[85]    Exhibit C, pp. 26-36.
[86]    *Mills*, 153 So 3d at 491.
[87]    *Id.* at 493.
[88]    *Id.*
[89]    R. pp. 1890, 453, 531.
[90]    R. p. 349.
[91]    R. pp. 365-66.
[92]    R. pp. 1891, 531.

20

injuries, Cassard responded, "He fell face first. I don't know."[93] When asked how someone could sustain a skull fracture from falling face first, Cassard responded, "I don't know."[94] Cassard's statement that Aswell fell and injured himself are even more suspect considering that the police apprehended Walter Aswell in a grassy field.[95]

Considering that these three officers were the first on the scene, and the only ones with a motive to savagely beat Aswell, it is doubtful whether a reasonable jury could have believed their self-serving denials of committing a criminal assault upon Aswell.

Then there was the issue of Officer Cassard changing his story to fit Lyons and Seals' account of where the shooting started. Officer Cassard testified on direct that he first heard shots fired somewhere between Carroll's Wrecker Service and the bridge.[96] Cassard noted that Carroll's Wrecker Service is "about like half a mile to three-quarters of a mile" from the bridge.[97] On cross, Cassard acknowledged that he gave a statement to the Mississippi Bureau of Investigations the day after the incident, stating, "When I caught up to them, I was the fifth car in line, and as we were topping the bridge, and I could see Officer Seals trying to get around them, and as he got around them, within seconds he advised all of us that shots were fired."[98]

When asked about this discrepancy as to where the shooting started, Cassard explained, "Well, at the time I was giving the statement, it was only one day after the accident, and everything seemed kinda jumbled together, and as time has went on my memory has gotten a lot better."[99] Time did not seem to improve Cassard's memory when he authored his written report, two weeks after the incident, as this report also states the first shots were fired as Cassard topped the bridge.[100] When questioned about the difference in his direct testimony and his own written report, Cassard stated, "I'm not doubting that my report may be different than what I say right now."[101] Cassard finally threw his hands in the air and admitted he "was on top of the bridge" when the shooting started.[102]

Cassard also changed his story regarding whether the passenger was firing once he got out

---

[93]   R. p. 464.
[94]   R. p. 464.
[95]   *See* Defense Ex. 24; R. p. 452.
[96]   R. p. 405. This bridge crosses the Mississippi state line. R. p. 443.
[97]   R. p. 426.
[98]   R. p. 432.
[99]   R. p. 432.
[100]  R. p. 438.
[101]  R. p. 441.
[102]  R. p. 443, ln. 17. *See also* R. p. 444, lns. 8-22; R. p. 218, lns. 26-27.

21

of the Jeep. On direct, Cassard stated that he was "unsure" if the passenger was still firing.[103] On

cross, Cassard acknowledged that he told the Mississippi Bureau of Investigations that "when the

passenger came out of the vehicle, he come out of the vehicle pistol in hand shooting."[104] Cassard

then told defense counsel he was "quite sure" the passenger was still shooting when he got out of

the vehicle.[105]

Lt. Patrick Lyons testified he told Chief Culpepper that the suspects continued shooting

as they ran into the field.[106] Of course, no 9mm shell casings were found outside the getaway

vehicle, notwithstanding Anna Savrock's testimony that the Mississippi Bureau of Investigations

went over the scene quite thoroughly with metal detectors.[107]

Then there was Seals' factually impossible account of shooting Mills. Seals testified that

he shot Mills as he was facing Seals.[108] This is physically impossible, because Mills was shot in

the back.[109]

Even though Mills had already been shot twice and had a collapsed lung, Seals claimed

he could not get Mills under control.[110] Even with Officer Cassard's assistance, Seals alleged that

neither of them could get Mills handcuffed.[111] Cassard testified he is six feet two inches tall and

weighs approximately 200 pounds.[112] Cassard estimated Seals is about the same size.[113] Mills is

five foot, nine inches tall and weighs approximately 140 pounds.[114]

Then there was Lt. Lyons' fanciful account of Mills kickboxing with Seals and Cassard.

According to Lyons, when he came around the corner of the woodline, he saw Mills standing up,

engaged in a fist fight with Seals and Cassard.[115] Not only is Lyons' story incredibly unlikely in

light of the fact that Mills had already been shot with a .40 caliber in his ankle and back, and had

a collapsed lung, it was squarely refuted by both Seals and Cassard.[116]

Numerous other examples can be found throughout the record. The point is that Lyons,

---

[103] R. p. 411, ln. 28.
[104] R. p. 488.
[105] R. p. 487, ln. 29.
[106] R. p. 1900.
[107] R. pp. 1426, 1587, 1775.
[108] R. p. 532.
[109] R. p. 532.
[110] R. p. 514.
[111] R. p. 514.
[112] R. p. 461.
[113] R. p. 462.
[114] R. p. 237.
[115] R. pp. 1916-18.
[116] R. p. 533.

