## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LOGAN MILLS,** | * | **CIVIL ACTION** |
| | * | **NO. 18-847** |
| **VERSUS** | * | |
| | * | **DIVISION "F"(2)** |
| **ROBERT TANNER, WARDEN** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## EXHIBIT C

## STATE COURT ORDER ON MILLS' APPLICATION FOR POST-CONVICTION RELIEF

| | |
|---|---|
| LOGAN NESTOR MILLS | NO. 11-CR5-113331 "B" |
| VERSUS | 22ND JUDICIAL DISTRICT COURT |
| | PARISH OF WASHINGTON |
| DARRYL VANNOY, WARDEN | STATE OF LOUISIANA |

FILED:_____            _____
                                           DEPUTY CLERK

## JUDGMENT ON POST-CONVICTION
## WITH INCORPORATED REASONS

On August 19, 2016, petitioner Logan Nestor Mills filed a counseled application for post-conviction relief. Although the uniform application raised five assignments of error, the fact section for each claim indicated that a memorandum of law would be filed subsequently. On September 30, 2016, a 37-page memorandum of law was filed. After considering the application and the applicable law, the Court finds the application may be dismissed upon the pleadings pursuant to La. C.Cr.P. art. 928.

The record shows Mills was convicted by a jury of armed robbery, armed robbery with a firearm, aggravated obstruction of a highway of commerce, and two counts of attempted first degree murder after a trial held on August 13-20, 2012. His sentence for the conviction for armed robbery was vacated after he was adjudicated a second-felony offender, and he was sentenced to seventy years at hard labor for that offense. He was sentenced to fifteen years at hard labor for the aggravated obstruction of a highway conviction and forty years at hard labor without benefit of parole, probation, or suspension of sentence for each conviction of attempted first degree murder, with those sentences running concurrent with the sentence for armed robbery. He was sentenced to five years at hard labor without benefit of parole, probation, or suspension of sentence for the armed robbery with a firearm conviction, with that enhancement sentence to be served consecutive to the sentence for armed robbery. His conviction, habitual offender adjudication and sentences were affirmed on appeal. *State v. Mills*, 2013-0573 (La. App. 1 Cir. 8/27/14); 153 So.3d 481. Writs were denied by the Louisiana Supreme Court. *State ex rel. Mills v. State*, 2014-2269 (La. 9/18/15); 178 So.3d 139.

On direct appeal, the First Circuit Court of Appeal summarized the facts of the case as follows:

> On April 20, 2011, the defendant and Walter Aswell entered the Capital One Bank on Columbia Street in Bogalusa, wearing masks and carrying guns. While

1

> Aswell stood guard at the back, the defendant held up his gun, told the tellers to keep their hands up, and demanded money. One of the tellers handed money to the defendant and triggered the silent alarm. The defendant and Aswell fled the bank in a black Jeep.
>
> A chase ensued involving units from the Bogalusa Police Department and the Washington Parish Sheriff's Office, with shots being fired from the Jeep at the pursuing units. The chase continued into Mississippi, with shots exchanged between the pursuing officers and the fleeing Jeep. The chase ended in Mississippi when the defendant and Aswell abandoned the Jeep and fled on foot in opposite directions. Both the defendant and Aswell were apprehended and taken into custody after being shot by police. Officers identified the defendant as the passenger in the Jeep who fired multiple shots at police.
>
> The defendant testified at trial that the bank robbery was Aswell's idea and that he unwillingly participated because Aswell threatened to shoot him if he did not. According to the defendant he was following Aswell's instructions when he walked into the bank, raised his gun, pointed it at the bank teller, and walked up to her. Aswell remained behind him holding a gun. The defendant took the money that the teller placed on the counter, put it in the front pouch of the hoodie he was wearing, then turned and walked out. The defendant claimed he was the driver of the Jeep in which he and Aswell fled and that Aswell was riding in the backseat, gripping a gun and instructing him not to stop the vehicle. As the police pursued them, Aswell moved into the front passenger seat and began shooting at the police. The defendant denied shooting at police officers or firing any weapons on the day of the robbery. He testified that he ran from the stalled Jeep because the officers were shooting and he was afraid. The defendant fell to the ground and was handcuffed after being shot in the ankle and back. He denied resisting arrest, claiming that the officers beat him after he was handcuffed, which caused serious injuries. Subsequently, the defendant filed suit against the officers in federal court.

