**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **LOGAN MILLS,** | * | **CIVIL ACTION** |
| **PETITIONER** | * | |
| | * | **NO. 18-cv-0847** |
| **VERSUS** | * | |
| | * | **SECTION "F" (2)** |
| **ROBERT TANNER, WARDEN** | * | |
| **RESPONDENT** | * | |

**RESPONSE TO PETITION FOR *HABEAS CORPUS* RELIEF**

<u>OVERVIEW</u>

Logan Mills is a state prisoner incarcerated at the Rayburn Correctional Center in Angie, Louisiana. He is serving a seventy year sentence (sixty-five years plus five years consecutive) as a result of his conviction for armed robbery with a firearm (La. R.S. 14:64, 64.3), attempted first-degree murder (La. R.S. 14:27/30), and aggravated obstruction of a highway of commerce (La. R.S. 14:96). Mills has petitioned this Court for a writ of habeas corpus, contending that his incarceration is in violation of his rights under the United States Constitution.

Mills's petition is timely. His claims are exhausted and not in procedural default. Mills's claims, however, lack merit. For that reason, respondent Robert Tanner, Warden, respectfully prays that the Court  dismiss the petition with prejudice and otherwise deny relief.

## TABLE OF CONTENTS

OVERVIEW.................................................................................................................1

PRELIMINARY MATTERS..................................................................................3

    1.    Custody....................................................................................................3

    2.    The state court record.............................................................................3

    3.    The facts: a brief overview....................................................................4

    4.    The petitioner's claims...........................................................................5

    5.    Proceedings in the state courts (timeline)..............................................6

TIMELINESS............................................................................................................8

EXHAUSTION..........................................................................................................8

PROCEDURAL DEFAULT.......................................................................................8

MERITS REVIEW.....................................................................................................9

    1.    Mills is not entitled to relief based on his claim that his trial
        "was structurally flawed due to impermissible bias on the part of
        the prosecution team" (Claim 1). ........................................................12

    2.    Mills is not entitled to relief on the ground that the state courts
        erroneously determined the restriction of his cross-examination
        of Walter Aswell to be harmless error (Claim 2).................................21

    3.    Mills is not entitled to relief based on his claim of ineffective assistance
        of counsel for failure to investigate (Claim 3).....................................32

    4.    Mills is not entitled to relief based on his claim concerning the admission of
        a statement made in a federal lawsuit filed on his behalf (Claim 4). ...................33

    5.    Mills is not entitled to relief based on his claim of ineffective assistance
        of counsel on appeal (Claim 5). ..........................................................37

    6.    Mills is not entitled to relief based on his claim that he was
        "denied a fair and impartial direct appeal" (Claim 6)...........................40

CONCLUSION AND PRAYER................................................................................42

CERTIFICATE OF SERVICE................................................................................42

PRELIMINARY MATTERS

**1.      Custody.**

The respondent does not dispute that the petitioner is in custody.

**2.      The state court record.**

Submitted along with this Response is the complete state court record relating to Mills's trial and collateral proceedings in the Louisiana courts, presented in nineteen volumes.

The record has been imaged and sequentially numbered by undersigned counsel

Volumes 1-2 consist of the records of the 22nd Judicial District Court for the Parish of Washington in the matter of *State v. Logan Nestor Mills and Walter Roy Aswell*, docket number 11-CR5-113331, as maintained by the clerk of court for that court. It includes the pre-trial, trial, and post-trial proceedings in the district court as well as all pleadings filed in connection with the petitioner's direct appeal under docket numbers 2013-KA-0573.

Volumes 3-15 consist of the record of the Louisiana Court of Appeal, First Circuit from the petitioner's direct appeal under that court's docket number 2013-KA-0573.

Volumes 16-17 consist of the records of the Louisiana Supreme Court from the petitioner's applications for supervisory review following the First Circuit Court of Appeal's decision affirming the petitioner's convictions and sentences. Volume 16 is the record from the counseled writ application docketed as case number 2014-K-2027. Volume 17 is the record from the subsequent pro se application docketed as case number 2014-KH-2269.

Volume 18 consists of the record of the Louisiana Court of Appeal, First Circuit from the petitioner's writ application following the state district court's denial of his application for post-conviction relief (docket number 2017-KW-0237).

Finally, Volume 19 consists of the record of the Louisiana Supreme Court from the

petitioner's writ application to that Court concerning the state district court's denial post-conviction relief (docket number 2017-KP-0912).

*A note on citations to the record*.      In this pleading, counsel will refer to the State Court Record as "SCR" followed by the volume number and the page number superimposed upon the page by computer software.[1] Accordingly, "SCR$_{18}$ at 3239" would refer to page 3239, which is located in the eighteenth volume of the state court record.

**3.      Use of hyperlinks.**

This pleading contains hyperlinks to the Internet containing source documents for citation, pursuant to Rule 12 of this Court's *Administrative Procedures for Electronic Case Filings and Unique Procedures and Practices for Electronic Filing*.

**4.      The facts: a brief overview.**

The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> On April 20, 2011, [Logan Mills] and Walter Aswell entered the Capital One Bank on Columbia Street in Bogalusa, wearing masks and carrying guns. While Aswell stood guard at the back, [Mills] held up his gun, told the tellers to keep their hands up, and demanded money. One of the tellers handed money to the defendant and triggered the silent alarm. [Mills] and Aswell fled the bank in a black Jeep. A chase ensued involving units from the Bogalusa Police Department and the Washington Parish Sheriff's Office.
>
> * * *
>
> Deputy Scott Seals with the St. Tammany Parish Sheriff's Office, and Officers Chad Cassard and Patrick Lyons of the Bogalusa Police Department, who were involved in the chase and arrest of the defendant [] described multiple shots fired from the Jeep at the deputies, one of which shattered the rear window of Deputy Seals' police unit and struck the cage behind his head. Officers Cassard and Lyons identified the passenger as the

---

1   Volumes 1-2 were presented to undersigned counsel by the district court clerk of court in paper form, and then scanned into PDF format. Volumes 3-15 and 18 was presented to undersigned counsel in digital (PDF) format, on a compact disc, by the clerk of court for the Louisiana First Circuit Court of Appeal. Volumes 16, 17, and 19 were presented to undersigned counsel in digital (PDF) format, by email, by the clerk of court for the Louisiana Supreme Court.

Counsel then, using computer software (Adobe Acrobat Pro DC) ensured uniformity of page size by causing letter-sized pages to be imaged onto legal-sized paper and thereafter superimposed page numbers using the "Add Header or Footer" feature.

shooter. The officers testified that at some point during the chase, the Jeep stalled and coasted into the parking lot of an old grocery store. Officer Cassard testified that the passenger continued to shoot at the officers from the Jeep after it stopped. Upon exiting the Jeep, the passenger was wearing a mask and pointed his pistol at Officer Cassard. The driver and passenger met in front of the Jeep before the two ran in opposite directions. The driver was subdued first. Officer Cassard and Deputy Seals then pursued the passenger. Deputy Seals testified that he saw the passenger at the edge of the woods, and that the passenger raised a gun at him. Deputy Seals then fired and saw the passenger fall. Deputy Seals, Officer Cassard, and Officer Lyons struggled with the passenger and described him as trying to reach his pistol even after being shot. Once subdued, the passenger's mask was removed. Each of the officers identified the defendant as the passenger.

State v. Mills, 13-0573 (La. App. 1 Cir. 8/27/14), 153 So.3d 481, 485, 493.

At the time Mills was apprehended, he was in possession of the bag containing the $18,500 taken during the bank robbery. SCR$_6$ at 1331, lines 15-22; SCR$_{10}$ at 2098, lines 19-27.

### 5.    The petitioner's claims.

The petitioner raises the following six claims in his habeas corpus petition:

(1)    "Mills' trial was structurally flawed due to impermissible bias on the part of the prosecution team." ECF Doc. 11, pp. 11-14.

(2)    "Mills was denied his constitutional right of confrontation when the state court refused to allow him to cross-examine his co-defendant about the great leverage under which he was testifying pursuant to a plea bargain he had confected with the State of Louisiana." ECF Doc. 11, pp. 14-26.

(3)    "Mills was denied his constitutional right to the effective assistance of counsel when his trial attorney failed to investigate his co-defendant's mental health history, and failed to present evidence that his co-defendant was under the influence of psychotropic medication at the time of the crime." ECF Doc. 11, pp. 26-31.

(4)    "Mills was denied his constitutional right of confrontation and his right to a fair trial when the state court allowed the prosecutor to impeach Mills with a federal complaint that was prepared by a California attorney that Mills did not know and had never communicated with." ECF Doc. 11, pp. 32-39.

(5)    "Mills was denied his constitutional right to the effective assistance of counsel when his appellate attorney failed to competently brief the issues raised on appeal, and failed to competently respond to the State's Original Brief." ECF Doc. 11, pp. 39-50.

(6)    "Mills was denied a fair and impartial direct appeal when the Louisiana First Circuit Court of Appeal repeatedly ignored critical points of Mills' arguments and consistently misapplied clearly established law." ECF Doc. 11, pp. 50-63.