22

Cassard, and Seals were materially impeached—several times over. As the First Circuit noted in *State v. Petitto*, 12-1670 (La. App. 1 Cir. 4/26/13), 116 So.3d 761, "If the jury determines that a witness willfully or deliberately testified falsely to any material fact for the purpose of deceiving it, then the jury may conclude that the witness' testimony is unworthy of belief and disregard the entirety of the testimony as proving nothing."[117] Mills' jury received an identical instruction.[118] The officers' blatant lies about not beating Aswell, or having any knowledge as to how he sustained his injuries, alone would have justified the jury's rejection of the entirety of their testimony. Accordingly, the officers' testimony *could not* be relied upon to hold Mills' confrontation violation harmless "beyond a reasonable doubt."

A criminal defendant has a constitutional right to the effective assistance of counsel on direct appeal.[119] Counsel's performance on appeal is analyzed under the familiar two-part *Strickland* test.[120] This standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful."[121] To establish prejudice, a defendant "must show that with effective counsel, there was a reasonable probability that he would have won on appeal."[122]

It appears as if appellate counsel lacked sufficient time "to research relevant facts and law" when putting this claim together because, if he had, he would have seen the First Circuit's holding coming from a mile away. Harmless error jurisprudence clearly dictates that if a witness's testimony is merely cumulative, any potential confrontation violation will most assuredly be deemed harmless.[123] In fact, Mills expressed this very concern to appellate counsel in a letter, stating in pertinent part:

> I think it is important to show the substantial impeachment of the Bogalusa Police Officers for one reason: all three of them identify me as the passenger. Therefore, if the First Circuit gets far enough to conduct a harmless-error analysis, they are going to look at the rest of the evidence in the record—what supports/contradicts me being the passenger/driver.[124]

---

[117]   *Id.* at 770.
[118]   R. p. 270.
[119]   *Evitts v. Lucey*, 469 U.S. 387, 393-96, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).
[120]   *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (citing *Strickland v. Washington*, 466 U.S. at 687-91, 694).
[121]   *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 690-91).
[122]   *Moreno v. Dretke*, 450 F.3d 158, 168 (5th Cir. 2006) (citing *Smith v. Robbins*, 528 U.S. at 285).
[123]   *See State v. Wille*, 559 So.2d 1321, 1332 (La. 1990) (holding the erroneous admission of hearsay harmless because the hearsay testimony was "essentially cumulative" of other evidence adduced at trial); *State v. Broadway*, 96-2659 (La. 10/19/99), 753 So.2d 801, 818 (same).
[124]   Exhibit B.

23

Although Mills was a 23-year-old high school dropout with no legal training, he foresaw that the court would look to the officers' testimony that Mills was the passenger in efforts to declare any constitutional violations harmless error. When Mills attempted to alert and assist his appellate counsel in crafting an argument that would dispel the inevitable harmless error conclusion, Mills was ignored.

Moreover, the numerous inconsistencies in the officers' testimony were obvious on the record, and were the thrust of defense counsel's closing argument. Defense counsel told the jury that the State "wants you to ignore the terrible inconsistencies that were **born out and proven** through cross-examination."[125] Counsel told the jury that "what is undeniable, that which has been shown and **proven without a doubt**, is that they lack credibility, they lack credibility."[126] These strong accusations should have grabbed appellate counsel's attention; it is not often the defense is able to lodge these kinds of accusations against <u>police</u> witnesses.

Thus, appellate counsel was constitutionally ineffective for leaving such a gaping hole in his argument. By doing so, counsel effectively gave the First Circuit an open invitation to find Mills' confrontation violation harmless.

If appellate counsel had outlined the substantial impeachment of the three Bogalusa police officers, the First Circuit would have been forced to confront their numerous inconsistencies, and consequently, would not have been able to rely on their testimony to hold Mills' confrontation violation harmless. Therefore, there is a reasonable probability that, but for appellate counsel's deficient performance, Mills would have obtained relief on direct appeal.

Appellate counsel was also ineffective in failing to competently respond to the State's Original Brief.

In his Original Brief, appellate counsel argued that the trial court erred in allowing the State to impeach Mills with a civil petition that was prepared and filed by California attorney Philip Kaplan.[127] Appellate counsel persuasively demonstrated the trial court's error in admitting the petition as a "statement against interest."

When the State filed its Original Brief, however, it did not defend the trial court's rationale for admitting the petition. Instead, the State argued that, pursuant to La. C.E. art. 801(D)(2)(c),

---

[125]     R. pp. 216-17.
[126]     R. p. 217.
[127]     Exhibit C, pp. 36-43.

the petition was not hearsay because it was a statement "made by a person authorized by [Mills] to make a statement concerning the subject."[128] Appellate counsel failed to grasp the State's argument, and continued to argue in his Reply Brief that the petition was not a statement against interest—a position not even advanced by the State.[129] Unsurprisingly, the First Circuit adopted the State's unchallenged argument.[130]

If appellate counsel had been playing close enough attention to actually respond to the State's argument, he could have formulated a solid, meritorious argument that the State's position was fatally flawed.