*Mills*, 2013-0573, p. 2-3; 153 So.3d at 485-486.

In Mills' timely filed application seeking post-conviction relief, he raises the following five grounds:

(1) Felonious prosecutorial and judicial misconduct made it impossible for him to receive a fair trial;

(2) Mills was denied effective assistance of counsel when his attorney failed to investigate Mills' codefendant's mental health history and failed to present evidence that Mills' codefendant was taking psychotropic medication at the time of the crimes;

(3) Mills was denied his right to a fair trial and right of confrontation when the trial court allowed the state to impeach Mills with a federal complaint that was prepared and filed by a California attorney that Mills did not know and had never communicated with;

(4) Mills was denied the effective assistance of counsel when his appellate counsel failed to adequately brief the issues raised on appeal and failed to adequately respond to the state's original brief; and

2

(5) Mills was denied a fair and impartial direct appeal when the First Circuit Court of Appeal ignored the strongest parts of Mills' arguments, and consistently misapplied clear and established law.

*Prosecutorial and Judicial Misconduct*

In his first claim of error, Mills argues that all of the key officials involved in Mills' prosecution—both of the assistant district attorneys who conducted his trial, the trial judge's law clerk and members of the Bogalusa, Louisiana police force—were caught conspiring to bring false charges against Mills' uncle, Douglas Dendinger, for actions which occurred minutes after Mills' trial ended.

Mills provides a synopsis of the factual background of the incident at issue, as follows: a few minutes after Mills' jury returned with its verdict, all of the above-referenced persons exited the front of the courthouse. Mills' uncle, who was waiting outside on the courthouse steps, walked up to Bogalusa police officer Chad Cassard and handed him a summons for Mills' excessive force lawsuit filed in response to an alleged beating received by Mills during and after his arrest at the hands of members of the Bogalusa police force. Dendinger left and went home after having the summons thrown back in his face by another Bogalusa police officer, being surrounded by the prosecution team, and receiving curses from those present. Within 20 minutes, Dendinger was arrested by Washington Parish Sheriff's deputies with a warrant for his arrest on the charges of simple battery, obstruction of justice and intimidation of a witness. Mills claims these trumped-up charges were supported by false written statements made by the prosecution team and the others which stated that Dendinger assaulted Officer Cassard. The District Attorney's office accepted the charges and commenced prosecution against Dendinger. Ultimately, Dendinger's attorneys succeeded in having the District Attorney's office recuse itself. The case was referred to the Louisiana Attorney General's office and the charges were immediately dropped on the strength of two cell phone videos of the incident, recorded by Mills' aunt and brother, which contradicted the statements of the prosecution team, the officers and the judge's law clerk.

Counsel argues here that "[i]t strains credulity to believe Mills could have obtained a fair trial when the officials charged with bringing him to justice harbored such animosity and/or bias towards him that they were willing to send an innocent man to prison for merely acting on Mills'

3

behalf." Memorandum of Law, p. 12. Counsel asserts this is the type of fundamental flaw that undermines the structural integrity of the trial itself and is not amenable to harmless error review. Counsel claims Mills was deprived of his right to due process and a fair trial, and that his conviction and sentence should be vacated.

La. Const. art. 1, § 2 provides: "No person shall be deprived of life, liberty, or property, except by due process of law." Additionally, "[e]very person charged with a crime ... is entitled to a speedy, public and *impartial* trial ... ." La. Const. art. 1, § 16 (emphasis added). Although Mills asserts that the factual background he recites encompasses a claim for judicial misconduct, in addition to prosecutorial misconduct, the Court notes the petitioner does not point to any misconduct allegedly committed by the presiding judge or in connection with the jurors, who were the ultimate triers of fact. Consequently, the Court finds there is no factual basis for a claim of judicial misconduct.