6.      Proceedings in the state courts (timeline).

A.      Proceedings leading to conviction and sentence.

| | | |
|---|---|---|
| May 17, 2011. | The district attorney files a bill of information alleging Logan Mills and Walter Aswell committed armed robbery (Counts 1-2), attempted first-degree murder of officers Scott Seals, Patrick Lyons, and Chad Cassard (Counts 3-5), and aggravated obstruction of a highway of commerce (Count 6). | $SCR_1$ at 2-3. |
| July 23, 2012. | Co-defendant Walter Aswell pleads guilty. The minute entry reflects: "The court advised the defendant that the sentencing range agreed to in this matter would be between 25 and 30 years" and the court deferred sentencing until after the trial of Logan Mills. | $SCR_1$ at 210. |
| Aug. 13-20, 2012. | Logan Mills is tried by jury. His is found guilty as charged on all counts except Count 5 (attempted murder of Officer Cassard). | $SCR_1$ at 219-233; $SCR_1$ at 181-183. |
| Sept. 10, 2012. | The district court sentences Mills: sixty years for the armed robbery (Count 1); forty years for the attempted murders (Counts 3-4); fifteen years for aggravated obstruction of a highway conviction (Count 6). These sentences are all to be served concurrently. The court also sentences Mills to serve five additional years, consecutively, for using a firearm during the armed robbery (Count 2). | $SCR_1$ at 310. |
| Nov. 20, 2012. | The district court adjudicates Mills a second offender as to Count 1 (armed robbery), vacates the original sentence, and imposes a sentence of seventy years. The other sentences remain unaffected. | $SCR_1$ at 327; $SCR_1$ at 184. |

### B.     Direct review proceedings.

| | | |
|---|---|---|
| Feb. 17, 2014. | Appellant brief (counseled) filed. | SCR$_{17}$ at 2884-2926. |
| March 27, 2014. | Appellee brief (State) filed. | SCR$_{17}$ at 1873-2883. |
| April 4, 2014. | Reply briefs (both counseled and *pro se*) filed. | SCR$_{17}$ at 2927-2939; SCR$_{18}$ at 3099-3109. |
| April 21, 2014. | Supplemental brief (*pro se*) filed. | SCR$_{18}$ at 3110-3142. |
| Aug. 27, 2014. | The Louisiana First Circuit Court of Appeal renders its opinion, affirming the petitioner's convictions and sentences. State v. Mills, 13-0573 (La. App. 1 Cir. 8/27/14), 153 So.3d 481. | SCR$_2$ at 336-361. |
| Sept. 9, 2014. | Application for rehearing (*pro se*) filed. | SCR$_{18}$ at 3015-3025. |
| Sept. 26, 2014. | The Louisiana First Circuit Court of Appeal denies the petitioner's application for rehearing. State v. Mills, 13-0573 (La. App. 1 Cir. 9/26/14), 153 So.3d 481 | SCR$_{18}$ at 3026. |
| Sept. 29, 2014. | Writ application (counseled) filed with the Louisiana Supreme Court, 2014-K-2027. | SCR$_{17}$ at 2788-2813. |
| Oct. 27, 2014. | Writ application (*pro se*) filed with the Louisiana Supreme Court, 2014-KH-2269. | SCR$_{18}$ at 2950-2988. |
| May 8, 2015. | Writ opposition (State) filed with the Louisiana Supreme Court, 2014-K-2027. | SCR$_{17}$ at 2940-2948. |
| May 22, 2015. | The Louisiana Supreme Court denies the petitioner's counseled writ application. State v. Mills, 14-2027 (La. 5/22/15), 170 So.3d 982. | SCR$_{17}$ at 2787. |
| Sept. 18, 2015. | The Louisiana Supreme Court denies the petitioner's *pro se* writ application. State v. Mills, 14-2269 (La. 9/18/15), 178 So.3d 139. | SCR$_{18}$ at 2949. |

The petitioner did not file a petitioner for certiorari with the Supreme Court of the United States. ECF Doc. 1, page 4, answer to question 9(h).

### C.    Collateral review proceedings.

| Aug. 18, 2016. | Mills files an application for post-conviction relief with the state district court. | SCR$_2$ at 364-411. |
|---|---|---|
| Nov. 21, 2016. | The state district court denies relief. | SCR$_2$ at 580-588; ECF Doc. 11-3. |
| Dec. 12, 2016. | The petitioner notices his intent to seek supervisory review. | SCR$_2$ at 590-593. |
| Jan. 17, 2017. | The applies for and obtains an extension of time in which to seek supervisory review. | SCR$_2$ at 595-596. |
| Feb. 16, 2017. | The petitioner timely files an application for supervisory review, 2017-KW-0237. | SCR$_{18}$ at 3181-3238. |
| April 28, 2017. | The Louisiana First Circuit Court of Appeal denies relief. State v. Mills, 17-0237 (La. App. 1 Cir. 4/28/17), 2017 WL 1535201. | SCR$_{18}$ at 3180; ECF Doc. 11-4. |
| Aug. 31, 2018. | The Louisiana Supreme Court acts on the petitioner's writ application as follows:<br><br>Denied. Relator fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Relator's remaining claims are repetitive and/or unsupported. La.C.Cr.P. art. 930.2; La.C.Cr.P. art. 930.4.<br><br>State v. Mills, 17-0912 (La. 8/31/18), 251 So.3d 1067. | SCR$_{19}$ at 3470-3471; ECF Doc. 11-5. |

TIMELINESS

The respondent does not allege that the petition is time-barred.

EXHAUSTION

The respondent does not allege any of the petitioner's claims to be unexhausted.

PROCEDURAL DEFAULT

The respondent does not allege any of the petitioner's claims to be procedurally defaulted.

MERITS REVIEW

The Louisiana Supreme Court, after considering the petitioner's claims, ruled:

> Denied. Relator fails to show that he received ineffective assistance of
> counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104
> S.Ct. 2052, 80 L.Ed.2d 674 (1984). Relator's remaining claims are repeti-
> tive and/or unsupported. La.C.Cr.P. art. 930.2; La.C.Cr.P. Art. 930.4.

State v. Mills, 17-0912 (La. 8/31/18), 251 So.3d 1067, 1068.

The petitioner's claims were adjudicated "on the merits" by the Louisiana Supreme Court

because "the disposition of the case was substantive as opposed to procedural." Neal v. Puckett,

286 F.3d 230, 235 (5th Cir. 2002) (en banc).[2]

For that reason, the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)

prohibits the Court from granting a writ of habeas corpus "unless the adjudication of the claim—

(1)     resulted in a decision that was contrary to, or involved an unreasonable application
of, clearly established Federal law, as determined by the Supreme Court of the
United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

**§ 2254(d)(1).**   The Supreme Court has explained that the statutory phrase "clearly estab-

lished Federal law" used in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of this

Court's decisions." Williams v. Taylor, 529 U.S. 362, 412 (2000). Thus: "A legal principle is

'clearly established' within the meaning of this provision only when it is embodied in a holding of

this Court." Thaler v. Haynes, 559 U.S. 43, 47 (2010). See Thomas v. Vannoy, 898 F.3d 561, 566

---

2   To the extent that the Louisiana Supreme Court found the petitioner's post-conviction claims to be "repetitive,"
this is a determination that the claims were previously decided during the direct review process. See Bennett v.
Whitley, 41 F.3d 1581, 1581 (5th Cir. 1994) ("A state's refusal to listen to a habeas claim because it was decided
on direct appeal does not impose a procedural bar to federal review of the constitutional issue."). In such
circumstances, the habeas court is to look through to "the last clear state court decision of any substance," Divers
v. Cain, 698 F.3d 211, 216 (5th Cir. 2012) (citation omitted), and grant deference to that decision, id. at 217-220.

(5th Cir. 2018) ("For a Supreme Court decision to clearly establish law, it must confront the specific question presented by another case—it is not enough for a subsequent case to involve circumstances that are only similar to earlier Supreme Court decisions. Thus, we cannot simply frame Supreme Court precedents at a high level of generality and declare a principle to be clearly established when the Court has yet to squarely consider it.") (citations, alterations, ellipses omitted). Finally, § 2254(d) applies only to Supreme Court decisions interpreting the Constitution. See Early v. Packer, 537 U.S. 3, 10 (2002) (decisions "based on our supervisory power over the federal courts, and not on constitutional grounds" are "off the table as far as § 2254 is concerned").

A state court decision is "contrary to" clearly established Federal law only if "the state court applies a rule that contradicts the governing law set forth in [United States Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different." Williams v. Taylor, *supra*, 529 U.S. at 405-406.

A state court decision involves an "unreasonable application" of clearly established Federal law within the meaning of § 2254(d)(1) only if "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well under-stood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

Importantly, "[b]ecause only Supreme Court jurisprudence provides 'clearly established Federal law' under section 2254(d), where Supreme Court jurisprudence 'gives no clear answer to the question presented, let alone one in petitioner's favor, it cannot be said that the state court unreasonably applied clearly established federal law.' " Wilson v. Cain, 641 F.3d 96, 100 (5th Cir. 2011) (citation omitted).

**§ 2254(d)(2).**  "[W]hen a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was based on 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " Burt v. Titlow, 571 U.S. 12, 18 (2013) (quoting § 2254(d)(2)). "A determination of a factual issue made by a State court shall be presumed to be correct." § 2254(e)(1). "The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.' " Burt, 571 U.S. at 18 (quoting § 2254(e)(1)).

"The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." Valdez v. Cockrell, 274 F.3d 941, 948 n. 11 (5th Cir. 2001) (collecting cases).

"The clear-and-convincing evidence standard of § 2254(e)(1)—which is 'arguably more deferential' to the state court than is the unreasonable-determination standard of § 2254(d)(2)— pertains only to a state court's determinations of particular factual issues, while § 2254(d)(2) pertains to the state court's decision as a whole." Blue v. Thaler, 665 F.3d 647, 654 (5th Cir. 2011) (citations omitted); see also Valdez, supra, 274 F.3d at 951 n. 17.[3]

"A state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Burt, supra, 571 U.S. at 18.

---

3  In Valdez, the Court explained:

> Whereas § 2254(d)(2) sets out a general standard by which the district court evaluates a state court's specific findings of fact, § 2254(e)(1) states what an applicant will have to show for the district court to reject a state court's determination of factual issues. For example, a district court may find by clear and convincing evidence that the state court erred with respect to a particular finding of fact, thus rebutting the presumption of correctness with respect to that fact. See § 2254(e)(1). It is then a separate question whether the state court's *determination* of facts was unreasonable in light of the evidence presented in the state court proceeding. See § 2254(d)(2). Thus, it is possible that, while the state court erred with respect to one factual finding under § 2254(e)(1), its determination of facts resulting in its decision in the case was reasonable under § 2254(d)(2).