La. C.E. art. 801(D)(2)(c) provides that "[a] statement is not hearsay if it is offered against a party and is by a person authorized by him to make a statement concerning the subject." As the clear language of the article suggests, this subsection applies only to statements that have been "specifically authorized" by the principal.[131] Article 801(D)(2)(c) is in accord with the pre-codal law on vicarious admissions.[132] In *Thomas v. RPM Corp.*, 449 So.2d 18 (La. App. 1 Cir. 1984), the First Circuit noted that, "[a] material statement made by an agent for a principal is admissible at trial when offered by a party opponent, but the agent's authority to make such a statement must be established."[133]

The only evidence in the appellate record concerning attorney Kaplan's possible "authorization" to make the statement at issue comes from Mills' testimony. Mills testified that he was aware a lawsuit had been filed on his behalf, but that he had not read it.[134] Mills further testified that he had never spoken with Kaplan.[135] In response to the State's question, Mills testified that he told his trial counsel he was the driver, and that he never told his trial counsel he was the passenger.[136]

Considering that Mills never talked to attorney Kaplan, and never told defense counsel he

---

[128]   Exhibit D, p. 7.
[129]   Exhibit E, p. 12.
[130]   *Mills*, 153 So.3d at 495 (FN8).
[131]   *See Turner v. Ostrowe*, 01-1935 (La. App. 1 Cir. 9/27/02), 828 So.2d 1212, 1221 ("official comment (d) to Article 801(D)(2)(c) indicates that this subsection is based on traditional agency principles and covers statements that are specifically 'authorized' by the principal and thus are classified as 'representative' or 'vicarious' admissions"). *See also State v. Schexnayder*, 96-98 (11/26/96), 685 So.2d 357, 366 (statement that was not specifically authorized was not admissible).
[132]   *See* Official Comment to Article 801(D)(2)(c) (noting that this subsection is "intended to clarify but not change prior Louisiana law substantially").
[133]   *Id.* at 22 (internal citations omitted) (citing *Pacholik v. Gray*, 187 So.2d 480 (La. App. 3 Cir. 1966)).
[134]   R. p. 2023, Ln. 24; R. p. 2048, lns. 11, 15-16.
[135]   R. pp. 2046-49.
[136]   R. p. 2049, lns. 10-11.

was the passenger, then, quite obviously, Mills did not authorize attorney Kaplan to make such a statement. Thus, the only evidence in the record on the issue of "authorization" destroys the State's argument, which was essentially that the statement fell within the ambit of La. C.E. art. 801(D)(2)(c) simply because attorney Kaplan filed the civil suit on Mills' behalf.[137] The State's conclusory argument blatantly ignored the portions of Mills' testimony that affirmatively refute the authorization required for La. C.E. art. 801(D)(2)(c) to apply. If Mills never talked to Kaplan, **and maintained he was the driver to his trial counsel**, then Mills *could not* have authorized Kaplan to make a statement labeling him a passenger.

Besides the fact that Mills' testimony cripples the State's feeble argument on the issue of authorization, the State did not even establish that the inference it twisted from the complaint was a fair one.

In *United States v. McKeon*, 738 F.2d 26 (2nd Cir. 1984), the Second Circuit discussed the various practical and constitutional concerns implicated by the use of attorney statements against a client accused of a crime. Although the issue in *McKeon* was the evidentiary use of a prior jury argument, the *McKeon* court's analysis proves instructive on the court's error in Mills' case. The Second Circuit held that, before admitting an alleged inconsistent statement by counsel, the district court should "determine by a preponderance of the evidence that the inference the prosecution seeks to draw from the inconsistency is a fair one and that no innocent explanation for the inconsistency exists."[138]

During trial counsel's argument on the motion in limine, counsel told the court that, "legally, anybody in the car, regardless of position, is a passenger in that vehicle."[139] What should have been glaring to appellate counsel is the fact that neither the State nor the trial court disputed counsel's assertion. Not that trial counsel's position *could* have been disputed; Merriam Webster's Collegiate Dictionary defines "passenger" as "a traveler in a public or private conveyance."[140]

---

[137]   Exhibit D, p. 7.
[138]   *Id.* at 33. *See also, United States v. Jung*, 473 F.3d 837, 841 (7th Cir. 2007) (noting that the "unique nature" of the attorney-client relationship "'demands that a trial court exercise caution in admitting statements that are the product of this relationship.'" (quoting *United States v. Harris*, 914 F.2d 927, 931 (7th Cir. 1990)). The court further noted that it has "'caution[ed] the government that it should only offer this sort of evidence in rare cases and when absolutely necessary.'" (quoting *United States v. Sanders*, 979 F.2d 87, 92 (7th Cir. 1992))).
[139]   R. pp. 1975-76.
[140]   MERRIAM WEBSTER'S COLLEGIATE DICTIONARY, 11th Ed., p. 905.