Insofar as Mills claims there was prosecutorial misconduct present in his trial, the law states that the District Attorney has charge of every criminal prosecution by the state in his district. La. Const. 5, § 26; La. C.Cr.P. art. 61. The District Attorney determines whom, when, and how he shall prosecute. La. C.Cr.P. art. 61. "Nonetheless, it has long been the rule in Louisiana that the district attorney, as a quasi-judicial officer, must be fair and impartial, and animated by a sense of public duty rather than stimulated by a hope of private gain." *State v. King*, 2006-2383, p. 3 (La. 4/27/07); 956 So.2d 562, 563; *citing State v. Tate*, 185 La. 1006, 1019, 171 So. 108 (1936). In order to provide a form of protection against bias and partiality to one prosecuted for commission of a criminal offense, the remedy of recusation pursuant to La. C.Cr.P. art 680 was developed. *King*, 2006-2383, p. 6; 956 So.2d at 565; *see Plaquemines Parish Com'n Council v. Perez*, 379 So.2d 1373, 1378 (La. 1980). In a motion to recuse the district attorney, a defendant bears the burden to prove "by a preponderance of the evidence that the district attorney has a personal interest in the cause or grand jury proceeding which is in conflict with the fair and impartial administration of justice." *King*, 2006-2383, p. 7; 956 So.2d at 565.

Mills claims the prosecution *against his uncle* was somehow a demonstration, or an extension, of the animosity the prosecutors and police officers harbored toward *him*. This animosity, Mills claims, was a due process violation which prevented him having a fair trial.

4

However, the incident regarding Mills' uncle occurred *after* Mills had been prosecuted to verdict, with the jury finding him guilty of several criminal offenses. Thus, the Court finds that Mills fails to show how the incident which he claims occurred *after* the trial prevented him from having a fair trial.

To the extent that Mills may be arguing that prosecutorial animosity may have influenced the District Attorney's office to proceed with the prosecution, the facts fail to support such an inference. *Compare King*, 2006-2383, p. 10-11; 956 So.2d at 568. Mills did "not deny committing armed robbery; rather, he claimed that his conduct was justified and therefore excusable." *Mills*, 2013-0573, p. 14; 153 So.3d at 492. Consequently, whether the prosecutors harbored animosity toward Mills or had no feelings toward him whatsoever, the prosecutors had the duty to proceed with the prosecution of the crimes charged and to allow the jurors to determine whether the petitioner's justification defense had merit. The Court finds the petitioner has failed to make a credible claim of prosecutorial misconduct that would have affected *him* or the prosecution against *him*.

### *Ineffective Assistance of Trial Counsel*

Mills contends his trial counsel provided constitutionally-ineffective assistance by failing to investigate the mental health history of his co-defendant, Walter Aswell, and by failing to present evidence that his co-defendant had been taking prescription psychotropic medication before and during the commission of the crime. Mills argues this information was important for use as impeachment of Aswell's testimony. Mills argues that "[o]nly with the benefit of that information could the jury properly evaluate Aswell's credibility–and capabilities." Memorandum of Law, p. 15.

Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a petitioner claiming ineffective assistance of counsel must show that (1) counsel's performance was deficient, falling below an "effective standard of reasonableness," and (2) the deficient performance prejudiced the petitioner. *Id.*, 466 U.S. at 687-688, 104 S.Ct. at 2065. In order to show prejudice, the petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*, 466 U.S. at 694, 104 S.Ct. at 2068. In order for a claim of ineffective assistance of counsel to be successful, both prongs of the analysis must be shown.