274 F.3d at 951 n. 17 (emphasis in original).

1.     **Mills is not entitled to relief based on his claim that his trial "was structurally flawed due to impermissible bias on the part of the prosecution team" (Claim 1).**

In Mills's first claim, he argues that he "could not have obtained a fair trial when the officials who conducted his trial harbored such animosity and/or bias towards him that they were willing to send an innocent man to prison merely for acting on Mills' behalf." ECF Doc. 11, pg. 14. He further argues that this bias was " 'hidden from view' during the course of Mills' trial" and "[i]t was not until these individuals conspired against Mills' uncle that he discovered their true bias hidden throughout his trial." *Id*., pg. 16.

His argument proceeds in pertinent part as follows:

> Of note, Mills' version of events, specifically whether he was the driver or the passenger/shooter in the robbery's get-a-way car, also played a key role in the development of the facts underlying his civil rights lawsuit. Had Mills been able to prove to a civil jury that in fact he was the driver rather than the passenger/shooter, the prosecutors and police officers involved in his criminal prosecution would have faced financial liability for their actions.[*] In turn, the incident involving his uncle as Mills explained in state collateral court proceeding clearly demonstrated the extreme retaliation employed by these individuals to silence Mills' story and maintain the reliability of his criminal conviction. It also demonstrates the vested personal interest of the prosecutorial team involved in Mills' criminal case to avoid civil liability, and how their bias created a structural flaw in his trial.

ECF Doc. 11, pg. 16.

A.     **Additional pertinent facts.**

This claim is intertwined with a civil rights suit filed by Mills alleging the use of excessive force at the time of his April 20, 2011 arrest. See ECF Doc. 11-2, pp. 4-15 (copy of complaint filed and docketed as *Mills v. City of Bogalusa et al.*, 12-cv-0991). That suit was filed April 18, 2012. *Id*. Mills named as defendants "the individuals who used excessive force against Mills during his arrest, and who also happened to testify against him at trial"—including but not

---

\*   This assertion that "the prosecutors . . . involved in his criminal prosecution would have faced financial liability" appears to be unfounded, as the prosecutors who tried Mills's criminal case were not named as defendants in the referenced civil rights lawsuit. See ECF Doc. 11-2, pp. 4-15 (copy of complaint).

limited to Chad Cassard, Patrick Lyons, and Scott Seals. ECF Doc. 11, pg. 16; ECF Doc. 11-2, pp. 4-6. The co-defendant, Walter Aswell, sued the same individuals alleging the use of excessive force at the time of his arrest, which occurred contemporaneously with the arrest of Logan Mills). See *Aswell v. Culpepper et al.,* 12-cv-0997, ECF Doc. 1 (complaint).

Although Mills's lawsuit was filed on April 18, 2012, it was not served until "a few minutes after Mills' jury returned with its verdict," that is, after court had adjourned on August 20, 2013. See ECF Doc. 11, pg. 11. The person serving process was Mills's uncle, Douglas Dendinger. Id., pg. 13.[4] At the time Dendinger served process, an incident occurred which was witnessed by the officers being served with process, the assistant district attorneys who prosecuted Mills (Leigh Ann Wall and Julie Knight), and the trial court judge's staff attorney (Pamela Legendre). This resulted in Dendinger's arrest and later, a lawsuit alleging civil rights violations naming as defendants everyone listed in the previous sentence. ECF Doc. 11, pp. 11-12 (petitioner's summary of events); ECF Doc. 11-2, pg. 168 (arrest report); *id.* at pp. 161-167 (witness statements concerning the events); *id.* at pp. 141-160 (collection of news media stories about the incident); *Dendinger v. City of Bogalusa et al.,* 14-cv-1837, ECF Doc. 1 (complaint, filed August 12, 2014).

Aswell's excessive force lawsuit was tried before a jury on June 9, 2015, and the jury found none of the defendants to be liable. *Aswell v. Culpepper et al.,* 12-cv-0997, ECF Doc. 79 (minute entry); *id.* at Doc 79-1 (verdict). Mills's excessive force suit settled in 2017 for an undisclosed amount. *Mills v. City of Bogalusa et al.*, 12-cv-0991, ECF Doc. 68. The subsequent lawsuit arising out of the service-of-process incident also settled for an undisclosed amount. See *Dendinger v. City of Bogalusa et al.,* 14-cv-1837 c/w *Mills v. City of Bogalusa et al,* 13-cv-5477, ECF Doc. 265.

---

4  The petitioner's mother Melanie Mills made an attempt to serve process on Scott Seals at a recess during the course of the trial. Because Officer Seals had been identified as a witness by the prosecution and Melanie Mills had been identified by as a potential witness by defense counsel (SCR$_8$ at 1588, lines 11-12, 18), and because the trial court had ordered sequestration of witnesses (SCR$_{10}$ at 1888-1889), the trial court addressed the attempted service of process in the context of the sequestration order (SCR$_{12}$ at 2362-2365).

**B.     The state courts' adjudication of the claim.**

The state district court judge, in denying relief based upon this claim, reasoned in pertinent part as follows:

> In his first claim of error, Mills argues that all of the key officials involved in Mills' prosecution—both of the assistant district attorneys who conducted his trial, the trial judge's law clerk and members of the Bogalusa, Louisiana police force—were caught conspiring to bring false charges against Mills' uncle, Douglas Dendinger, for actions which occurred minutes after the trial ended.
>
> * * *
>
> Although Mills asserts that the factual background he recites encompasses a claim for judicial misconduct, in addition to prosecutorial misconduct, the Court notes the petitioner does not point to any misconduct allegedly committed by the presiding judge or in connection with the jurors, who were the ultimate triers of fact. Consequently, the Court finds there is no factual basis for a claim of judicial misconduct.
>
> Insofar as Mills claims there was prosecutorial misconduct present in his trial . . . [he] claims the prosecution *against his uncle* was somehow a demonstration, or, an extension, of the animosity the prosecutors and police officers harbored toward *him*. This animosity, Mills claims, was a due process violation which prevented him having a fair trial. However, the incident regarding Mills' uncle occurred *after* Mills had been prosecuted to verdict, with the jury finding him guilty of several criminal offenses. Thus, the Court finds that Mills fails to show how the incident which he claims occurred *after* the trial prevented him from having a fair trial.
>
> To the extent that Mills may be arguing that prosecutorial animosity may have influenced the District Attorney's office to proceed with the prosecution, the facts fail to support such an inference. Mills did "not deny committing armed robbery; rather, he claimed that his conduct was justified and therefore excusable." Mills, 2013-0573, p. 14; 153 So.3d at 492. Consequently, whether the prosecutors harbored animosity toward Mills or had no feelings toward him whatsoever, the prosecutors had the duty to proceed with the prosecution of the crimes charged and to allow the jurors to determine whether the petitioner's justification defense had merit. The Court finds the petitioner has failed to make a credible claim of prosecutorial misconduct that would have affected *him* or the prosecution against *him.*

SCR$_2$ at 582-584 (emphasis in original, some citations omitted).

The last reasoned state court decision on this issue comes from the Louisiana Supreme

Court, which found his claim to be "unsupported." SCR$_{19}$ at 3471 (citing La. C. Cr. P. art. 930.2). The cited statute provides: "The petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted." La. C.Cr. P. art. 930.2.

### C.    There is no merit to this claim.

The petitioner claims that "the officials who conducted his trial" harbored animosity towards him. There is clearly established law establishing that a judge must not harbor animosity against a defendant. The petitioner's claim is without merit because the state courts reasonably found no evidence that the judge who presided over the trial did not harbor any such animosity.

There is no clearly established law providing that the individuals who *prosecute* the case be free of animosity against the defendant. For that reason alone, there is no basis for the granting of habeas corpus relief. Even if such a right existed, the state courts reasonably found no evidence that the prosecutors exhibited such animus.

### i.    *The claim of judicial bias does not warrant relief.*

The clearly established federal law governing claims of judicial bias has been summarized as follows by the United States Court of Appeal for the Fifth Circuit:

> Under the Due Process Clause, a criminal defendant is guaranteed the right to a fair and impartial tribunal. Bracy v. Gramley, 520 U.S. 899, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997). The Due Process Clause "establishes a constitutional floor, not a uniform standard." Id. This floor requires a fair trial, "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." Id. (citation omitted).
>
> However, "bias by an adjudicator is not lightly established." Valley v. Rapides Parish Sch. Bd., 118 F.3d 1047, 1052 (5th Cir.1997). Courts ordinarily "presume that public officials have properly discharged their official duties." Bracy v. Gramley, 117 S.Ct. at 1799 (internal quotation marks and citations omitted). General allegations of bias or prejudice are insufficient to establish a constitutional violation. See Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986) (holding that general allegations of a judge's frustration with insurance companies are not sufficient to force recusal under the Due Process Clause from a case in

which an insurance company was a party). The Supreme Court has stated that "most matters relating to judicial disqualification [do] not rise to a constitutional level." Id. at 1584 (quoting FTC v. Cement Inst., 333 U.S. 683, 68 S.Ct. 793, 804, 92 L.Ed. 1010 (1948)). So even if a judge is disqualified under state or federal law, the disqualification is not always required by the Due Process Clause. See id. at 1585.

In general, the Supreme Court has recognized "presumptive bias" as the one type of judicial bias other than actual bias that requires recusal under the Due Process Clause. Bunton, 524 F.3d at 672. Presumptive bias occurs when a judge may not actually be biased, but has the appearance of bias such that "the probability of actual bias ... is too high to be constitutionally tolerable." Id. (quoting Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975)). The Supreme Court has only found that a judge's failure to recuse constitutes presumptive bias in three situations: (1) when the judge "has a direct personal, substantial, and pecuniary interest in the outcome of the case," (2) when he "has been the target of personal abuse or criticism from the party before him," and (3) when he "has the dual role of investigating and adjudicating disputes and complaints." Bunton, 524 F.3d at 672 (quoting Bigby v. Dretke, 402 F.3d 551, 559 (5th Cir. 2005)); see also Crater v. Galaza, 491 F.3d 1119, 1131 (9th Cir. 2007) (coming to the same conclusion).