26

Moreover, attorney Kaplan's complaint refers to Mills as "a passenger," not "the" passenger. "A" is an indefinite article. Indefinite articles "refer to *any* one of a general group."[141] "The" on the other hand, is a definite article. Definite articles specify "a particular person, place, thing, or idea."[142] In light of the fact that there were only two occupants in the getaway vehicle, attorney Kaplan's use of the indefinite article "a" signals a clear intention to avoid specificity. After all, a formal pleading prepared by an attorney is "likely to be worded with precision."[143]

Thus, appellate counsel was constitutionally ineffective in failing to expose the significant flaws in the State's argument. If appellate counsel had responded to the State's Brief in a competent manner, the First Circuit would have been forced to confront the portions of Mills' testimony that clearly refute any speculation that he authorized Mr. Kaplan to make the statement at issue. The First Circuit would also have been forced to confront the State's total failure to establish that the prejudicial inference it wrenched from the statement had any basis in fact.

Accordingly, there is a reasonable probability that, but for counsel's deficient performance, Mills would have obtained relief on direct appeal.[144]

## CLAIM NO. 5

**Mills was denied a fair and impartial direct appeal when the First Circuit Court of Appeal repeatedly ignored the strongest points of Mills' arguments, and consistently misapplied clear and determined law.**

To put this claim in the proper perspective from the outset, it must be noted that the First Circuit's opinion finding no reversible error in Mills' trial was authored by a colleague of Mills' trial judge.

At the time of Mills' arrest and trial, William J. Crain was a district judge in Washington Parish. In fact, Crain was one of only two judges being assigned felony cases during this time period. The other judge, of course, was Mills' trial judge, August J. Hand. Shortly after Mills' trial concluded, Crain became a First Circuit judge. When the case reached the First Circuit Court of Appeal. Judge Crain was on Mills' three-judge panel. Judge Crain also wrote the opinion for the court finding no reversible error in Mills' trial.

---

[141] James L. Kinney & John E. Warringer, ELEMENTS OF WRITING, p. 607 (1993).
[142] *Id.*
[143] *United States v. Valencia*, 826 F.2d 169, 173 (2nd Cir. 1987).
[144] For the reasons previously assigned n Claim No.3 of the instant Memorandum, the First Circuit would not have been able to declare the error harmless beyond a reasonable doubt. *See* pp. 14-18.

27

To be sure, this would not normally be grounds for recusal. It is nonetheless troubling when one considers how the First Circuit ignored relevant facts and law when "adjudicating" Mills' appeal. The court's opinion, when taken as a whole, evinces a distinct partiality in favor of the prosecution. Indeed, when one compares the points raised n Mills' appellate briefs to the court's actual written opinion, it becomes clear the court ignored those points it could not acknowledge without being compelled to reverse Mills' convictions and sentences.

Mills' direct appeal was not "meaningful" in any sense of the word.

## A.   Cause challenges for prospective jurors Mary Gunnell and Kelly Crain

The First Circuit held that the denial of the cause challenges for these prospective jurors were not preserved for review because, according to the court, Mills did not object to the trial court's ruling on these challenges.[145]

In so holding, the First Circuit relied upon "the clear language of Article 800 and the procedure recited in *State v. Cousan*, 94-2503 (La. 11/25/96), 684 So.2d 382, 288-89, both of which require that a defendant lodge a contemporaneous objection to the trial court's ruling in order to assign as error the trial court's refusal to sustain his challenge for cause."[146]

What makes this holding objectively unreasonable is the fact that the Louisiana Supreme Court has reversed/corrected the First Circuit *twice* on this very issue.

In *State v. Vanderpool*, 476 So.2d 546 (La. App. 1 Cir. 1986), the defendant failed to object to the trial court's refusal to sustain his challenge for cause. The First Circuit held that, "[b]ecause defendant neither objected to the trial court's ruling denying his challenge of Wilson Pitre for cause nor stated the nature of the objection and grounds therefor, he is thereby *prohibited* from assigning the ruling as error, by the express terms of La. C.Cr.P. art. 800A."[147]

The Louisiana Supreme Court reversed on this point, holding that the challenge for cause *was* preserved for appeal.[148] The Supreme Court noted that, "Our law is settled that an objection need not be raised by incantation" and that "the requirement that objection be raised contemporaneously is not meant to be inflexible, but is designed 'to promote judicial efficiency and to ensure fair play.'" Specifically, the Court noted that, "Article 800 **should not be read to**

---

[145]   *Mills*, 153 So.3d at 486 (FN2).
[146]   *Id.*
[147]   *Id.* at 547.
[148]   *State v. Vanderpool*, 493 So.2d 574 (La. 1986).