5

The Court finds that Mills is unable to show entitlement to relief for ineffective assistance of trial counsel, as he does not satisfy the prejudice prong of the *Strickland* analysis. The Court notes the purpose of the information regarding Aswell's mental health history and alleged use of psychotropic medication during the commission of the offense would have been to impeach Aswell's credibility, especially as to the issues of Mills' claimed coercion into committing the robbery and also as to whether Mills or Aswell was the driver of or the passenger in the getaway car. On direct appeal, the First Circuit examined the record for corroboration of Aswell's testimony, assuming that Aswell's testimony was completely discredited in connection with another assignment of error. *Mills*, 2013-0573, p. 15-16; 153 So.3d at 492.

After review of the officers' testimonies, the appellate court determined that "the entire weight of the testimony and physical evidence contradicted Mills' testimony and established that he was the passenger in the Jeep and was in possession of the Beretta that was fired multiple times at the pursuing police officers." *Mills*, 2013-0573, p. 16-18; 153 So.3d at 493-494. Considering the petitioner's claim here, the Court agrees with the appellate court and finds that even if Aswell's testimony was entirely discredited, "the jury's verdicts finding the defendant guilty of attempted first degree murder reflect that the jury clearly rejected the defendant's testimony that he was not the driver and that he did not fire shots at the police officers. The jury necessarily determined that the defendant testified falsely as to these material facts. Consequently, the jury was justified in rejecting the entirety of the defendant's testimony, including his justification defense." *Id.*, 2013-0573, p. 18; 153 So.3d at 494.

Failing to prove the prejudice prong of the *Strickland* analysis, Mills cannot show entitlement to post-conviction relief for his claim of ineffective assistance of trial counsel.

### *Impeachment of Mills' Testimony*

In this claim, Mills contends he was denied his right to a fair trial and right of confrontation when the trial court allowed the state to impeach him with a federal complaint that was filed on Mills' behalf against the arresting officers for injuries he allegedly received during and after his arrest. This claim was fully litigated on direct appeal. *Mills*, 2013-0573, p. 19-20; 153 So.3d at 494-495.

In 2013, the Louisiana legislature amended La. C.Cr.P. art. 930.4 in order to make the procedural bars against granting relief on successive filings mandatory. *State ex rel. Carter v.*

*State*, 2014-1560, p. 1 (La. 9/25/15); 174 So.3d 1139, 11440. La. C.Cr.P. art. 930.4(A) now provides: "Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence *shall not be considered.*" (Emphasis added). Mills' counsel argues there are two grounds which require the re-litigation of this issue: (1) appellate counsel ineffectiveness; and (2) because the attorney who filed the federal complaint has now signed an unsworn statement declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746. *See Exhibit I.*

The attorney, Philip J. Kaplan, asserts in his statement that he represents Mills in the federal complaint at issue. Kaplan admits he did not meet or confer with Mills before filing the federal complaint. Kaplan acknowledges that in paragraph 5 of the complaint, it is alleged that Mills was a passenger in the vehicle pursued by the police officers. Kaplan explains that he used the word "passenger" to mean "occupant." *See Exhibit I.*

The Court finds that the interests of justice do not require re-litigation of this issue on either ground alleged by petitioner. As will be discussed in the next section of the Judgment, the Court finds that Mills fails to show his appellate counsel provided constitutionally ineffective assistance which would entitle him to post-conviction relief. As for the statement by counsel, the Court finds that all of the assertions made by attorney Kaplan in his statement corroborate Mills' trial testimony, which was considered and rejected by the jury. *See Mills*, 2013-0573, p. 19-20; 153 So.3d at 494-495. Consequently, this claim is procedurally barred by La. C.Cr.P. art. 930.4(A).

### *Ineffective Assistance of Appellate Counsel*

Mills contends his appellate counsel provided ineffective assistance of counsel in two respects. First, Mills argues appellate counsel failed to present argument that the confrontation violation with regard to Aswell's testimony could not be harmless error. Specifically, Mills contends appellate counsel should have pointed out the substantial impeachment of the officers' testimony so that the court of appeal could not have considered the officers' testimony as corroborative evidence of Aswell's testimony, as it ultimately did, in a harmless error analysis. Second, Mills argues appellate counsel failed to competently respond to the state's argument that La. C.E. art. 801(D)(2)(c) applied to his claim of error in regard to the use of the federal complaint as impeachment evidence.