Richardson v. Quarterman, 537 F.3d 466, 474 (5th Cir. 2008).

In this case, the state district court found that the Mills "does not point to any misconduct allegedly committed by the presiding judge." SCR$_2$ at 583. This is an accurate summary of the pleadings before the state district court. See SCR$_2$ at 364-411. In this Court, Mills only alleges misconduct by the "trial judge's law clerk" (ECF Doc. 11, pg. 11), and all that Mills has proven is that the trial court judge's law clerk provided a statement to the police about the service-of-process incident (ECF Doc. 11-2, pg. 165).

The Louisiana courts did not unreasonably apply clearly established federal law when it the petitioner's claim of judicial bias to be "unsupported." Nor is that conclusion based upon an unreasonable determination of the facts: there are no facts alleged by the petitioner which would justify the conclusion that the judge who presided over his case was in any way biased.

### ii.    The claim of prosecutorial bias does not warrant relief.

There is a clearly established right to be free from prosecutorial that is "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification," Bordenkircher v. Hayes, 434 U.S. 357 (1978), but that right is not implicated here.

There is also a clearly established right to be free from vindictive prosecution in the sense that the initial charges have been upgraded in severity as a result of an individual's doing something that the law allows him to do—such as seek appellate review. See Jordan v. Epps, 756 F.3d 395, 405-407 (5th Cir. 2014) (discussing Blackledge v. Perry, 417 U.S. 21 (1974) and United States v. Goodwin, 457 U.S. 368 (1982)). That right is not implicated here, either. Due to the nature of time, a prosecution instituted by bill of information filed May 17, 2011 could not have been influenced by an excessive force lawsuit filed April 18, 2012.

Mills instead asserts "impermissible bias" on the part of the prosecution (without clearly describing the nature of that bias) and without citing to any clearly established federal law (because there is none).

A review of the holdings of the Supreme Court cases Mills cites shows that none of those cases establish the proposition he cites them for. See ECF Doc. 11, pp. 11-17, citing In re Murchison, 349 U.S. 133 (1955);[5] Banks v. Dretke, 540 U.S. 668 (2004);[6] Young v. United States

---

5   The Murchison case involved Michigan's "one man grand jury system" in which a judge was authorized to "compel witnesses to appear before him in secret to testify about suspected crimes." 349 U.S. at 133. Particularly, in that case, the petitioner's were tried, convicted, and sentenced by "[t]he judge who had been the 'grand jury.' " Id. at 135. The Court summarized its holding as follows: "We hold that it was a violation of due process for the 'judge-grand jury' to try these petitioners, and it was therefore error for the Supreme Court of Michigan to uphold the convictions." Id. at 139. The holding of the Murchison case has no application to this case.

6   The Banks case involved the application of Brady v. Maryland, 373 U.S. 83 (1963), to the facts of a particular case. The questions presented were whether the evidence had been suppressed and, if so, whether the suppressed evidence was "material." 540 U.S. at 689 & n. 10. The Court held that the answers were yes and yes.

ex rel Vuitton Et Fils. S.A., 481 U.S. 787 (1987);[7] Neder v. United States, 527 U.S. 1 (1999);[8] Tumey v. Ohio, 273 U.S. 510 (1927);[9] Vazquez v. Hillary, 474 U.S. 254 (1986);[10] and Miller-El v. Cockrell, 537 U.S. 322 (2003).[11]

As explained by the California Supreme Court in 2006,

> Neither this court *nor the United States Supreme Court* has delineated the limitations due process places on prosecutorial conflicts of interest. In [People v. Superior Court (Greer)  (1977) 19 Cal.3d 255, 267, 137 Cal. Rptr. 476, 561 P.2d 1164)], as noted, we treated the due process problem of an interested prosecutor as "background." (Greer, supra, 19 Cal.3d at p. 268, 137 Cal.Rptr. 476, 561 P.2d 1164.) We observed that a "fair and impartial trial" is fundamental to due process and that the prosecutor, as well as the court, must "respect this mandate" by exercising his or her discretionary powers impartially (id. at p. 266, 137 Cal.Rptr. 476, 561 P.2d 1164), but we did not define the types or severity of interestedness that would violate the constitutional mandate.
>
> Similarly, in Marshall v. Jerrico, Inc. (1980) 446 U.S. 238, 249-250, 100 S.Ct. 1610, 64 L.Ed.2d 182, the federal high court observed that "[p]rose-cutors are also public officials; they too must serve the public interest" and that consequently "[a] scheme injecting a personal interest, financial or

---

7   The Young case did not involve the interpretation of the United States Constitution at all. It instead involved the Supreme Court's exercise of its supervisory power over the federal courts. See Young, 481 U.S. at 790 ("We now reverse, exercising our supervisory power. . . ."). The holding of the Young case cannot, as a matter of law, form the basis for the granting of relief under § 2254(d). Early v. Packer, supra, 537 U.S. at 10.

8   The Neder case involved jury instructions in a tax fraud case. See 527 U.S. at 19-20 ("We thus hold that the District Court's failure to submit the element of materiality to the jury with respect to the tax charges was harmless error"); id. at 25 ("we hold that materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statute"). The holding of the Neder case has no application to this case.

9   The Tumey case involved the validity of trials conducted by a village mayor who received a portion of every fine he imposed upon conviction and who was not otherwise compensated for his services as a judge. 273 U.S. at 523. The Court held that it "violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." Id. at 523. The holding of the Tumey case has no application to this case.

10  The Vazquez case involved an attempt to overturn precedent requiring a new trial for a defendant who proved racial discrimination in the selection of the grand jury that indicted him. See Vazquez, 474 U.S. at 255 ("The Warden of San Quentin State Prison asks this Court to retire a doctrine of equal protection jurisprudence first announced in 1880. The time has come, he urges, for us to abandon the rule requiring reversal of the conviction of any defendant indicted by a grand jury from which members of his own race were systematically excluded."). The Court declined to overrule that precedent. See id. at 265-266. The holding of the Vazquez case has no application to this case.

11  The Miller-El case involved the showing that a habeas corpus petitioner must make in order to obtain a certificate of appealability. 537 U.S. at 327. The holding of Miller-El has no application to this case.

otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." *In the case before it, however, the court found it unnecessary to say "with precision what limits there may be on a financial or personal interest of one who performs a prosecutorial function,* for here the influence alleged to impose bias [an institutional financial interest in increased enforcement] is exceptionally remote." (<u>Id</u>. at p. 250, 100 S.Ct. 1610 fn. omitted.)

The Supreme Court gave the problem of an interested prosecutor further attention in <u>Young v. U.S. ex rel. Vuitton et Fils S.A.</u> (1987) 481 U.S. 787, 790, 107 S.Ct. 2124, 95 L.Ed.2d 740 (<u>Vuitton</u>), holding improper a district court's appointment, to prosecute a criminal contempt for violations of an injunction against trademark infringement, of attorneys who also represented the trademark holder. Special criminal contempt prosecutors, like United States Attorneys, should have an undivided duty to see justice done. (<u>Id</u>. at pp. 803-804, 107 S.Ct. 2124.) The interest of the government in "dispassionate assessment of the propriety of criminal charges for affronts to the Judiciary" is not necessarily congruent with the private client's interest in the monetary benefits of enforcing the court's injunction. (<u>Id</u>. at p. 805, 107 S.Ct. 2124.) Because of the attorneys' ethical duties to their private client, moreover, the conflict was unusually manifest: while ordinarily "we can only speculate whether other interests are likely to influence an enforcement officer," where a prosecutor also represents an interested private party, "the ethics of the legal profession require that an interest other than the Government's be taken into account." (<u>Id</u>. at p. 807, 107 S.Ct. 2124.)

Defendants' reliance on <u>Vuitton</u> for the proposition that participation of an interested prosecutor universally or generally infringes due process suffers from a fatal flaw: <u>Vuitton</u> was decided not on constitutional grounds but under the United States Supreme Court's supervisory powers over the lower federal courts. (<u>Vuitton</u>, supra, 481 U.S. at pp. 790, 809, 107 S.Ct. 2124.) Only Justice Blackmun, in a concurring opinion, wrote that "the practice— federal or state—of appointing an interested party's counsel to prosecute for criminal contempt is a violation of due process." (<u>Id</u>. at pp. 814–815, 107 S.Ct. 2124 (conc. opn. of Blackmun, J.).) <u>Vuitton</u> stands as an example of how external influences might affect discretionary prosecutorial decision-making, but *does not establish a due process test for prosecutorial conflicts.*

<u>People v. Vasquez</u>, 137 P. 3d 199, 206-207 (Cal. 2006) (emphasis supplied).

The <u>Vasquez</u> decision correctly noted that no decision of the United States Supreme Court "establish[es] a due process test for prosecutorial conflicts" as of 2006, and the respondent submits that there have been no decisions since 2006 establishing such a test.

Although the <u>Vasquez</u> Court did note that "[s]everal lower federal courts and courts of our sister states have squarely addressed prosecutorial conflicts as due process problems," 137 P.3d at 207-2011 (collecting cases), precedent from lower courts "does not constitute 'clearly established Federal law, as determined by the Supreme Court.' " <u>Parker v. Matthews</u>, <u>567 U.S. 37</u>, 48 (2012).

The petitioner, instead of relying upon any of the Supreme Court's constitutional holdings, strings together snippets of dicta consisting of rhetorical flourishes paying homage to broad notions of "justice" and "fairness." <u>See</u> <u>ECF Doc. 11</u>, pp. 11-16, text accompanying nn. 35, 46-54. He appears to be framing Supreme Court precedents at a high level of generality so that he may declare a principle to be clearly established even though the Supreme Court has yet to squarely consider it. But: "we cannot simply frame Supreme Court precedents at a high level of generality and declare a principle to be clearly established when the Court has yet to squarely consider it." <u>Thomas v. Vannoy</u>, <u>898 F.3d 561</u>, 566 (5th Cir. 2018).