28

**differ in this respect** from Article 841."[149] The Court further held that the defendant "made it known he wanted the deputy sheriff excused and voiced the reasons why," and that "this is sufficient to preserve the issue for appeal."[150]

Mills' case is in fact much stronger than *Vanderpool* itself. In *Vanderpool*, trial counsel spent <u>one</u> sentence arguing why the prospective juror was unfit to serve.[151]

Mills' counsel, on the other hand, argued extensively why Ms. Gunnell and Ms. Crain should be excused for cause.[152] When the trial court declined to sustain these challenges, Mills' counsel peremptorily struck both of these prospective jurors.[153] As *Vanderpool* makes clear, this satisfies Louisiana's contemporaneous objection requirements and was sufficient to preserve Mills' cause challenges for appeal.

It cannot be said the First Circuit may have simply forgotten *Vanderpool*; Mills' appellate counsel cited *Vanderpool* in his Reply brief.[154] Yet the First Circuit chose to ignore appellate counsel's response on this issue.

In *State v. Pinion*, 06-2346 (La. 10/26/07), 968 So.2d 131 (*rev. on other grounds*), the Supreme Court reiterated that "[i]n jury selection, counsel satisfies the requirements of Louisiana's contemporaneous objection rule by stating his grounds for a cause challenge and then by removing the juror with one of his remaining peremptory challenges when the court declines to excuse the juror for cause. La. C.Cr.P. art. 841."[155]

Mills cited *Pinion* in his *pro se* Reply Brief, but the First Circuit held that Mills' "reliance' upon *Pinion* is "misplaced" because "*Pinion* involved the requirement of accepting an obnoxious

---

[149]  *Id.*

[150]  *Id.*

[151]  Vanderpool's trial counsel merely stated: "Your Honor, I would like to re-urge our challenge for cause on Mr. Pitre. I think due to his substantial involvement in law enforcement." 493 So.2d at 547.

[152]  "I would move to strike Kelly Cain. She or more less [sic] is suffering from PTSD. She appeared emotional when she described her victimization in the bank robbery. *** She said she's still suffering on a day to day basis and that she's fearful when her husband goes away to work because when he works nights every third day then it causes her issues and she has to stay up and wait for him to come home. This if the kind of thing that, it's going to influence her decision." *** "I was going to make my cause challenge for Ms. Gunnell on the same basis. Judge, this is a woman that offered that she was a victim of three bank robberies. She became visibly upset and emotional when describing that victimization. *** She couldn't even tell Your Honor that without becoming emotional and I questioned her about it. She started to tear up. I think it's the character of nature [sic] that's going to cause her to be biased." (R. pp. 1238-41).

[153]  R. pp. 1246-47.

[154]  Exhibit E, p. 4 (The State asserted on appeal that Mills' challenges for Ms. Gunnell and Ms. Crain were not preserved for review because he did not "lodge an objection." The only authority the State cited in support of this assertion was La. C.Cr.P. art. 800—which, as *Vanderpool* made clear, is satisfied when a defendant challenges a prospective juror for cause, "voice[s] the reasons why," and removes the juror with one of his remaining peremptory strikes).

[155]  *Id.* at 136.

juror to prove prejudice on appeal and made no mention of Louisiana Code of Criminal Procedure article 800."[156] The problem with this assertion is the Louisiana Supreme Court's decision in *State v. Ross*, 623 So.2d 643 (La. 1993), wherein the Supreme Court reversed the First Circuit for holding that a defendant must show he was forced to accept an obnoxious juror in order to prove prejudice on appeal—the very same misinterpretation the First Circuit claims it made (again) in *Pinion*.

Regardless of what *Pinion* actually dealt with, the Court reaffirmed the 30-year-old rule that, "In jury selection, counsel satisfies the requirements of Louisiana's contemporaneous objection rule by stating his grounds for a cause challenge and then by removing the juror with one of his remaining peremptory challenges when the court declines to excuse the juror for cause. La. C.Cr.P. art. 841."[157]

In holding that Mills' challenges for cause were not preserved for review, the First Circuit also relied on "the procedure recited in *State v. Cousan*, 94-2503 (La. 11/25/96), 684 So.2d 382, 388-89."[158] But the First Circuit's reliance upon *Cousan*, is just as unreasonable as its "misinterpretation of La. C.Cr.P. art. 800 (for the third time).

The "procedure" the First Circuit is referring to comes from the following statement made by the *Cousan* Court: "In response to the trial court's denial of the cause challenges, defendant objected, thereby preserving the issue for appeal, and exercised peremptory challenges to exclude Jurek and Johnson from the jury."[159]

Apparently, the First Circuit is suggesting that the *Cousan* Court, in an incredibly implicit manner, added a formal incantation requirement ("note my objection") to La. C.Cr.P. art. 800—the same formal incantation requirement the *Vanderpool* Court explicitly held was <u>not</u> required to preserve a challenge for cause for appellate review. *Cousan* itself belies any such interpretation. Just one paragraph later, the *Cousan* Court states: "To preserve the issue for appeal, the defendant must also lodge a contemporaneous objection to the trial court's ruling."[160] As *Vanderpool* made clear, what constitutes a contemporaneous objection is defined by La. C.Cr.P. art. 841, not La.