7

The two prong test of *Strickland* was discussed *supra*, requiring a showing of both deficient performance of counsel, and prejudice to the defendant, for a successful claim of ineffective assistance of counsel. When the claim concerns the possible ineffective assistance of appellate counsel, the petitioner on post-conviction must show that appellate counsel ignored issues clearly stronger than those presented, and that there was a "reasonable probability" the ignored claims would have prevailed on appeal. *State v. Hebert*, 2015-0965, p. 1 (La. 10/2/15); 182 So.3d 23 (Mem); *State ex rel. Carter v. State*, 2014-1560, p. 1 (La. 9/25/15); 174 So.3d 1139.

### a. *The Confrontation Violation and Harmless Error*

With regard to the first claimed instance of appellate counsel ineffectiveness, the Court finds appellate counsel pointed out both the confrontation error, which the Court of Appeal found had merit, as well as argument why the confrontation error could not be considered harmless. The record shows appellate counsel did so in both its original brief on appeal, as well as in the reply brief. *See* Exhibit C, p. 26-36; *and* Exhibit E, p. 8-11.

Mills cannot show that appellate counsel rendered deficient performance in this regard. Although appellate counsel presented a different argument than the one suggested by Mills here, the Court finds the defendant has not "overcome the strong presumption that [counsel's actions] 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). The *Strickland* test of ineffective assistance affords a "highly deferential" standard of review to the actions of counsel to eliminate, as far as possible, "the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. This Court therefore "does not sit to second-guess strategic and tactical choices made by trial counsel." *State v. Myles*, 389 So.2d 12, 31 (La.1980).

Moreover, Mills is unable to show that even if counsel presented the argument he suggests, there was a "reasonable probability" this argument would have prevailed on appeal. The opinion on appeal shows the appellate court considered both the counseled and *pro se* arguments on this assignment of error. *Mills*, 2013-0573, p. 9-19; 153 So.3d at 488-494. The record shows Mills presented substantially the same argument he is asserting here in a *pro se*

8

supplemental brief filed with the court of appeal. *See* Exhibit G, p. 14-16. The court of appeal rejected that argument and found the confrontation error was harmless.

Mills can satisfy neither prong of the *Strickland* analysis and is not entitled to post-conviction relief on this ground.

b. *The Impeachment Issue*

With regard to the second claimed instance of appellate counsel ineffectiveness, Mills argues appellate counsel did not address in his reply brief the state's argument that the use of the federal complaint for impeachment was not hearsay under La. C.E. art. 801(D)(2)(c).

The record shows that appellate counsel did reference the state's argument on this issue in the reply brief, although in passing. *See* Exhibit E, p. 12. Otherwise, appellate counsel presented an argument which, in his experience and training, best represented the proper defense of Mills. This Court will not second-guess appellate counsel's strategic and tactical choices in presenting his appellate argument. Mills cannot satisfy the deficient performance prong of the *Strickland* analysis and is not entitled to post-conviction relief in this regard.

*Erroneous Appellate Decision*

Mills asserts he was denied a fair and impartial direct appeal when the First Circuit Court of Appeal ignored the strongest parts of Mills' arguments, and consistently misapplied clear and established law. The Court finds this claim is not recognized as one of the exclusive grounds for post-conviction relief. *See* La. C.Cr.P. art. 930.3.

*Conclusion*

Finding that Mills has failed to establish grounds for entitlement to post-conviction relief, accordingly, the Court denies and dismisses petitioner Logan Nestor Mills' Application for Post-Conviction Relief in its entirety.

Franklinton, Louisiana, this ____ day of November, 2016.

Hon. August J. Hand, Judge
22nd Judicial District Court, Division B

A True Copy of Original
This 11-22-16
By. Clerk of Court

9