The rule applicable to this claim is that "where Supreme Court jurisprudence 'gives no clear answer to the question presented, let alone one in petitioner's favor, it cannot be said that the state court unreasonably applied clearly established federal law.' " <u>Wilson v. Cain</u>, <u>641 F.3d 96</u>, 100 (5th Cir. 2011) (citation omitted). Because there is no "clearly established federal law" governing this claim, the state courts did not unreasonably apply clearly established federal law as determined by the Supreme Court.

Finally, the state courts' adjudication of this claim is not based upon an unreasonable determination of the facts. The state district court found that "[t]o the extent that Mills may be arguing that prosecutorial animosity may have influenced the District Attorney's office to proceed with the prosecution, the facts fail to support such an inference" (SCR$_2$ at 584) and the Louisiana

Supreme Court found Mills' allegations "unsupported." The petitioner has failed to rebut this conclusion by clear and convincing evidence.

>    2.    **Mills is not entitled to relief on the ground that the state courts erroneously determined the restriction of his cross-examination of Walter Aswell to be harmless error (Claim 2).**

Mills claims that a Sixth Amendment error occurred "when the state court refused to allow him to cross-examine his co-defendant [Walter Aswell] about the great leverage under which he was testifying pursuant to a plea bargain." ECF Doc. 11, pg. 17.

The Louisiana courts have acknowledged that this error did occur:

> The defendant should have been permitted to question Aswell regarding the maximum sentences that he could have received absent his plea agreement. With the benefit of that information, the jury, as the sole triers of fact and credibility, could appropriately draw inferences relating to the State's leverage over Aswell. Without the benefit of that information, the jury was limited in its ability to determine bias or impartiality on the part of Aswell. Under the particular facts presented, the trial court's ruling infringed on the defendant's constitutional confrontation right by denying him the right to fully cross-examine Aswell.

State v. Mills, 13-0573 (La. App. 1 Cir. 8/27/14), 153 So.3d 481, 491 (SCR$_2$ at 349-350).

After acknowledging that error occurred, the Louisiana courts found that "the confrontation error was harmless beyond a reasonable doubt." Mills, 153 So.3d at 494 (SCR$_2$ at 355).

The issue for this Court to address is not (as the petitioner suggests) *whether* a Sixth Amendment violation occurred. It did. The issue is whether that error was harmless—or, more particularly, whether the state courts "applied harmless-error review in an 'objectively unreasonable' manner." Wesbrook v. Thaler, 585 F.3d 245, 255 (5th Cir. 2009) (quoting Mitchell v. Esparza, 540 U.S. 12 (2003)).

### A.      The state courts' adjudication of the claim.

The last reasoned decision on this issue is the opinion of the Louisiana First Circuit Court

of Appeal on direct review. That Court reasoned in pertinent part as follows:

> Confrontation errors are subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) (noting that the Constitution entitles a criminal defendant to a fair trial, not a perfect one). When a confrontation error is discovered, the United States Supreme Court has instructed:
>
>> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.
>
> Delaware v. Van Arsdall, 475 U.S. at 684. An error is harmless if the verdict rendered was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279 (1993).
>
> The defendant does not deny that he committed armed robbery; rather, he claims that his conduct was justified and therefore excusable. The defendant characterizes Aswell as an absolutely critical witness for the State both for supporting the State's case in chief and for directly attacking the heart of his justification defense. Justification defenses are based on circumstances that make the accused's conduct excusable on policy grounds and are therefore treated as affirmative defenses that the accused must establish by a preponderance of the evidence.
>
> The defendant's justification defense rested solely on his own testimony and therefore hinged on the jury finding him to be credible. The defendant explained that he and Aswell were friends and the subject of robbing a bank came up as "a joke" approximately a month before this incident. The night before the incident, the defendant and Aswell went running together on the St. Tammany Trace, and Aswell again brought up the idea of robbing a bank. The defendant stated that he told Aswell it was a stupid idea and that he would not help Aswell. When the defendant attempted to leave, he heard a gunshot and turned to see Aswell pointing a gun at him.

Aswell threatened to shoot the defendant if the defendant did not help him. The defendant testified that he "basically gave up," believing he would only be driving Aswell to the bank and waiting in the car.

The defendant changed into clothes that Aswell pulled out of a backpack, and tied a black t-shirt around his face like a mask as Aswell directed. The defendant testified that he followed Aswell's instructions, and the two walked to a nearby subdivision and, near sunrise, stole a Jeep. The defendant drove the Jeep with Aswell riding in the rear passenger seat holding the gun. Following Aswell's directions, the defendant pulled off of the road where they waited for approximately two and a half to three hours before driving toward Bogalusa. Outside the bank, Aswell for the first time instructed the defendant to enter the bank with him and again threatened to shoot him if he did not comply.

The defendant testified that he drove the Jeep after he and Aswell left the bank and that Aswell sat in the back passenger seat gripping his pistol and instructing him where to go. According to the defendant, once one of the police units approached the side of the jeep, Aswell moved into the front passenger seat and began firing shots at the police unit. The defendant denied shooting at police officers or firing any weapons on the day of the robbery.

Aswell's testimony contradicted that of the defendant; however, for purposes of the harmless error analysis, we must examine the record for corroboration since it must be assumed that the damaging potential of the cross-examination was realized and that Aswell's testimony was discredited. See Delaware v. Van Arsdall, 475 U.S. at 684.

Deputy Scott Seals with the St. Tammany Parish Sheriff's Office, and Officers Chad Cassard and Patrick Lyons of the Bogalusa Police Department, who were involved in the chase and arrest of the defendant, also testified for the State. They described multiple shots fired from the Jeep at the deputies, one of which shattered the rear window of Deputy Seals' police unit and struck the cage behind his head. Officers Cassard and Lyons identified the passenger as the shooter. The officers testified that at some point during the chase, the Jeep stalled and coasted into the parking lot of an old grocery store. Officer Cassard testified that the passenger continued to shoot at the officers from the Jeep after it stopped. Upon exiting the Jeep, the passenger was wearing a mask and pointed his pistol at Officer Cassard. The driver and passenger met in front of the Jeep before the two ran in opposite directions. The driver was subdued first. Officer Cassard and Deputy Seals then pursued the passenger. Deputy Seals testified that he saw the passenger at the edge of the woods, and that the passenger raised a gun at him. Deputy Seals then fired and saw the passenger fall. Deputy Seals, Officer Cassard, and Officer Lyons struggled with the passenger and described him as trying to reach his pistol even

after being shot. Once subdued, the passenger's mask was removed. Each of the officers identified the defendant as the passenger.

The officers' testimony directly contradicted the defendant's testimony that he was the driver in the Jeep, that he did not fire at the officers, and that he did not struggle with the police. The officers' testimony regarding the defendant's actions upon exiting the Jeep also contradicted the defendant's justification theory that he was acting under the compulsion of Aswell's threats.

Additionally, the physical evidence contradicted the defendant's testimony. On the date of the incident, a 9mm Beretta pistol was recovered in the area where the defendant was apprehended. When the defendant and Aswell exited the Jeep, Aswell ran in the opposite direction from the defendant. A few days later, a 9mm H&K pistol was located near the area where Aswell had been apprehended. An expert in firearms examination and tool mark identification examined both pistols. He concluded that the 9mm casings in evidence were all ejected by the Beretta. Thus, the entire weight of the testimony and physical evidence contradicted the defendant's testimony and established that the defendant was the passenger in the Jeep and was in possession of the Beretta that was fired multiple times at the pursuing police officers.

It is the function of the jury to weigh the testimony of every witness. If the jury determines that a witness willfully or deliberately testified falsely to any material fact for the purpose of deceiving it, then the jury may conclude that the witness's testimony is unworthy of belief and disregard the entirety of the testimony as proving nothing. The jury's verdicts finding the defendant guilty of attempted first degree murder reflect that the jury clearly rejected the defendant's testimony that he was not the driver and that he did not fire shots at the police officers. The jury necessarily determined that the defendant testified falsely as to these material facts. Consequently, the jury was justified in rejecting the entirety of the defendant's testimony, including his justification defense.

After considering all relevant factors and the evidence presented by the State, we conclude that the jury's verdicts were surely not attributable to the trial court's error in denying the defendant the right to fully cross-examine Aswell as to his maximum sentencing exposure prior to entry of the plea agreement. The jury clearly rejected the defendant's testimony, which was the only evidence that could have possibly supported his claimed defense of justification. Therefore, the confrontation error was harmless beyond a reasonable doubt.

State v. Mills, 13-0573 (La. App. 1 Cir. 8/27/14), 153 So.3d 481, 485, 493 (SCR$_2$ at 350-355)

(state law citations omitted).

**B.     The state courts' adjudication of the claim was not based on an unrea-
sonable determination of the facts in light of the evidence presented in
the State court proceeding.**

The state court reasoned: "The record establishes that Aswell agreed to testify and plead

guilty in return for a twenty-five year sentence if he testified truthfully in accordance with his

pretrial statement. Otherwise, he was to be sentenced to serve thirty years." State v. Mills, 13-0573

(La. App. 1 Cir. 8/27/14), 153 So.3d 481, 490 (SCR₂ at 347).

Mills argues that this was an unreasonable determination of the facts, and that in actual fact

"if Aswell didn't toe the line and testify in conformity with his pre-trial statements that he then

faced a potential sentence of ninety nine years on the [one count of] armed robbery, fifty years on

each of the three counts of attempted murder, and fifteen years on the [one count of] aggravated

obstruction [of a highway of commerce]." ECF Doc. 11, pg. 22.[12]

The pertinent portion of the state court record is the testimony of Walter Aswell on cross-

examination:

> [Questioning by defense counsel, Mr. Mary.]
>
> Q:     So you and your lawyer talked about this and you've got a  condition
> of your not facing substantially more time is, is that you got to come
> in here and say that your statement that the police took from you on
> the 21st [of April, 2011 (the day after the robbery)] is the truth, right?
>
> A:     Right.
>
> Q:     That is your understanding. And if you were to testify differently,
> you could face a whole lot more time, right?
>
> A:     They told me it wouldn't be any more than thirty, more than thirty
> years.
>
> Q:     Okay. No matter what?
>
> A:     Right.