---

[156] *Mills*, 153 So.3d at 486 (FN2).
[157] 968 So.2d at 136.
[158] *Mills*, 153 So.3d at 486 (FN2).
[159] *Id.* at 388.
[160] *Id.* at 389.

C.Cr.P. art. 800, and "Article 800 should not be read to differ in this respect from Article 841."[161]

Moreover, if the First Circuit really believed that *Cousan* overruled *Vanderpool*, then the First Circuit should have fulfilled its duty to "clarify the law."[162] Perhaps the court did not clarify the law because it knew that Louisiana law clearly refutes such a proposition, and to explicitly hold such would invite closer scrutiny to an objectively unreasonable holding.

But what really puts the First Circuit's "misinterpretation" of *Cousan* beyond any rational explanation is that same previously quoted statement by the *Pinion* Court the First Circuit chose to ignore:

> In jury selection, counsel satisfies the requirements of Louisiana's contemporaneous objection rule by stating his grounds for a cause challenge and then by removing the juror with one of his remaining peremptory challenges when the court declines to excuse the juror for cause. La. C.Cr.P. art. 841.[163]

It does not get any clearer than that. The First Circuit's holding that Mills' cause challenges were not preserved for review is utterly lacking in justification.

**B.   Trial court's improper restriction of Mills' cross-examination of Aswell**

In his Original Brief, Mills' appellate counsel argued that Mills was denied his constitutional right of confrontation when the trial court refused to allow Mills to impeach Aswell with the substantial leverage the State had upon him.

The First Circuit conceded that "the trial court's ruling infringed on the defendant's right of constitutional confrontation by denying him the right to fully cross-examine Aswell."[164] However, the First Circuit held the error harmless because, according to the court, "the entire weight of the testimony and physical evidence contradicted the defendant's testimony and established that the defendant was the passenger in the Jeep and was in possession of the Beretta that was fired multiple times at the pursuing police officers."[165]

As previously outlined in Claim No. 4, the three Bogalusa police officers who identified Mills as the passenger were severely impeached. Mills specifically pointed this out in his *pro se* supplemental brief, preceded by the following bold and numbered subheading:

---

[161]   *Vanderpool*, 493 So.2d at 575.
[162]   *See* Louisiana Court of Appeal Performance Standards, Performance Standards 1.2 ("Louisiana courts of a appeal should develop, clarify, and unify the law"), and 2.2 ("Louisiana court of appeal decisions should be clear and full opinions should address the dispositive issues, state the holding, and articulate the reasons for the decision in each case").
[163]   968 So.2d at 136.
[164]   153 So.3d at 491.
[165]   153 So.3d at 493.

31

**2.  Aswell's testimony was not merely cumulative because the witnesses who "corroborated" his version of events (namely, that he was the driver) were substantially impeached.**[166]

The First Circuit's opinion ignored Mills' argument on this point.

The First Circuit also ignored all of the evidence tending to suggest Mills was the driver of the getaway vehicle. First, two of the lay witnesses outside of the bank testified that the first person out of the bank got in the driver's seat, and that the person who picked up the stack of money on the sidewalk got in the passenger's seat.[167] It is undisputed that Mills was the first person out of the bank and that it was Aswell who bent down and picked up the stack of money. Second, a single stack of money was found between the passenger seat and door.[168] This circumstantial evidence suggests Aswell was the passenger, considering that it was Aswell who picked up a single stack of money outside the bank, and that all the rest of the money was found in the backpack.[169] Third, a magazine containing two 9mm bullets was found on Aswell's person.[170] This is significant because Aswell testified that all of the magazines were loaded up the night before the robbery.[171] This begs the question: if the magazines were loaded the night before the robbery, why would Aswell have a magazine with only two bullets remaining in his pocket? This circumstantial evidence strongly suggests that Aswell was the shooter, not Mills.

Not only did the First Circuit ignore all the facts in Mills' favor, the court consistently viewed all the facts and inferences it did consider in the light most favorable to the prosecution.

For example, the court stated that, "[t]he officers' testimony regarding the defendant's actions upon exiting the Jeep also contradicted the defendant's justification theory that he was acting under the compulsion of Aswell's threats."[172]

The officers' own testimony established that there was a barrage of gunfire directed at the Jeep, coming from two different locations. Mills testified that he ran because "bullets were flying" and he was afraid.[173] The fact that Mills ran **when he was being shot at** is not particularly strong evidence of a guilty conscience, and it is pure speculation for the First Circuit to assume the jury

---

[166]   Exhibit G, p. 14.
[167]   R. pp. 1357, 1392.
[168]   R. p. 378; State's Ex. 14-B.
[169]   R. p. 377.
[170]   R. p. 1714.
[171]   R. p. 327.
[172]   153 So.3d at 493.
[173]   The First Circuit even acknowledged in its Statement of Facts that Mills testified he ran from the Jeep "because the officers were shooting and he was afraid."