---

[12] This is what Mills' trial counsel asserted during and after the trial. See SCR₄ at 962, lines 6-15 ("It is my
understanding that if he testifies in conformity with his statement, Your Honor was going to sentence him between
twenty five and thirty years. If he testifies contradictorily and differently than what he said, Your Honor is no longer
bound by the agreement and can sentence him up to ninety nine on three and up to fifty on each attempted
murder."); see also SCR₁ at 242-243 (assertions contained in motion for new trial); SCR₃ at 745-746 (argument of
counsel at hearing on motion for new trial).

Q:      No matter what?

A:      That was the plea agreement.

MR. MARY:      May we approach?

(COUNSEL APPROACHED THE BENCH, OUT OF THE
HEARING OF THE JURY, WHERE THE FOLLOWING
PROCEEDINGS WERE HAD:)

MS. WALL:      That is my understanding of the plea agreement, too.

MR. MARY:      But that is not the understanding of the court and it is capped as long as it is consistent with the truth. I think he opened the door to give me the limits in this agreement.

MS. WALL:      That's -- my understanding was he would get thirty years if he pled.

THE COURT:      If he pled.

MS. WALL:      If he testified truthfully and Your Honor agreed he would get twenty five, but I never reserved my right to give more than thirty. My understanding was always twenty five to thirty years.

THE COURT:      The record speaks for itself and my ruling stands.

SCR$_5$ at 966-967.

A plea agreement is, by definition, "a negotiated agreement between a prosecutor and a criminal defendant." BLACK'S LAW DICTIONARY 1270 (9th ed. 2009).

The state court record shows that the criminal defendant, Mr. Aswell, testified that his sentence "wouldn't be any more than thirty." The state court record further shows that the prosecutor, Ms. Wall, shared that understanding of the terms of the agreement: "My understanding was always twenty five to thirty years."

An individual who was *not* a party to the agreement— petitioner Mills's counsel—alleged that *the parties* to the agreement *misunderstood* the terms of the agreement.

The trial court's ruling precluded Mills from arguing to the jury that Aswell could face more than thirty years if he testified inconsistently with his pre-trial statement.

The trial court's ruling contains within it an implicit finding of fact that the defense

counsel's characterization of the agreement was incorrect: had the trial court concluded otherwise, the trial court would have permitted such cross-examination. See Valdez v. Cockrell, 274 F.3d 941, 948 n. 11 (5th Cir. 2001) ("The presumption of correctness . . . applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.").

The deference owed to state court factual findings "requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even 'fair[ ] support' in the record." Marshall v. Lonberger, 459 U.S. 422, 432 (1983) (citing Sumner v. Mata, 455 U.S. 591 (1982)).

The state court record contains "fair support" for the factual conclusion that Walter Aswell's sentence was capped at thirty years: both the prosecutor (who offered the plea) and Mr. Aswell (who accepted the plea) shared the same understanding of the terms of the plea bargain. The petitioner fails to show that this factual finding was unreasonable in light of the evidence presented in the State court proceeding.

> **C.    The state courts' adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law.**

The clearly established federal law governing this claim comes from Chapman v. California, 386 U.S. 18 (1966), and Delaware v. Van Arsdall, 475 U.S. 683 (1986). In Chapman, the Court held that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless" and "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 22, 24. In Van Arsdall, the Court said: "we hold that the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman* harmless-error analysis." 475 U.S. at 684.

*i.*

Aswell's testimony was consistent with a prior statement he made to the police. At the time he made the prior statement, he was in the hospital recuperating from significant injuries—gunshot wounds to the right elbow and right hip as well as a fractured skull (SCR$_3$ at 954, lines 13-20)— and was "on heavy medication" (SCR$_3$ at 950, lines 7-12). At the time he made the prior statement, it was very much against his penal interest: he admitted to committing armed robbery with a firearm. Whatever bias Aswell may arguably have had *at trial* as a result of the plea bargaining process did not exist *the day after the offense* when Aswell first spoke to the police.

In Van Arsdall, the petitioner was entitled to relief because "A reasonable jury might have received a significantly different impression of [the witness]'s credibility had [defense] counsel been permitted to pursue his proposed line of cross-examination." 475 U.S. at 680. Here, there is no basis for concluding that the jury might have received a significantly different impression of Aswell's credibility with additional cross-examination because his testimony was entirely consistent with a statement made when no such motive existed.

*ii.*

The Louisiana First Circuit Court of Appeal explicitly conducted harmless error analysis. The state court first explained that Mills' defense "rested solely on his own testimony and therefore hinged on the jury finding him to be credible." State v. Mills, *supra*, 153 So.3d at 492 (SCR$_2$ at 351). The state court "assumed that the damaging potential off the cross-examination was realized and that Aswell's testimony was discredited," id. at 492 (SCR$_2$ at 352), then discussed the testimonial and physical evidence contradicting Mills' testimony.

Mills said that he did not have a gun when he exited the getaway vehicle. But three officers —Chad Cassard, Scott Seals, and Patrick Lyons—observed that he *did* have a gun when they

apprehended him. <u>Mills</u>, 153 So.3d at 493 (SCR$_2$ at 352-353). <u>See</u> SCR$_5$ at 1018, lines 25-28 (testi-mony of Chad Cassard that, when the high speed chase ended, he observed the passenger of the vehicle exiting the vehicle with "a backpack on his left shoulder, the pistol in his right hand"); id. at 1094, lines 4-5 ("he opened the door and pointed his pistol at me"); id. at 1020-1028 (Cassard directed his attention to the driver, and after shooting the driver, participated in the apprehension of the passenger, who was Logan Mills); <u>see</u> <u>also</u> SCR$_5$ at 1120, lines 22-29 & <u>id</u>. at 1126, lines 12-16 & <u>id</u>. at 1139-1140 (testimony of Scott Seals that when he first encountered Mills he said "let me see your hands" and that Mills "pointed a gun at me"); <u>see</u> <u>also</u> SCR$_{12}$ at 2458, lines 1-4 & SCR$_{13}$ at 2544, lines 2-5 (testimony of Patrick Lyons that, during the struggle leading to Mills' arrest, Mills "kept going for his gun" and that the gun "was within arm's reach of him").

Mills also said that he was not the person shooting at the police officers from the passenger seat of the getaway vehicle. But the pistol recovered from the place where Mills was apprehended was the one used to shoot at the police officers during the high speed chase: the shell casings recovered from the interior of the getaway vehicle were forensically linked to that pistol. 153 So.3d at 493 (SCR$_2$ at 353); <u>see</u> SCR$_{10}$ at 2048 (testimony of crime scene specialist Anna Savrock concerning the recovery of "a tremendous number of 9mm Luger spent casings" from the getaway vehicle); <u>id</u>. at SCR$_{11}$ at 2268-2269 (testimony of firearms examiner Carl Fullilove).

The state courts' conclusion—"After considering all relevant factors and the evidence presented by the State, we conclude that the jury's verdicts were surely not attributable to the trial court's error in denying the defendant the right to fully cross-examine Aswell as to his maximum sentencing exposure prior to entry of the plea agreement"—was not an unreasonable one.

*iii.*

Mills complains about the state courts' decision to credit the testimony of the officers because,

in his eyes, they "were repeatedly impeached on cross-examination on several important issues" as follows:

> (1)   "Officers Lyons, Seals and Cassard all denied beating Aswell who suffered a fractured skull during his arrest;"
>
> (2)   "Officer Cassard changed his story several times in written reports, and while testifying about when the shooting between the Jeep's passenger and the police began;"
>
> (3)   "Officer Seals testified that he shot Mills while Mills was facing him, a complete fabrication considering that Mills was shot in the back;" and
>
> (4)   Officer Lyons testified that Mills was 'kickbox' fighting with other officers in resisting his arrest, another extreme improbability considering that Mills had a collapsed lung from the multiple gunshot wounds he endured."

ECF Doc. 11, pg. 25.

First, there is no evidence to establish that Lyons, Seals, or Cassard actually did beat Aswell.

Second, inconsistencies about precisely when during the high speed chase the shooting began do not render the entirety of Cassard's testimony unworthy of belief.

Third, Seals testified that, he when he saw that Mills had a gun trained on him, he "began shooting" and testified "I don't know how many times I shot, maybe four, five, six, something like that" ($SCR_5$ at 1120, lines 24-32). It is entirely reasonable to conclude that, as was urged in closing argument, Mills wasn't hit by the first bullet that Seals fired and was instead hit by the fifth or sixth bullet and by that time was no longer facing Seals. See $SCR_4$ at 861, lines 11-15 ("Scott Seals starts firing from a good long distance away. What do you do? Duck like that? That's how he got shot in the shoulder blade. He's ducking, he's cringing.").

Finally, the cited portions of the record ("State App. Rec. 553, 1916")—which correspond to $SCR_6$ at 1161 and $SCR_{13}$ at 2528—do not contain testimony from Lieutenant Lyons indicating that anyone was "kickbox" fighting. A review of the trial testimony of Lyons ($SCR_{13}$ at 2436-2551) shows that on direct examination he described the attempt to apprehend Mills as

"chaotic" and "like a barroom fight" (SCR$_{13}$ at 2457, lines 27-32). On cross-examination he said "It's like a big fight. It's three people going at it and I see arms and legs and, you know, they're exchanging blows and everything else" (SCR$_{13}$ at 2528, lines 18-25) and "It looks to me like everybody is throwing punches" (SCR$_{13}$ at 2529, lines 21-22). And on redirect he said that Mills was "fighting and struggling and fighting" and "was like a wild man" (SCR$_{13}$ at 2542, lines 10-18). None of this testimony is on its face unworthy of belief.