32

interpreted it as such. The inference the jury could have drawn from this could have easily gone either way, and it was not appropriate for the First Circuit to consider only the inference favorable to the State.[174]

The First Circuit also believed it significant that the 9mm Beretta pistol was found in the area where Mills was apprehended.[175] The court ignored the fact that the pistol was *admittedly* moved by the Bogalusa police officers.[176] Yet again, the First Circuit ignored all possible inferences that were not favorable to the State.

Prominent Louisiana attorney James E. Boren authored a Louisiana Law Review article that cogently details the institutional bias that permeates Louisiana appellate courts, and the courts' resulting inability (or refusal) to properly apply the harmless error analysis when assessing the prejudicial impact of constitutional errors that occurred during a criminal defendant's trial. Boren succinctly summarized the problem as follows: "Harmless error precipitates great disrespect for the appellate courts because the **cavalier and one-sided dismissal of facts**, the tortured analysis of what the defense really was, the inconsistency, the constant rule changes, and the **clear and present attitude to protect the conviction**, not the law or the process."[177]

Likewise, institutional bias is the only tenable explanation for the manner in which the First Circuit "applied" the harmless error analysis to Mills' confrontation violation. The First Circuit ignored all evidence in Mills' favor, all the evidence that impeached the State's theory, and viewed all the evidence and inferences which it did consider in the light most favorable to the prosecution. Harmless error jurisprudence requires a reviewing court to "conduct a thorough examination of the record" in order to determine whether an error was harmless.[178] It is axiomatic that a reviewing court cannot simply ignore evidence in the accused's favor when conducting its "thorough examination" of the record.

Moreover, harmless error jurisprudence clearly instructs a reviewing court to focus on the impact of the error, not the weight of the evidence notwithstanding the error.[179] In Mills' case,

---

[174]   *See Harris v. Thompson*, 698 F.3d 609, 630 (7th Cir. 2012) ("The appellate court minimized the significance of this exclusion by pointing to Diante's ambiguous 'admission' and **seizing on the most favorable interpretation to the prosecution. That is not how harmless error review works**, and it is not how our materiality analysis proceeds under the Compulsory Process Clause") (emphasis added).

[175]   153 So.3d at 493.

[176]   R. p. 516.

[177]   James E. Boren & Michael A. Fiser, *Fear of a Paper Tiger: Enforcing Louisiana's Procedural and Statutory Rules in the Wake of Harmless Error Analysis*, 64 La. L. Rev. 5, 10 (2003) (emphasis added).

[178]   *Neder v. United States*, 527 U.S. 1, 19, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

[179]   *See State v. Gibson*, 391 So.2d 421, 427 (La. 1980) ("The Chapman court pointed out that a state court may

however, the First Circuit focused *solely* on the remaining evidence, and refused to acknowledge the importance of Aswell's testimony to the State's case. Significantly, Aswell was the only witness who materially contradicted Mills that was not substantially impeached. In cases such as the instant one, where the witness in question, Aswell, "is critical to the prosecution's case," courts have recognized that the "right to cross-examination is particularly important."[180]

On a final note, it is necessary to draw attention to the First Circuit's effort to minimize the significance of Mills' confrontation violation by distorting the terms of Aswell's plea agreement. According to the First Circuit, "[t]he record establishes that Aswell agreed to testify and plead guilty in return for a twenty-five years sentence if he testified truthfully in accordance with his pretrial statement. Otherwise, he was to be sentenced to serve thirty years."[181]

The following pertinent portions of a sidebar conference unequivocally establishes that the First Circuit mischaracterized Aswell's plea agreement:

STATE:     It's twenty-five to thirty. That's what it is. I think the record reflects his testimony was to be consistent with the prerecorded pretrial statements **and if he deviated from that it would be invalid.**

DEFENSE:  I was here. I'm saying **if he doesn't testify in conformity with his written statement he's no longer bound.**

COURT:    You can question him in that manner, but that's not exactly what you were saying.[182]

          ***

DEFENSE:  It is my understanding that if he testifies in conformity with his pretrial statement, Your Honor was going to sentence him to between twenty-five and thirty years. **If he testifies contradictorily and differently than what he said, Your Honor is no longer bound by the agreement and can sentence him to ninety-nine years on three and up to fifty on each attempted murder.** That goes directly to the heart of the matter and goes to his credibility and shows he has considerably more exposure.

COURT:    **If he's in line.**

DEFENSE:  And if he lies, if he does not testify in conformity with the statement, it's more if he lies. **If it's not in conformity, Your Honor is not bound and can max him out.** That's what I'm trying to get at.