There is no basis for concluding the state court erred when, during its harmless error analysis, it accepted the testimony of the officers as establishing the facts they testified to.

#### iv.

Finally, the cases Mills cites in support of his position are distinguishable. See ECF Doc. 11, pp. 19-20, discussing Greene v. Wainwright, 634 F.2d 272 (5th Cir. 1981), and Kittleson v. Dretke, 426 F.3d 306 (5th Cir. 2005). In each of those cases, the defendant was not allowed to fully cross-examine a witness whose testimony was *necessary* to conviction—necessary in the sense that, absent that testimony, there would not have been sufficient evidence to convict. See Greene, 634 F.2d at 275 (the witness's testimony provided "an essential link" in the prosecution's case); Kittleson, 426 F.3d at 322-323 (describing the case as one "that turned entirely on the credibility of the complaining witness"). In this case on the other hand, there was ample evidence independent of Aswell's testimony to establish Mills' guilt.

It is true that Aswell provided the only evidence that *directly* contradicted Mills' claim of coercion. He is the only person that *could have* directly contradicted Mills' claim of coercion. But the story was unworthy of belief by any objective standard—as explained by the prosecutor during closing arguments: "the idea that the hostage would have a loaded gun and the backpack full of loot just doesn't make any sense. But that's his story." (SCR$_4$ at 860, lines 7-11).

* * *

Mills has failed to show that in his case the Louisiana courts applied harmless-error review in an objectively unreasonable manner. For that reason, he is not entitled to relief on this claim.

### 3. Mills is not entitled to relief based on his claim of ineffective assistance of counsel for failure to investigate (Claim 3).

In his third claim, Mills alleges that Walter Aswell "had been taking prescription psychotropic medication" to treat "mental health issues" and that his trial counsel was ineffective for failing to investigate this allegation. ECF Doc. 11, pg. 26-31. However, he does not specify the medication used or the "mental health issue" that the medication was to be used for.

### A. The state court's adjudication of the claim.

The last reasoned state court decision addressing this claim is that of the Louisiana Supreme Court, which stated: "Relator fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." State v. Mills, 17-0912 (La. 8/31/18), 251 So.3d 1067, 1068.

### B. There is no merit to this claim.

The law applicable to this claim has been summarized by this Court as follows:

> It is well settled that a habeas petitioner cannot show prejudice with respect to a claim that counsel failed to investigate a defense without adducing what the investigation would have shown. Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696 (recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different")). Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, No. 07–6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).

England v. Cain, 15-0961 (E.D. La. 10/14/15), 2015 WL 5971196, at *11.

Here, the petitioner failed to adduce what the investigation would have shown. His claim

is simply an uncorroborated conclusory assertion. That is what distinguishes his case from the cases he cites where relief was granted, See ECF Doc. 11, pg. 25 n. 108.

The petitioner is not entitled to relief based upon this claim.

### 4.     Mills is not entitled to relief based on his claim concerning the admission of a statement made in a federal lawsuit filed on his behalf (Claim 4).

In his fourth claim, Mills alleges that he "was denied his constitutional right of confrontation" and his "right to a fair trial" by a ruling allowing "the prosecutor to impeach Mills with a federal complaint that was prepared by a California that Mills did not know and had never communicated with." ECF Doc. 11, pg. 32.

### A.     Additional pertinent facts.

As previously noted, the petitioner filed a civil rights lawsuit (28 U.S.C. § 1983) alleging the use of excessive force by the officers who arrested him. See ECF Doc. 11-2, pp. 4-15 (copy of complaint filed and docketed as *Mills v. City of Bogalusa et al.*, 12-cv-0991). In the petition, Mills' attorney described the high-speed chase as "the pursuit of a vehicle, in which Plaintiff [i.e. Mills] was a passenger." Id., pg. 8 (paragraph 5).

The trial court, prompted by a *Motion in Limine* filed by Mills' counsel, ruled that this statement could be used to impeach him in the event that he testified. See ECF Doc. 11, pp. 32-33 & n. 122; SCR$_{14}$ at 2591-2592.

The fact that the Mills' attorney filed suit and described Mills as a "passenger" was presented to the jury through Mills' testimony on direct examination as follows:

Q:     Subsequent to your arrest and receiving those injuries, did you file
a civil lawsuit against the officers involving this?

A:     Yes.

Q:     Did you verify that petition? Did you sign an affidavit?

A:     I mean, I knew that a lawsuit had been filed, but I've never signed
anything or wrote anything for it.

Q:      You didn't type that petition, did you?

A:      No, sir.

Q:      Paragraph 5.5 of that petition says, after the above alleged act, th e above defendants including and without limitation, Lieutenant Lyons, Private Seals and Private Cassard were involved in the pursuit of a vehicle in which the plaintiff was a passenger. What do you understand that to mean?

A:      Well, I mean, the way it was explained to me is the legal definition of a passenger is anybody in the vehicle, even the driver. To me, it would sound like, you know, just a typical passenger. But those were written by an attorney, were typed up by an attorney, so I'm assuming he used the legal definition of passenger.

SCR$_{14}$ at 2636-2637.

On cross-examination, he testified:

Q:      You said your attorney is Philip Kaplan from -- is it Wilshire Boulevard in Los Angeles?

A:      I don't know his address. I just know he's from California, but, yes, ma'am.

Q:      And he is the attorney representing you in your Federal Court lawsuit?

[Objection omitted.]

A:      Yes.

Q:      He says right here, paragraph five, that after the above alleged act, the above defendants, including and without limitation, Lieutenant Lyons, PFC Scott Seals, PFC Cassard were involved in the pursuit of a vehicle in which plaintiff was a passenger. Are you familiar with that section?

A:      No, I've never read it.

Q:      You haven't read it. Your attorney just read it to you. That's the first you've ever heard about a lawsuit?

A:      I didn't read it. I heard him saying it on direct, but --

Q:      Do you want to read it?

A:      Not really.

MR. MARY:       Judge, for the record, any impeachment values have been accomplished here.

THE COURT:      All right. No speaking objections, please. Proceed with your questioning, Ms. Wall.

MS. WALL:         Yes, Your Honor.

Q:        I believe you testified that you're not sure -- you said your attorney told you that the legal definition of passenger was anyone in the car

A:        Right. Driver included.

Q:        Okay. Do you think there is a legal definition of passenger? Your attorney told you that?

A:        Well, I mean, I don't know much about the law. But if my attorney told me that, I would assume it's true.

Q:        So it's your testimony you never told your attorney you were the driver and not the passenger?

A:        I told him I was the driver. I never told him I was the passenger.

Q:        So you have spoken to him, haven't you?

A:        No, I haven't. They talk.

Q:        Okay. So you talk to Mr. Mary and it's Mr. Mary who tells Philip Kaplan the allegations in this lawsuit?

MR. MARY:        Judge, now she's trying to impeach me. That's wholly improper.

THE COURT:        All right. I'm going to sustain that objection.

SCR$_{14}$ at 2660-2662.

## B.    The state court's adjudication of the claim.

The last reasoned state court decision addressing this claim is that of the Louisiana First

Circuit Court of Appeal, which stated:

> In his last counseled and third pro se assignments of error, the defendant argues that the trial court erred in allowing the State to impeach him with the civil petition filed on his behalf in federal court, which alleged that the defendant was a passenger in the Jeep. According to the defendant, that petition was "rank hearsay" and could not be considered a statement against interest.
>
> Before the defendant testified, his counsel urged a motion in limine seeking to limit the State's cross-examination of the defendant by excluding statements made in the civil petition. According to the defendant, the petition was unverified and the statements contained within it were inadmissible hearsay. The defendant also argued that the statements made in the petition were those of the defendant's civil attorney who was not called to testify. The trial court denied the motion in limine, finding that the statement was one against interest in a legal proceeding. The court

stated that if the defendant took the stand and testified that he was actually the driver of the Jeep, the door would be open to cross-examination based upon the federal pleading and that the defendant could explain the purpose of the representation in the petition.

The defendant took the stand and testified that he was the driver of the Jeep. During direct examination, he explained that he understood the "legal definition" of "passenger," as used in the petition, to mean anyone in the vehicle, even the driver. The defendant testified that he drove the Jeep away from the bank with Aswell riding as passenger, and maintained that he did not shoot at the police or fire any weapons. During cross-examination, when questioned about the federal lawsuit alleging that he was the passenger, the defendant explained that he told his attorney that he was driving the Jeep. He then indicated that he had not spoken to the California attorney representing him in the federal suit, but "[t]hey talk," implying that the attorney in the federal suit communicated with him through his defense counsel.

An accused who takes the stand is subject to impeachment by discreditation as is any other witness. La.Code Evid. art. 607A; State v. Vessell, 450 So.2d 938, 946 (La.1984). To attack the credibility of a witness, a party may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony. La.Code Evid. art. 607C. By taking the stand and testifying that he drove the Jeep, the defendant opened the door for attack on his credibility via the civil petition.[FN8] See State v. Schrader, 518 So.2d 1024, 1033 (La.1988).

> FN8. We note that the statements contained in the defendant's civil petition did not constitute hearsay. The allegations in the civil petition were made by the attorney hired by the defendant to file the suit on his behalf. A statement is not hearsay if it is offered against a party and is by a person authorized by him to make a statement concerning the subject. La. Code Evid. art. 801D(2)(c).

These assignments of error are without merit.

State v. Mills, 13-0573 (La. App. 1 Cir. 8/27/14), 153 So.3d 481, 494-495.

### C.    There is no merit to this claim.

First, there is no "clearly established Federal law, as determined by the Supreme Court of the United States" governing the type of evidence that may be used to impeach a witness during a criminal trial. This claim therefore does not form a basis for the granting of relief. See Thaler v.

Haynes, 559 U.S. 43, 47 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court."); Wilson v. Cain, 641 F.3d 96, 100 (5th Cir. 2011) ("Because only Supreme Court jurisprudence provides 'clearly established Federal law' under section 2254(d), where Supreme Court jurisprudence 'gives no clear answer to the question presented, let alone one in petitioner's favor, it cannot be said that the state court unreasonably applied clearly established federal law.' ") (citations omitted).