COURT:    If you want to go into that, but you can't talk about what the maximum

---

err by giving 'emphasis and perhaps overemphasis, upon the court's view of "overwhelming evidence."'" (quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967))); *Burbank v. Cain*, 535 F.3d 350, 358 (5th Cir. 2008) ("In analyzing a violation of the Confrontation Clause we look primarily at the specific testimony omitted, not the weight of the evidence notwithstanding the omitted testimony") (citing *United States v. Jimenez*, 464 F.3d 555, 559 (5th Cir. 2006). *See also State v. Bell*, 99-3278 (La. 12/8/00), 776 So.2d 418, 432.

[180]   *Jiminez* at 559.
[181]   153 So.3d at 490.
[182]   R. p. 354.

34

sentence is.[183]

\*\*\*

DEFENSE:    . . . . I understand the basis of her objection, but it goes directly to the heart of the motivation and reason for testifying and they have a potential ninety year sentence hanging over his head.

COURT:    I understand the line of questioning and **I think the approach was improper**.

DEFENSE:    Is it your appreciation if he does not testify in conformity with the statement you are not bound?

COURT:    **But that does not open it up to question on maximum sentence.** I may invite the question if you don't testify in conformity with the prior statements, **that opens up the potential for a much longer sentence without going into specifics.**[184]

\*\*\*

COURT:    That's inviting the jury to know what the potential exposure is for your client.

DEFENSE:    For him?

COURT:    **It's for both of them.**[185]

The record is clear: if Aswell did not testify in conformity with his pretrial statement, the trial court was not bound by the plea agreement. Although towards the conclusion of the sidebar conference the State ignored its initial concession and attempted to argue that Aswell's sentencing exposure was capped at thirty years, no matter what, both defense counsel's and the trial court's statements explicitly refute the State's assertion. Consistent with the First Circuit's demonstrated pattern of ignoring all evidence that favored Mills, the court chose to rely on belated assertions by the State that are clearly refuted by the record.

Although the United States Constitution does not require States to grant appeals as of right to criminal defendants, "if a State has created appellate courts as an 'integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution."[186]

---

[183]    R. p. 355.
[184]    R. pp. 356-57.
[185]    R. p. 357.
[186]    *Evitts v. Lucey*, 469 U.S. at 393 (quoting *Griffin v. Illinois*, 351 U.S. 12, 18. 76 S.Ct. 585, 100 L.Ed.2d 891 (1956)).

35

Appellate review that consistently ignores the most critical points of the arguments presented, consistently ignores all the facts in the appellant's favor, and consistently refuses to apply clearly established law does not meet this standard.

As the Louisiana Supreme Court has noted, "The role of the judiciary is to provide a forum for the resolution of disputes that is fair, just, impartial, and based on the law and evidence. Such a role cannot be realized if judges refuse to abide by the law."[187] The Court further noted that "[o]bedience to judicial decrees is critical to the proper functioning of our legal system," and "[w]hen a judge demonstrates a lack of respect for the rule of law . . . our entire system of justice is placed at risk."[188]

Mills direct appeal was *pro forma* only; the First Circuit Court of Appeal ignored relevant facts and law to affirm Mills' conviction. Moreover, the First Circuit consistently applied legal principles in a manner that is "contrary to clear and determined law about which there is no confusion or question as to its interpretation."[189]

Accordingly, Mills was denied his constitutional right to a fair and impartial direct appeal, in contravention of Article I, §§ 2, 3, 19, and 22 of the Louisiana Constitution and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

---

[187] *In re Hughes*, 03-3408 (La. 4/22/04), 874 So.2 746, 789-90.
[188] *Id.* at 790.
[189] *In re Fuselier*, 02-1661 (La. 1/28/03), 837 So.2d 1257, 1265 (quoting *In re Quirk*, 97-1143 (La. 12/12/97), 705 So.2d 172, 181).

36

## CONCLUSION

Mills has thoroughly demonstrated that his trial was fundamentally unfair and that his convictions are constitutionally infirm and must be set aside.

The officials charged with bringing Mills to justice were so corrupt and biased against him that they attempted to send an innocent man to prison for merely acting on Mills' behalf. There can be no question that this is the sort of fundamental error that infects the validity of the underlying judgment and the process by which it was obtained.

Respectfully submitted by:

**JANE HOGAN,** Bar Roll No. 35172
Hogan Attorneys
309 East Church Street
Hammond, Louisiana 70401
(985) 542-7730
(985) 542-7756 fax
jane@hoganandhogan.com

37

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of this pleading to be served by U.S. Mail as follows:

*Respondent*
Warren Montgomery
District Attorney
905 Pearl Street
Franklinton, LA  70438

*Petitioner*
Logan Nestor Mills
DOC #532042
Louisiana State Penitentiary
17544 Tunica Trace
Angola, LA 70712

Done on this the 30 day of September, 2016.

Jane Hogan

38