Second, assuming the court is authorized to grant habeas corpus relief on a vague " 'denial of fundamental fairness' under the Due Process Clause" rationale,[13] there was nothing fundamentally unfair about presenting the jury with the information contained in Mills' civil rights complaint: Mills was able to and did dispute the accuracy of that information in his testimony before the jury.

Finally, there is no merit to the petitioner's Confrontation Clause claim because the civil rights complaint was not offered for the truth of the matter asserted: it offered to rebut Mills' trial testimony. See Tennessee v. Street, 471 U.S. 409, 417 (1985) (recognizing that rebutting an individual's testimony is a "legitimate, nonhearsay purpose" for introducing a statement); Crawford v. Washington, 541 U.S. 36, 59-60 n. 9 (the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted") (citing Street).

The petitioner is not entitled to relief based upon this claim.

**5.    Mills is not entitled to relief based on his claim of ineffective assistance of counsel on appeal (Claim 5).**

Mills' fifth claim is that his appellate counsel provided ineffective assistance of counsel by "fail[ing] to competently brief the issues raised on appeal and fail[ing] to competently respond to the State's original brief." ECF Doc. 11, pg. 39. Specifically, he argues that the testimony of Chad

---

13 See, e.g., Neil v. Cain, 141 F.3d 207, 214 (5th Cir. 1998). The respondent disputes that this doctrine survives the passage of AEDPA because it is based upon pre-AEDPA circuit court precedent and not the holding of any decision of the United States Supreme Court.

Cassard, Patrick Lyons, and Scott Seals was unworthy of belief, and that appellate counsel failed to adequately bring this attention of the Louisiana First Circuit Court of Appeal when arguing that the Confrontation Clause error was not harmless. ECF Doc. 11, pg. 41 ("If Mills' appellate counsel had properly briefed this claim, and pointed out the substantial impeachment of the three Bogalusa police officers, no reasonable appellate jurist would have relied upon the testimony of the officers to hold Mills' confrontation violation harmless."); id. at pp. 41-44 (elaborating upon why, in Mills' view, the state courts ought not have credited the officers' testimony).

Mills also argues that appellate counsel erred by not responding to the State's argument that those statements were properly admitted as admissions of a party opponent pursuant to Article 801(D)(2)(c). ECF Doc. 11, pp. 46-50.

### A.   Additional pertinent facts.

The briefs before the Court of Appeal included two briefs filed by appellate counsel (*Original Brief*, SCR$_{17}$ at 2884-2926; *Reply Brief*, SCR$_{17}$ at 2927-2939) as well as two *pro se* briefs filed by Mills (*Reply Brief*, SCR$_{18}$ at 3099-3109; *Supplemental Brief*, SCR$_{18}$ at 3110-3142).

It is true that *appellate counsel* did not brief the impeachment of the officers' testimony described by the petitioner. But, the argument that Mills says appellate counsel should have made was actually made to the Court in the brief Mills himself filed. See SCR$_{18}$ at 3127-3129. Compare ECF Doc. 11, pg. 56 (arguing that "the three Bogalusa police officers who identified Mills as the passenger were severely impeached" and that "Mills specifically pointed this out in his *pro se* supplemental brief").

### B.   The state court's adjudication of the claim.

The last reasoned state court decision addressing this claim is that of the Louisiana Supreme Court, which stated: "Relator fails to show that he received ineffective assistance of

counsel under the standard of *Strickland v. Washington*, <u>466 U.S. 668</u>, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." <u>State v. Mills</u>, 17-0912 (La. 8/31/18), <u>251 So.3d 1067</u>, 1068.

### C.   There is no merit to this claim.

The law applicable to this claim has been summarized by this Court as follows:

> Persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right. <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985). To prove that appellate counsel was ineffective, a petitioner must satisfy the two-prong test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984) (i.e., that counsel's performance was deficient and that the deficient performance prejudiced the defense). <u>See</u> <u>Busby v. Dretke</u>, 359 F.3d 708, 714 (5th Cir. 2004). A showing of prejudice in this context requires that a petitioner establish a reasonable probability that he would have succeeded on appeal but for his counsel's deficient representation. <u>Dorsey v. Stephens</u>, 720 F.3d 309, 321 n. 59 (5th Cir. 2013) (citing <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000) and <u>Strickland v. Washington</u>, 466 U.S. at 694). Because the state courts adjudicated the claim on the merits and the issue of ineffective assistance of counsel is a mixed question of law and fact, the question before this Court is whether the state court's denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent. 28 U.S.C. 2254(d)(1); <u>Clark v. Thaler</u>, 673 F.3d 410, 416 (5th Cir. 2012).

<u>Wallace v. Tanner</u>, 15-0685 (E.D. La. 6/15/16), 2016 WL 6477037, at *9.

Here, the state courts reasonably concluded that the petitioner failed to show a reasonable probability that he would have succeeded on appeal but for his counsel's deficient representation.

The arguments concerning the reliability of the officers' testimony *were actually presented* to the court of appeal. It is not reasonably probable that the court of appeal would have evaluated the arguments presented to it differently had those arguments been presented by counsel rather than by the petitioner *pro se*.

The arguments that Mills says should have been made in his reply brief are only applicable when evidence is offered for *the truth of the matter asserted*. <u>See</u> ECF Doc. 11, pp. 47-48 & nn. 204-206.[14] Here, the prosecution used the statements contained in the civil petition to

---

14 Th petitioner cites <u>Turner v. Ostrowe</u>, 01-1935 (La. App. 1 Cir. 9/27/02), <u>828 So.2d 1212</u>, and <u>Thomas v. RPM</u>

impeach Mills' trial testimony, not as affirmative proof of any fact. It is therefore not reasonably probable that he would have succeeded on appeal but for his counsel's failure to further brief the admissibility of the petition under Article 801 of the Louisiana Code of Evidence.

Mills has failed to show that in his case the Louisiana courts applied <u>Strickland v. Washington</u> in an objectively unreasonable manner. He is not entitled to relief on this claim.

### 6. Mills is not entitled to relief based on his claim that he was "denied a fair and impartial direct appeal" (Claim 6).

Mills's final claim that his "direct appeal was not 'meaningful' in any sense of the word" because "[a]ppellate review that consistently ignores the most critical points of the arguments presented, consistently ignores all the facts in the appellant's favor, and consistently refuses to apply clearly established law" does not meet "the demands of Due Process and Equal Protection." ECF Doc. 11, pp. 51, 58.

### A. The state courts' adjudication of the claim.

The state district court dismissed this claim on procedural grounds, namely, failure to state claim upon which relief may be granted: "this claim is not recognized as one of the exclusive grounds for post-conviction relief." SCR$_2$ at 588.

The Louisiana Supreme Court, however, did not apply a procedural bar. It instead found this claim to be "repetitive and/or unsupported." SCR$_{19}$ at 3471.

---

Corp., 449 So.2d 18 (La. App. 1 Cir. 1984). In those cases the "admissions" at issue were admitted for the truth of the matter asserted. See Ostrowe, 828 So.2d at 1221 ("the notes are being offered to prove the truth of what Nemeth said, namely, that Turner told her certain things during marital counseling."); Turner, 449 So.2d at 22 ("[plaintiff's] testimony as to the statements of Bob Long, part owner of the corporation and shop manager at the time of the accident, tend to prove why plaintiff had use of the vehicle").

The petitioner cites State v. Schexnayder, 96-0098 (La. App. 5 Cir. 11/26/96), 685 So.2d 357, for the proposition: "statement that was not specifically authorized was not admissible" (ECF Doc. 11, pg. 47 n. 204). But a review of that case shows the disputed statement to have been found *admissible* because it was offered for a purpose *other than* the truth of the matter asserted. See Schexnayder, 685 So.2d at 366-367 (concluding: "we find that the statement made by Morales to Romano is admissible").

**B.**      **There is no merit to this claim.**

*i.*      *The claim that Mills was denied an "impartial" appeal does not warrant relief.*

A criminal defendant has a clearly established right to have his case decided by a judge (or judges) who are impartial. See Richardson v. Quarterman, 537 F.3d 466, 474 (5th Cir. 2008) (quoted above on pages 15-16). Mills, however, does not show that any of the judges who decided his case were anything less than impartial. He alleges only that the appeals court judge who wrote the opinion for the panel (William J. Crain) was a district court judge in Washington Parish at the time of the trial, which occurred prior to his election to the First Circuit Court of Appeal. ECF Doc. 11, pg. 47. He offers no other basis for concluding that either that Judge Crain or the two other judges on the panel harbored any bias against him.

Mills is not entitled to relief on the ground that he was denied an "impartial" appeal.

*ii.*      *The claim that Mills was denied a "fair" appeal does not warrant relief.*

There is no right—clearly established or otherwise—to have an appellate court accept one's characterization of the facts of the case or one's characterization of the law applicable to the case. Yet that is the heart of Mills's argument. This claim is without merit both because it is premised upon a nonexistent right.

Mills is not entitled to relief on the ground that he was denied a "fair" appeal.

CONCLUSION AND PRAYER

The claims raised in Mills's habeas petition are without merit. He therefore is not entitled to the relief he seeks. Respondent Robert Tanner respectfully prays that Logan Mills's petition for habeas corpus be denied and dismissed with prejudice.

Respectfully Submitted,

/s/ Matthew Caplan
Matthew Caplan, #31650
Assistant District Attorney
22nd Judicial District – Parishes of
    St. Tammany and Washington
701 N. Columbia Street
Covington, Louisiana 70433
Tel: (985) 809-8398
Email: mcaplan@22da.com

CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Matthew Caplan
Matthew Caplan
La. Bar No. 31650
Assistant District Attorney
22nd Judicial District – Parishes of
    St. Tammany and Washington
701 N. Columbia Street
Covington, LA 70433